# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE: BROILER CHICKEN GROWER LITIGATION | **ORDER GRANTING DEFENDANTS' MOTION TO STAY DISCOVERY PENDING RESOLUTION OF MOTIONS TO DISMISS**<br><br>JUDGE ROBERT J. SHELBY<br><br>CASE NO. 6:17-CV-00033-RJS |

Before the court in this consolidated action[1] is Defendants' Motion to Stay Discovery Pending Resolution of their Motions to Dismiss.[2] Plaintiffs oppose the Motion.[3] For the reasons discussed below, the court GRANTS Defendants' Motion.[4]

## BACKGROUND

This is a putative class action centering on antitrust claims that broiler chicken growers assert against poultry production companies. The six named Plaintiff growers[5] allege that beginning nearly a decade ago—"at least 2008, and likely earlier"—the twelve Defendant poultry companies[6] engaged in illicit anticompetitive activity in concert with others to artificially

---

[1] This case involves two cases that have been consolidated—this case and Case No. 6:17-cv-00112. The underlying complaints initially filed in these cases have been superseded by the filing of a Consolidated Amended Complaint (Dkt. 137).

[2] Dkt. 144.

[3] Dkt. 151.

[4] Defendants requested oral argument on their Motion. Dkt. 144 at 1 and 21. Upon careful review of the parties' thorough briefing, the court has determined that a hearing on the Motion as Defendants request is unnecessary. *See* LCvR 78.1 ("hearings on motions . . . will not be conducted unless ordered by the Court.").

[5] The named Plaintiffs are Haff Poultry, Inc.; Nancy Butler; Johnny Upchurch; Jonathan Walters; Myles B. Weaver; and Melissa Weaver. Dkt. 137 (Consolidated Amended Complaint) at 1.

[6] Defendants are Tyson Foods, Inc.; Tyson Chicken, Inc.; Tyson Breeders, Inc.; Tyson Poultry, Inc.; Pilgrim's Pride Corporation; Perdue Farms, Inc.; Koch Foods, Inc.; Koch Meat Co., Inc. dba Koch Poultry Co.; Sanderson Farms, Inc.; Sanderson Farms, Inc. (Food Division); and Sanderson Farms, Inc. (Processing Division). *Id.*

1

suppress grower compensation.⁷ The growers contend the poultry companies met this goal by, among other means: 1) sharing detailed compensation and business data through a statistical and research firm called AgriStats, 2) allowing access to each other's production facilities, 3) permitting high-level employees to move to jobs at each other's companies without contractual restrictions, and 4) complying with a "no-poach" agreement under which the poultry companies agreed not to recruit or hire growers from each other.⁸

Some growers initially filed suit in this District against the poultry companies in January 2017.⁹ After other growers filed a second, substantially similar case in this District in March 2017,¹⁰ the cases were consolidated.¹¹ Plaintiffs claim there are thousands of growers who may join them in this action.¹²

After a June 9, 2017 case management hearing, and pursuant a subsequent June 14 order,¹³ the grower Plaintiffs jointly filed the now-governing Consolidated Amended Complaint on July 10, 2017.¹⁴ They assert two causes of action: 1) Agreement in Restraint of Trade in Violation of Section I of the Sherman Antitrust Act, 15 U.S.C. § 1; and 2) Unfair Practices in Violation of Section 202 of the Packers and Stockyards Acts of 1921, 7 U.S.C. § 192.¹⁵

---

⁷ *Id.* at 17 ¶ 66.

⁸ *Id.* at 17-23.

⁹ Dkt. 2.

¹⁰ Case No. 6:17-cv-00112.

¹¹ Dkt. 127, Joint Order Following Case Management Hearing.

¹² Dkt. 137 at 37.

¹³ Dkt. 127.

¹⁴ Dkt. 137.

¹⁵ *Id.* at 38-40.

Under the court's June 14 order, the Defendant poultry companies have until September 8, 2017, to file their Motions to Dismiss.[16] The Plaintiffs must file any oppositions by October 23, 2017, and Defendants have until November 22, 2017 to file any reply memoranda.[17] Thus, unless the parties seek and the court permits an extension, briefing on initial Motions to Dismiss will be complete in three months.

