IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE: BROILER CHICKEN GROWER LITIGATION<br><br>This Document Relates To All Cases | No. 6:17-CV-00033-RJS<br><br>The Honorable Robert J. Shelby<br><br>**DEFENDANTS' CORRECTED SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS** |

## INTRODUCTION

Pursuant to the Court's Minute Order at Dkt No. 233, Defendants hereby file a Corrected Supplemental Brief. The Corrected Supplemental Brief omits the top banner and is otherwise the same as the supplemental brief previously filed.

During the April 20, 2018 hearing on Defendants' motion to dismiss, the Court inquired as to why the issue of market definition was not more robustly addressed in Defendants' opening brief. (4/20/18 Hr'g Tr., 38:5–15.) The reason, as discussed at the hearing, is that Plaintiffs pled a *per se* case; the Complaint did not mention the "rule of reason" even once. Plaintiffs now concede that standard does not apply to their information-sharing claim. (*See* Dkt. 200 at 9 ("the exchange of information is not illegal *per se*, but can be found unlawful under a rule of reason analysis").) For this reason alone, Plaintiffs' Complaint should be dismissed; the Complaint does not allege the essential elements of their claim.

Yet even if the Court were to analyze the information-sharing claim under the rule of reason, the same result follows. Defendants[1] do not rehash each basis for dismissal here. Rather, following up on the Court's questions, Defendants seek to further elaborate on Plaintiffs' failure to plead essential elements of a rule of reason claim: (i) a plausible relevant market and (ii) an anticompetitive effect on that market. (4/20/18 Hr'g Tr., 38:15–16 (the Court discussing possibility of "additional briefing" on relevant market).)

---

[1] In light of the injunction entered by the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (*see* Dkt. 221), Defendant Pilgrim's Pride Corporation does not join in filing this Supplemental Brief. However, Pilgrim's agrees with the arguments presented herein.

1

**ARGUMENT**

I.  **PLAINTIFFS' CLAIM SHOULD BE DISMISSED FOR FAILURE TO PLEAD A PLAUSIBLE GEOGRAPHIC MARKET.**

The rule of reason is "an inquiry into market power and market structure designed to assess the combination's actual effect." *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769 (1984) (citations omitted). Accordingly, the Tenth Circuit has held that the rule of reason obliges courts "to analyze the relevant market power of the defendants and therefore requires the plaintiff to allege a valid market." *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1119 (10th Cir. 2008) (citing *Diaz v. Farley*, 215 F.3d 1175, 1182 (10th Cir. 2000)).

The purpose of this requirement at the pleading stage is to determine whether allegations of competitive harm are plausible; indeed, "[w]ithout a well-defined relevant market, a court cannot determine the effect that an allegedly illegal act has on competition." *Little Rock Cardiology Clinic PA v. Baptist Health*, 591 F.3d 591, 596 (8th Cir. 2009) (citation omitted); *see Tarabishi v. McAlester Reg'l Hosp.*, 951 F.2d 1558, 1569 n.15 (10th Cir. 1991) ("[P]roof of markets is required so that adverse impact on *competition* can be evaluated."); ABA Section of Antitrust Law, *Antitrust Law Developments* 70 (8th ed. 2017) ("Without defining the relevant market, there may be no meaningful context within which to assess the restraint's potential competitive effects." (citing numerous cases in support)).[2] Thus, market definition acts as a screen to ensure that defendants do not need to spend millions in discovery where the court has no tools to plausibly determine whether the complained of conduct actually harms consumer welfare. *See also Concord Assocs., L.P. v. Entm't Properties Tr.*, 817 F.3d 46, 52 (2d Cir. 2016) ("To survive a motion to dismiss, a Sherman Act claim ***must*** . . . define the relevant geographic market" and plead "sufficient facts to allege plausibly the existence of both a product and geographic market." (emphasis added)); *Full Draw Prods. v. Easton Sports, Inc.*, 182 F.3d 745, 756 (10th Cir. 1999) ("to state a claim" under the Sherman Act, "the plaintiff must plead . . . [a] relevant market (including geographic market and relevant product market").