In its June 14 order, the court admonished the Defendants to, when possible in view of similar legal and factual positions, file joint submissions rather than individual motions.[18] The Defendants' Motion to Stay Discovery pending the court's determination of the anticipated Motion to Dismiss was filed jointly on July 24.

Since the Defendants filed their Motion to Stay Discovery, Plaintiffs have given notice of their intent to issue preservation subpoenas to twenty-four third party poultry production companies.[19] Each subpoena identically sets forth thirty-three separate categories of requested documents—and some categories have up to ten sub-parts.[20] The subpoenas seek from these third parties documents on a broad range of subjects, including the third parties' own internal management teams; corporate policies; practices with regard to poultry growers—including compensation, economic evaluations, and contracts; use of AgriStats; and personnel information—including entire personnel files for any employee who may have attended a meeting wherein a poultry company discussed a topic relating to growers.[21]

---

[16] Dkt. 127 at 3.

[17] *Id.*

[18] *Id.* at 2.

[19] Dkt. 187-1.

[20] *See, e.g.,* Dkt. 187-1 at 25, Request No. 26.

[21] Dkt. 187-1.

ANALYSIS

Defendants seek a stay of discovery pending the resolution of their anticipated Motions to Dismiss. Their anticipated Motions will be grounded in multiple "threshold" issues upon which this this complex antitrust case may be resolved for all or some of the dozen Defendants. Therefore, they argue the burden and expense that immediate discovery would inflict on the them, the court, and third parties far exceeds any prejudice the Plaintiffs may bear if required to wait until the Motions are resolved. Plaintiffs respond that the Defendants will not prevail on their Motions to Dismiss, and that delaying discovery will prejudice them but not the Defendants, the court, and third parties.

The Federal Rules of Civil Procedure are meant to "secure the just, speedy, and inexpensive determination of every action . . . ."[22] The Rules do not provide for discovery stays like the one Defendants seek as a matter of course pending the resolution of dispositive motions.[23] But within this court's discretion to control discovery[24] and its own docket lies the ability to stay discovery.[25] Analogously, Rule 26(c) allows the court to issue an order protecting a party from discovery that will cause "annoyance, embarrassment, oppression, or undue burden or expense . . . ."[26] "The 'good cause' standard of Rule 26(c) is highly flexible, having been

---

[22] FED. R. CIV. P. 1.

[23] But, some statutes do provide for automatic stays upon the filing of a motion to dismiss. For example, cases covered by the Private Securities Litigation Reform Act are subject to such automatic stays.

[24] Generally, "discovery rulings are within the broad discretion of the trial court." *Cole v. Ruidoso Mun. Schools*, 43 F.3d 1373, 1386 (10th 1994) (citations omitted).

[25] *Clinton v. Jones,* 520 U.S. 681, 706-07 (noting district court's "broad discretion to stay proceedings as an incident to its power to control its own docket" might justify a stay of "trial or discovery" but finding lengthy and categorical trial stay trial until after President Clinton left office that took no account of the plaintiff's interest in getting to trial was an abuse of discretion) (citations omitted); *see also Landis v. North American Co.*, 299 U.S. 254-55 (1936) (noting "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment which must weigh competing interests and maintain an even balance.").

[26] FED. R. CIV. P. 26(c).

designed to accommodate all relevant interests as they arise."[27] Thus, while blanket discovery stays pending resolution of dispositive motions are rarely appropriate,[28] and it is not this court's general practice to halt discovery simply because a motion has been filed, particular circumstances may warrant a discovery stay for a period time.

The Tenth Circuit instructs that the determination of whether such circumstances warrant a discovery stay calls "for balancing the competing interests on both sides."[29] Defendants, as the parties seeking a stay, bear the burden to make out a "clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which [they] pray[] will work damage to someone else."[30] In balancing the parties' claimed hardships, some district courts in this circuit specifically evaluate the following factors: "(1) plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest."[31] Under these guiding principles, the court concludes that Defendants have established that a general discovery stay is warranted until the court has resolved the anticipated Motions to Dismiss.