To define a valid market, a plaintiff must identify **both** a relevant product market and a relevant geographic market, which is "the **narrowest** market which is wide enough so that products

---

[2]  *See also SCFC ILC, Inc. v. Visa USA, Inc.*, 36 F.3d 958, 966 (10th Cir. 1994) ("By defining the relevant market . . . we identify the firms that compete with each other. Plugged into the market power inquiry, we may then determine whether the alleged anticompetitive activity restrained trade . . . .").

from adjacent areas cannot compete on substantial parity with those included in the market." *Buccaneer Energy (USA) Inc. v. Gunnison Energy Corp.*, 846 F.3d 1297, 1312, 1314 (10th Cir. 2017) (emphasis added and citations omitted). Here, Plaintiffs have not met their burden under the rule of reason by alleging facts that, if proven true, would plausibly support a national geographic market.

Specifically, a nationwide market is **contradicted** both by Plaintiffs' actual allegations and common sense. (*See* Dkt. 208 at 8.) A Grower cannot possibly (much less plausibly) view an Integrator whose complex is across the country as a "reasonably good substitute[]" for those within driving distance. *Campfield*, 532 F.3d at 1118. (*E.g.*, Compl. ¶ 89 (alleging that in 2012 "over three-quarters of Growers ha[d] more than one Integrator in their geographic area," such that **those** Growers "could, in theory, switch Integrators"); ¶ 141 (alleging that "the 'no poach' agreement directly suppresses competition for Broiler Grow-Out Services **in areas with more than one Integrator**" (emphases added)).) Plaintiffs' nationwide market definition is thus "fatally overbroad," as it "advances no credible allegation" that Growers sell, or Defendants compete for, grow-out services on a national level. *Drake v. Cox Commc'ns, Inc.*, 2011 WL 2680688, at *3 (D. Kan. July 8, 2011); *see, e.g.*, *Wheeler v. Pilgrim's Pride Corp.*, 246 F.R.D. 532, 536 (E.D. Tex. 2007) ("Due to the costs and other logistical concerns the growers are typically located within forty to fifty miles of the processing plant in the [Integrator's] complex.").[3]

Accordingly, Plaintiffs' rule of reason claim must be dismissed for failure to plead a relevant market.[4] *See, e.g.*, *Campfield*, 532 F.3d at 1119 ("By failing to allege an appropriate

---

[3]   Plaintiffs speculate that because certain Growers or Integrators could theoretically "move" across the country, these localized markets may somehow be inflated into one **national** market. (*See* Compl. ¶ 135; 4/20/18 Hr'g Tr., 75:16–77:5.) But Plaintiffs' conjecture is belied by their own allegations of "high entry barriers for Integrators" and "high exit barriers for Growers." (Compl. ¶¶ 59–62, 92–97; 4/20/18 Hr'g Tr., 77:21–22 (Plaintiffs acknowledging "[w]e have alleged high barriers to mobility, high barriers to movement . . .").)

[4]   In some cases, of course, dismissal at the pleading stage may be premature where a "proper market definition can be determined only after a factual inquiry into the commercial realities faced by consumers." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997). That is not this case. Whatever the correct definition of "market(s)" for Grower services might be, Plaintiffs' proposal plainly is not even in the ballpark. This is dispositive of their claim. *Plaintiffs*, not Defendants, "have the burden of defining the relevant market." *Id.* Moreover, antitrust plaintiffs can allege hundreds of local markets in complaints, and there is no reason why Plaintiffs could not do so here if their claims had adequate factual support. *See, e.g.*, Compl. ¶ 30, *United States v. Aetna Inc.*, No. 1:16-cv-01494, ECF No. 1 (D.D.C.

market, [plaintiff] has failed to state a claim under § 2 of the Sherman Act."); *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1025 (10th Cir. 1992) (affirming dismissal of Sherman Act claim because proposed market was defined too narrowly).