**1. The Defendants' Anticipated Motions to Dismiss**

The court preliminarily reviews the nature of the anticipated Motions to Dismiss as Defendants have generally described in their briefing. This is relevant to the court's analysis

---

[27] *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008).

[28] *Commodity Futures Trading Com'n v. Chilcott Portfolio Management, Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983) (noting the "underlying principle . . . that '[t]he right to proceed in court should not be denied except under the most extreme circumstances.'" (quoting *Klein v. Adams & Peck*, 436 F.2d 337, 339 (2d Cir. 1971)).

[29] *Chilcott Portfolio Management , Inc.*, 713 F.2d at 1484 (citations omitted).

[30] *Id.* (quoting *Landis*, 299 U.S. at 255).

[31] *String Cheese Incident, LLC v. Stylus Shows, Inc*., 2006 WL 894955, *2 (D. Colo. Mar. 30, 2006) (citing *FDIC v. Renda*, 1987 WL 348635, *2 (D.Kan. Aug. 6, 1987)); *see also Hernandez v. Asset Acceptance, LLC*, 970 F.Supp.2d 1194 (D. Colo. 2013) (citing the *String Cheese* and *Renda* cases).

because if they seek dismissal of all claims against all or some of the Defendants, then subjecting those Defendants to discovery they might otherwise wholly avoid seems less inviting. Though Defendants have yet to file their Motions, in their briefing they represent that they will move to dismiss the Consolidated Amended Complaint with prejudice on at least the following grounds:

1) All Defendants will argue the Consolidated Amended Complaint should be dismissed in its entirety because it fails plausibly to allege conspiracy allegations, and Plaintiffs are unlikely to be able to cure this deficiency;

2) Some Defendants will move to dismiss for lack of jurisdiction and/or improper venue;

3) Some Defendants will seek to compel arbitration based on clauses set forth in contracts with growers and to dismiss the claims against them in this action; and

4) One Defendant will seek to enjoin or dismiss litigation against it based on a confirmation order entered by the U.S. Bankruptcy Court for the Northern District of Texas.[32]

Accordingly, all Defendants will seek dismissal of this action in its entirety, and some Defendants will seek dismissal of all claims against them on the basis of "threshold" issues, including jurisdiction and venue.

The parties spend a good part of their briefing discussing the nature and merits of the Defendants' anticipated Motions to Dismiss. In evaluating whether to stay discovery pending resolution of a dispositive motion, courts often discuss the nature of the defenses asserted in the motion, as this court has done based on Defendants' representations in the briefing on this

---

[32] Defendants also contend in their opening brief that "even if the Complaint withstands dismissal motions, discovery would still be wasteful and unnecessary[]" because the Plaintiffs will be unable to succeed in getting their proposed class certified. Dkt. 144 at 9. This argument seems misplaced at this stage of the case, and is unpersuasive. As Plaintiffs note in response, the Defendants' Motion to Stay is premised on awaiting resolution of anticipated motions to dismiss, which will be decided long before the court determines whether to certify a class.

Motion.[33] Some courts also some delve into a motion's likelihood of success.[34] This court determines in the context of this case that it need not delay a decision on the discovery stay issue until it can evaluate in detail the actual Motions to Dismiss and engage in an in-depth legal analysis—akin almost to a preliminary or advisory ruling on the Motions. The court finds it sufficient that the parties appear to have a significant dispute on the defenses Defendants intend to assert. The court next turns its attention to the balancing of the competing interests.

2. **Plaintiffs' Interests**

The court first evaluates Plaintiffs' interests in avoiding a stay, including whether a delay will prejudice or "work damage" to them. After careful review, it appears that any prejudice to Plaintiffs resulting from a relatively brief discovery stay will be minimal in the context of this case and does not weigh strongly against the imposition of a stay.