Rule 12 does not permit Plaintiffs to assert an implausible market definition in the hopes of dramatically altering it down the line. (*See* 4/20/18 Hr'g Tr., 80:1–81:7.) Rather, where, as here, a plausible market is not adequately pled under the rule of reason, the claim must be dismissed. *See, e.g.*, *Campfield*, 532 F.3d at 1119; *TV Communications*, 964 F.2d at 1025; *Klein-Becker USA LLC v. Englert*, 2007 WL 2821644, at *1 (D. Utah Sept. 26, 2007) (ordering dismissal where counterclaimants did not "adequately state an alleged product market as required to state either a Sherman Act § 1 or § 2 claim because they d[id] not offer any plausible explanation as to why a market should be limited in a particular way" (internal quotation marks omitted)).

Nor can the relevant market(s) in this case properly become broader simply because Defendants purchase Grower services in various areas across the country. *See, e.g.*, *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1027 (10th Cir. 2002) (explaining that defendants' sales of products "in several different international markets cannot establish a worldwide [relevant] market" because plaintiffs failed to establish that this was "the area where . . . customers would look to buy" the underlying products); *Heerwagen v. Clear Channel Commc'ns*, 435 F.3d 219, 230 (2d Cir. 2006) ("Local markets for tickets sales are not transformed into a national market simply because concert tours are coordinated nationally."), *overruled on other grounds by Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,* 546 F.3d 196, 201 (2d Cir. 2008).

Contrary to Plaintiffs' suggestion at oral argument, a geographic market that is pled too broadly, as opposed to "too narrow[ly]," is implausible all the same. (4/20/18 Hr'g Tr., 115:23–24.) For instance, in *Cox Communications* the court dismissed the plaintiff's Sherman Act claims against a cable television provider and an advertisement company because the proposed "national market" for public service announcements was obviously overbroad. 2011 WL 2680688, at *3. A market of nationwide scope was implausible, the court explained, because "[b]y its very nature, cable television is **local**." *Id.* (emphasis added). So, too, with grow-out services.

---

July 21, 2016) (alleging that each of 364 counties listed in the appendix were a relevant geographic market), *available at* https://www.justice.gov/atr/file/878196/download.

4

In sum, Plaintiffs have posited a nationwide market without any factual allegations to support it—and, indeed, with many to flatly contradict it. That requires dismissal. *See, e.g.*, *Uretek USA, Inc. v. Applied Polymerics, Inc.*, 2011 WL 6029964, at *5 (E.D. Va. Dec. 5, 2011) (granting plaintiffs' motion to dismiss defendant's antitrust counterclaim because defendants' assertion that "the relevant product market is the pavement lifting and roadway repair and maintenance industries, and the relevant geographic market is the United States . . . is too broad and is unsupported by factual allegations"); *Samsung Elecs. Co. v. Panasonic Corp.*, 2015 WL 10890655, at *4 (N.D. Cal. Sept. 30, 2015) (finding market definition for flash memory cards "too broad to be plausible" due to "no showing of reasonable interchangeability of use and cross-elasticity of demand" and insufficient details evincing "a single relevant market" for different types of customers).

## II. PLAINTIFFS' BARE ASSERTIONS OF ANTICOMPETITIVE EFFECT ARE INSUFFICIENT UNDER *TWOMBLY* AND CANNOT EXCUSE THEIR FAILURE TO PLEAD A PLAUSIBLE RELEVANT MARKET.

At the hearing, Plaintiffs' counsel argued for the first time that they were relieved of the burden of alleging a relevant market under *FTC v. Indiana Federation of Dentists ("IFD")*, 476 U.S. 447 (1986) because they have pled direct anticompetitive effects. (4/20/18 Hr'g Tr., 78:24–79:25.) This argument appears nowhere in their brief opposing dismissal and should be deemed waived. *See Fed. Ins. Co. v. Tri-State Ins. Co.*, 157 F.3d 800, 805 (10th Cir. 1998) ("Issues raised for the first time at oral argument are considered waived." (citation omitted)). But even if the Court considers the argument, it should be rejected.