Like most litigants, Plaintiffs are eager to proceed with their case. Along these lines, they contend that Defendants' proposed discovery stay will harm them by prolonging the damage to their livelihoods occasioned by "Defendants' anticompetitive conduct" and "because pre-

---

[33] The court in *Ciempa v. Jones*, 2012 WL 1565284 (N.D. Okla. May 2, 2012), cited by the Defendants, noted that "[a] stay of discovery until after resolution of a pending dispositive motion is appropriate 'where the case is likely to be finally concluded as a result of the ruling thereon, where the facts sought through uncompleted discovery would not affect the resolution of the motion, or where discovery on all issues of the broad complaint would be wasteful and burdensome.'" The court then granted the defendants' motion to stay discovery pending resolution of their summary judgment motion based on the argument that plaintiff failed to exhaust required administrative remedies, where the discovery plaintiff sought was unrelated to the exhaustion issue and engaging in unrelated discovery would be "wasteful and burdensome." *Id.* at *3. The court did not evaluate the likelihood that the dispositive motion would succeed—but its subject matter was relevant to whether the plaintiff needed to conduct discovery pending the resolution of the motion.

[34] For example, in *Hong Leong Finance Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69 (S.D.N.Y. 2013), the court evaluated whether there was good cause to stay discovery pending resolution of the defendants' motion to dismiss the plaintiff's Lanham Act, fraud, and contract claims. The court noted that district courts in the Second Circuit considered in their analysis the "strength of the motion"—but that some courts interpreted that to mean the motion simply did "not appear to be without foundation in law," while other courts more stringently required a motion to have "substantial grounds." *Id.* at 72-73 (citations omitted). That court determined to apply the "substantial grounds" test.

judgment interest is rarely granted, [therefore] a stay offers Defendants an unearned windfall."[35] They also point out that a delay may cause unspecified evidence to disappear and unidentified witnesses to become unavailable or have memories fade.[36]

The court seeks to move this case to an efficient resolution. But it cannot conclude that these interests Plaintiffs identify will be significantly affected by a limited discovery delay measured in months while the court considers the anticipated Motion to Dismiss.

First, the court cannot conclude a short period of additional time will work significant additional harm to Plaintiffs, particularly in view of the lengthy time this case has been percolating and will take to litigate. The conduct at issue in the Consolidated Amended Complaint began nearly a decade ago. This litigation—a proposed antitrust class action with thousands of potential claimants against twelve large companies and potentially involving thousands of claimants—puts that decade of conduct at issue. There is little doubt these claims will take a substantial amount of time to litigate. In this context, a few months' delay to permit evaluation of initial Motions to Dismiss as this case begins will work only a comparatively small amount of harm to Plaintiffs.[37]

Second, the court finds that a limited discovery stay is unlikely to be the cause of lost evidence, missing witnesses, or significantly faded memories. Defendants are under an obligation to retain evidence; and they state in their briefing that they have preservation holds in place. Plaintiffs have prepared and are able to serve subpoenas to third parties to ensure that they

---

[35] Dkt. 151 at 11.

[36] *Id.*

[37] And, as Defendants note in their briefing, the harm Plaintiffs claim here—to their livelihoods from Defendants' alleged anticompetitive activity and a possible inability to recover interest that will unfairly remain in Defendants' pockets—all assumes that Plaintiffs will prevail on their claims. This is something that the court cannot clearly evaluate at this time. But if they prevail, they will be able to seek monetary recovery from Defendants their damages to their livelihood and may also seek interest.

too retain evidence pending the start of discovery. It is unclear to the court from the parties' briefing the witnesses who might become unavailable following a limited discovery stay. Where this is so, and given the complex nature of this proposed antitrust class action, the decade of conduct at issue, and the length of time it will likely take to resolve the action, the court cannot conclude that staying discovery for a short period will notably risk the loss of any witnesses or testimony.

### 3. Burden on the Defendants

The court next evaluates the alleged burden on the Defendants. They contend that the complex antitrust subject matter of this case necessarily means that discovery will be extremely costly and burdensome to them, and that the wide-ranging allegations concerning a decade of conduct and directed against a dozen Defendants in the Consolidated Amended Complaint only exacerbate these costs and burdens because the breadth of discovery will be very broad. They argue these costs and burdens weigh in favor of a discovery stay to ensure Plaintiffs' pleaded claims are legally plausible and that only those among the dozen Defendants truly subject to suit in this venue are subjected to them. The court agrees that these considerations strongly favor a stay, particularly in light of the minimal prejudice Plaintiffs identify.