***First***, Plaintiffs do not adequately plead actual direct effects because they fail to allege any facts connecting allegedly suppressed Grower compensation to information exchanges. Missing from the Complaint are any allegations that Grower compensation changed after any particular information exchange or meeting, by what amount Grower compensation was allegedly suppressed, or what Grower compensation would have been but-for the information exchange. Moreover, Plaintiffs plead that Grower compensation has been in relative decline since at least the 1980s and, based on one study, unprofitable in most years between 1999 and 2009. (*See* Compl. ¶¶ 151–52; *see also* Dkt. 193 at 18–19.) Because Plaintiffs only allege a conspiracy beginning in 2008 (Compl. ¶ 1), they have not pled direct evidence of suppressed compensation as a result of an information exchange as opposed to any decrease as part of preexisting trends.

***Second***, conclusory and speculative allegations of suppressed compensation do not survive under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and cannot open the doors to discovery forcing Defendants collectively to incur millions of dollars in discovery costs. If such conclusory allegations could, information exchange cases would become antitrust "end runs," for all a plaintiff would need do to survive a motion to dismiss would be to make two simple allegations: first, that the defendants subscribed to an information exchange service; and second, that prices were lower than they should be in a competitive market. That cannot be the law. *See Twombly*, 550 U.S. at 558–59 (discussing importance of plausibility standard in light of antitrust discovery costs).

Indeed, the logic of *Twombly* was to stop defendants from having to bear those costs for claims likely to be rejected in the future (*e.g.*, in this case, for failure to plead a relevant market, among other defects). *See Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 797 F.3d 538, 543 (8th Cir. 2015) ("Given the unusually high cost of discovery in antitrust cases, the limited success of judicial supervision in checking discovery abuse[,] and the threat [that] discovery expense will push cost-conscious defendants to settle even anemic cases . . ., the federal courts have been reasonably aggressive in weeding out meritless antitrust claims at the pleading stage." (internal citations omitted)). Thus, courts routinely grant motions to dismiss where, as here, the allegations of actual detrimental effects are conclusory and cannot withstand *Twombly*. *See, e.g.*, *Sherr v. HealthEast Care Sys.*, 262 F. Supp. 3d 869, 884–85 (D. Minn. 2017) ("Broad, unsupported allegations of actual detrimental effects are inadequate to withstand a motion to dismiss." (citation omitted)).

***Third***, the Tenth Circuit has already rejected the position that bare allegations of direct effects relieve plaintiffs of the burden to plead and prove a relevant market. In *Tarabishi*, plaintiffs similarly argued that *IFD* relieved them of the burden of pleading and proving relevant markets. 951 F.2d at 1569 n.15. Yet the Tenth Circuit held that "[w]hat plaintiffs fail to realize . . . is that the 'proof of actual detrimental effects' requires more than the simple allegation . . . [of] reduced competition." *Id.* Although *Tarabishi* was primarily a monopolization case under Section 2 of the Sherman Act decided after trial, the Tenth Circuit's insistence on more than a bare allegation equally applies at the motion to dismiss stage under *Twombly*. *See Twombly*, 550 U.S. at 556 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .").

***Last***, *IFD*, at most, suggests antitrust plaintiffs need not plead a relevant market in exceptional cases where direct anticompetitive effects are clear on the face of the complaint under

6

*Twombly*. *IFD* was a rare rule of reason case where "an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anticompetitive effect on customers and markets." *Cal. Dental Ass'n v. FTC*, 526 U.S. 756, 770 (1999). It is thus unremarkable that, as the Tenth Circuit has held, "where a practice has obvious anticompetitive effects—as does price-fixing—there is no need to prove that the defendant possesses market power." *Law v. NCAA*, 134 F.3d 1010, 1020 (10th Cir. 1998).