Still, Plaintiffs suggest that if the court finds Defendants' position persuasive on this issue, it might permit "preliminary" discovery to begin in steps—a Rule 16 conference, requests and objections, negotiation of a protective order for handling electronically stored information (ESI), and producing certain categories of data. But the court generally agrees with Defendants that the preliminary nature of these steps does little to lessen the discovery burden on the parties, particularly in the time the court will take to resolve the Motions to Dismiss. The steps will be undertaken with uncertainty as to whether all, some, or no Defendants and claims will remain in

9

the case. And even those preliminary steps will require substantial time and money spent in negotiations, planning, document review, preparing and objecting to discovery requests, establishing protocols for ESI disclosures, and resolving possible disputes on these matters.

### 4. The Court's Convenience and the Public Interest

The court next discusses the "convenience to the court" and public interest factors. The court seeks in all cases to resolve cases both promptly and efficiently. In many, if not most cases, the court would be disinclined to stay discovery simply because a dispositive motion were forthcoming or pending. And the court's own convenience is not of primary concern in most instances.

But the careful use of judicial resources—an interest to both the court and the public— has been of significant concern since the inception of this complex antitrust putative class action, involving a decade's worth of allegations against a dozen companies in the poultry industry. To that end the court has, and will continue to work to find ways to make litigation of this case comport with common sense for the benefit of all. The court sua sponte consolidated the two underlying cases and, in its June 14 order, expressly encouraged the Defendant poultry companies to find common ground on legal and factual issues when possible in order to minimize the number filings to which Plaintiffs must separately respond. Defendants appear to have taken this guidance to heart.

Under the particular circumstances in this case, the court concludes that the public interest is furthered by first resolving the initial Motions to Dismiss and determining which claims and Defendants will remain in this case before discovery begins in earnest. This not only may conserve judicial resources by waiting until the court resolves threshold issues before becoming mired in possible discovery disputes; it is also consistent with the court's initial

10

admonishment to Defendants to minimize disparate and costly filings and side-disputes by finding common factual and legal ground. When the court has given answers to the parties as to what claims and Defendants are properly before it, the Defendants will more ably comply with the court's admonishment.

**5. The Interests of Non-Parties**

The court briefly addresses the interests of non-parties. Though the parties do not squarely address this factor in their initial briefing, the Defendants recently supplied to the court notice of twenty-four subpoenas that Plaintiffs intend to serve on non-party poultry production companies. With thirty-three categories of requested documents, these subpoenas seek a wide range of documents from these companies on their management, finances, and personnel. The burden and expense on these third-party companies in responding to these subpoenas will be significant. The court finds this factor weighs in favor of a limited discovery stay pending the resolution of Defendants' initial Motions to Dismiss.

## CONCLUSION

Based on the foregoing, the court finds Defendants have met their burden to show clear hardship to themselves and third parties warranting a discovery stay in this action pending the resolution of their initial Motions to Dismiss. While Plaintiffs may suffer some delay in litigating their claims, and generally claim that this delay adds to their continuing financial harm—assuming for the moment they are entitled to recover from any Defendant—the court concludes that on balance, a stay should issue. In the context of this complex, putative class antitrust action with potentially thousands of claimants asserting claims of illicit conduct spanning a decade, a limited delay in discovery to resolve threshold issues raised at the outset of litigation will not only prevent potentially unnecessary expenses, it will also serve judicial

economy. For these reasons, the court GRANTS Defendants' Motion to Stay Discovery[38] pending resolution of Motions to Dismiss filed on September 8, 2017.[39]

SO ORDERED this 1st day of September, 2017.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge

---

[38] Dkt. 144.

[39] In granting Defendants' Motion, the court does not foreclose any party from requesting permission to conduct discovery that may be needed to respond to forthcoming Motions to Dismiss. Any party may, if necessary, seek leave from the court to conduct such discovery.