But an information-sharing claim is very different from price-fixing because "[t]he exchange of price data and other information among competitors does not invariably have anticompetitive effects." *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978). Thus, Plaintiffs must plead a relevant market to state a plausible information-sharing claim because direct competitive harm under the facts alleged is not obvious and Plaintiffs have not pled even the rough contours of a valid market. *See Procaps S.A. v. Patheon, Inc.*, 845 F.3d 1072, 1086 (11th Cir. 2016) (explaining that "*IFD* was primarily a **quick look case**" and that (unlike here) "the evidence in that case showed that the [alleged] restraint was actually very successful . . . [and] actually affected the market in a concrete and palpable way" (emphasis added)); *Worldwide Basketball & Sport Tours, Inc. v. NCAA*, 388 F.3d 955, 960-61 (6th Cir. 2004) (distinguishing *IFD*'s direct effects language as "an able **exposition of the quick-look standard**" and inapplicable in full rule of reason cases) (emphasis added); *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 737 (7th Cir. 2004) (clarifying that *IFD* simply "stand[s] for the proposition that if a plaintiff can show the **rough contours of a relevant market**, . . . then **direct evidence** of anticompetitive effects can establish the defendant's market power—in lieu of the usual showing of a precisely defined relevant market and a monopoly market share" (emphasis added)).

## CONCLUSION

For the foregoing reasons, and the reasons stated in Defendants' motion, the Court should dismiss the Complaint with prejudice.

Dated:  May 10, 2018                                     Respectfully submitted,

                                                          /s/ John D. Harkrider

John D. Harkrider (admitted *pro hac vice*)
**AXINN, VELTROP & HARKRIDER LLP (NY)**
114 W 47th St
New York, NY 10036
212-728-2210
Fax: 212-728-2201
jharkrider@axinn.com

Michael L. Keeley (admitted *pro hac vice*)
**AXINN, VELTROP & HARKRIDER LLP (DC)**
950 F St, NW
Washington, DC 20004
202-721-5414
Fax: 202-912-4701
mkeeley@axinn.com

Mark C. Tatum (admitted *pro hac vice)*
Michael S. Cargnel (admitted *pro hac vice)*
Robert T. Adams (admitted *pro hac vice*)
**SHOOK HARDY & BACON, LLP (MO)**
2555 Grand Blvd
Kansas City, MO 64108
816-474-6550
Fax: 816-421-5547
mtatum@shb.com
mcargnel@shb.com
rtadams@shb.com

Lawrence R. Murphy, Jr, OBA # 17681
**RICHARDS & CONNOR, PLLP**
525 S Main St, 12th Flr
Tulsa, OK 74103
918-585-2394
Fax: 918-585-1449
lmurphy@richardsconnor.com

Michael Burrage, OBA #1350
Patricia Sawyer, OBA #30712
**WHITTEN BURRAGE**
1215 Classen Dr
Oklahoma City, OK 73103
405-516-7800
Fax: 405-516-7859

mburrage@whittenburragelaw.com
psawyer@whittenburragelaw.com


*Counsel for Defendants Tyson Foods, Inc., Tyson Chicken, Inc., Tyson Breeders, Inc., Tyson Poultry, Inc.*

J. Douglas Baldridge (admitted *pro hac vice*)
Lisa Jose Fales (admitted *pro hac vice*)
Andrew T. Hernacki (admitted *pro hac vice*)
Robert P. Davis (admitted *pro hac vice*)
**VENABLE, LLP (DC)**
600 Massachusetts Ave, NW
Washington, DC 20001
202-344-4264
Fax: 202-344-8300
athernacki@venable.com
jbaldridge@venable.com
ljfales@venable.com
rpdavis@venable.com

Leonard L. Gordon (admitted *pro hac vice*)
**VENABLE, LLP (NY)**
1270 Ave of the Americas, 24th Flr
New York, NY 10020
212-370-6252
Fax: 212-307-5598
lgordon@venable.com

Kevin R. Donelson, OBA #12647
**FELLERS SNIDER**
100 N Broadway, Ste 1700
Oklahoma City, OK 73102
405-232-0621
Fax: 405-232-9659
kdonelson@fellerssnider.com

*Counsel for Defendant Perdue Farms, Inc.*

## CERTIFICATE OF SERVICE

      On May 10, 2018, I electronically transmitted a true and correct copy of the foregoing document to the Clerk of Court for filing using the CM/ECF system, which will send notification of such filing to all counsel of record.

      /s/ John D. Harkrider