# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| **IN RE: BROILER CHICKEN GROWER ANTITRUST LITIGATION (NO. II)** | MDL No. 6:20-2977-RJS-CMR<br><br>Hon. Chief Judge Robert J. Shelby<br><br>Hon. Cecilia M. Romero |

**PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH KOCH AND FOR CERTIFICATION OF THE SETTLEMENT CLASS**

## **TABLE OF CONTENTS**

I.  Introduction ...................................................................................................................... 1

II.  Background ...................................................................................................................... 2

   A.  Litigation History ....................................................................................................... 2

   B.  The Settlement Negotiations and Resulting Agreement ........................................... 3

      1.  Monetary Consideration Provided Under the Settlement Agreement.................. 4

      2.  Non-Monetary Consideration Provided Under the Settlement Agreement ........ 4

      3.  Release for Koch ................................................................................................. 5

      4.  Rescission Based on Opt-Outs ........................................................................... 5

   C.  The Proposed Distribution to Settlement Class Members ......................................... 5

III.  The Koch Settlement Merits Preliminary Approval ....................................................... 6

   A.  Legal Standards for Preliminary Approval of Class Action Settlements ................. 6

   B.  Plaintiffs and Interim Co-Lead Class Counsel Have Represented the Settlement Class Vigorously and Skillfully (1st Rule 23 Factor) ......................................................... 7

   C.  The Settlement is the Product of Informed, Arm's Length Negotiations (1st Tenth Cir. Factor and 2nd Rule 23 Factor) ................................................................................. 8

   D.  Serious Questions of Law and Fact Exist That Place the Outcome of the Litigation in Doubt (2nd Tenth Cir. Factor) ..................................................................................... 9

   E.  The Relief Provided to the Settlement Class is Substantial (3rd Tenth Cir. Factor and 3rd Rule 23 Factor) ................................................................................................... 10

      i.  The Relief is Adequate Considering the Effectiveness of Plaintiffs' Proposed Method of Distributing Relief to the Settlement Class ....................................... 11

      ii.  The Relief is Adequate Considering the Contemplated Requests for Attorneys' Fees, and Expenses, Which Are Within the Range Routinely Awarded in Analogous Antitrust Litigation ................................................................................................ 11

   F.  The Relief is Adequate Because the Settlement and the Proposed Plan of Allocation Treats Class Members Equitably (4th Rule 23 Factor) ................................................ 12

   G.  Counsel, in Their Judgment, Recommend the Settlement (4th Tenth Cir. Factor) ............. 13

IV.  The Settlement Class Satisfies Rule 23(a) and Rule 23(b)(3) ..................................... 14

   A.  The Numerosity Requirement is Satisfied ............................................................. 14

   B.  The Commonality Requirement is Satisfied .......................................................... 15

   C.  The Typicality Requirement is Satisfied ................................................................ 15

   D.  The Adequacy Requirement is Satisfied ................................................................ 16

   E.  The Predominance Requirement is Satisfied .......................................................... 16

   F.  The Superiority Requirement is Satisfied ............................................................... 19

i

V.      Interim Co-Lead Class Counsel Should Be Appointed Settlement Counsel ........................ 19

VI.     Plaintiffs Will Bring a Separate Motion to Approve the Form and Manner of Dissemination of Notice to the Settlement Class .................................................................................................. 20

VII.    Conclusion ............................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
No. 06-MD-1775, 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014)............................................15

*Alvarado Partners, L.P. v. Mehta*,
723 F. Supp. 540 (D. Colo. 1989).................................................................................9, 13

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012)...............................................................................................18

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)...............................................................................14, 17, 18, 19

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013).......................................................................................................17

*In re Blue Cross Blue Shield Antitrust Litig.*,
No. 2:13-cv-20000, 2020 WL 8256366 (N.D. Ala. Nov. 30, 2020)......................................12

*Cazeau v. TPUSA, Inc.*,
No. 2:18-cv-00321, 2021 WL 1688540 (D. Utah Apr. 29, 2021) (Shelby, J.).............7, 10, 12

*Childs v. Unified Life Ins. Co.*,
No. 10-cv-23, 2011 WL 6016486 (N.D. Okla. Dec. 2, 2011) ................................................10

*In re Corrugated Container Antitrust Litig.*,
MDL No. 310, 1981 WL 2093 (S.D. Tex. June 4, 1981),
*aff'd*, 659 F.2d 1322 (5th Cir. 1981)...................................................................................10

*In re Dep't of Energy Stripper Well Exemption Litig.*,
653 F. Supp. 108 (D. Kan. 1986).........................................................................................13

*Doe v. Ariz. Hosp. & Healthcare Ass'n*,
No. 07-cv-1292, 2009 WL 1423378 (D. Ariz. Mar. 19, 2009)..............................................17

*In re Domestic Airline Travel Antitrust Litig.*,
378 F. Supp. 3d 10 (D.D.C. 2019)........................................................................................10

*Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*,
807 F. App'x 752 (10th Cir. 2020) .........................................................................................7

*In re High-Tech Emp. Antitrust Litig.*,
856 F. Supp. 2d 1103 (N.D. Cal. 2012) ...............................................................................17

*In re Integra Realty Res., Inc.*,
    262 F.3d 1089 (10th Cir. 2001) ........................................................................1

*Koehler v. Freightquote.com, Inc.*,
    No. 12-cv-2505, 2016 WL 1403730 (D. Kan. Apr. 11, 2016)........................13

*Lewis v. Wal-Mart Stores, Inc.*,
    No. 02-cv-0944, 2006 WL 3505851 (N.D. Okla. Dec. 4, 2006) ....................12

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    No. 11-MD-2262, 2016 WL 7625708 (S.D.N.Y. Dec. 21, 2016) .....................1

*In re Lithium Ion Batteries Antitrust Litig.*,
    No. 13-MD-2420, 2020 WL 7264559 (N.D. Cal. Dec. 12, 2020).....................9

*McNeely v. Nat'l Mobile Health Care, LLC*,
    No. 07-cv-933, 2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) ................. *passim*

*Montgomery v. Cont'l Intermodal Grp.-Trucking LLC*,
    No. 19-cv-940, 2021 WL 1339305 (D.N.M. Apr. 9, 2021)...........................11

*Nakamura v. Wells Fargo Bank, Nat'l Ass'n*,
    No. 17-cv-4029, 2020 WL 5118070 (D. Kan. Aug. 31, 2020)......................13

*O'Dowd v. Anthem, Inc.*,
    No. 14-cv-02787, 2019 WL 4279123 (D. Colo. Sept. 9, 2019).....................13

*In re Penthouse Exec. Club Comp. Litig.*,
    No. 10-cv-1145, 2013 WL 1828598 (S.D.N.Y. Apr. 30, 2013) ......................1

*In re Processed Egg Prod. Antitrust Litig.*,
    284 F.R.D. 249 (E.D. Pa. 2012)....................................................................10

*In re Processed Egg Prod. Antitrust Litig.*,
    No. 08-MD-2002, 2016 WL 3584632 (E.D. Pa. June 30, 2016) ...................17

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015)..........................................................................18

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
    314 F.3d 1180 (10th Cir. 2002) .....................................................................16

*Shaw v. Interthinx, Inc.*,
    No. 13-cv-01229, 2015 WL 1867861 (D. Colo. Apr. 22, 2015) ...................12

*Tennille v. W. Union Co.*,
    785 F.3d 422 (10th Cir. 2015) .........................................................................6

iv

*Tyson Foods, Inc. v. Bouaphakeo,*
   577 U.S. 442 (2016) ................................................................................................16

*United Food & Com. Workers Union v. Chesapeake Energy Corp.,*
   281 F.R.D. 641 (W.D. Okla. 2012) ........................................................................15

*In re Universal Serv. Fund Tel. Billing Practices Litig.,*
   219 F.R.D. 661 (D. Kan. 2004) ........................................................................15, 19

*In re Universal Serv. Fund Tel. Billing Practices Litig.,*
   No. 02-MD-1468, 2011 WL 1808038 (D. Kan. May 12, 2011) ............................12

*In re Urethane Antitrust Litig.,*
   237 F.R.D. 440 (D. Kan. 2006) ..............................................................................14

*In re Urethane Antitrust Litig.,*
   768 F.3d 1245 (10th Cir. 2014) ........................................................................15, 17

*In re Urethane Antitrust Litig.,*
   No. 04-MD-1616, 2006 WL 2983047 (D. Kan. Oct. 17, 2006) ........................10, 12

*In re Urethane Antitrust Litig.,*
   No. 04-MD-1616, 2013 WL 3879264 (D. Kan. July 26, 2013),
   *aff'd*, 768 F.3d 1245 (10th Cir. 2014) ....................................................................13

*In re Vitamin C Antitrust Litig.,*
   279 F.R.D. 90 (E.D.N.Y. 2012) .............................................................................19

*Zapata v. IBP, Inc.,*
   167 F.R.D. 147 (D. Kan. 1996) ..............................................................................16

**Statutes**

Packers and Stockyards Act Section 202 ..........................................................................2

Sherman Act ................................................................................................................2, 19

**Rules**

Fed. R. Civ. P. 23 .........................................................................................7, 8, 10, 12

Fed. R. Civ. P. 23(a) .....................................................................................2, 14, 20

Fed. R. Civ. P. 23(a)(1) ...................................................................................14, 15

Fed. R. Civ. P. 23(a)(2) ...........................................................................................15

Fed. R. Civ. P. 23(a)(3) .................................................................................15, 16, 17

v

Fed. R. Civ. P. 23(a)(4) ...............................................................................................16

Fed. R. Civ. P. 23(b)(3) ........................................................................................ *passim*

Fed. R. Civ. P. 23(b)(3)(A)-(D) ...............................................................................19

Fed. R. Civ. P. 23(e) .........................................................................................7, 20

Fed. R. Civ. P. 23(e)(1)(B) .......................................................................................20

Fed. R. Civ. P. 23(e)(2) ...............................................................................7, 12, 20

Fed. R. Civ. P. 23(e)(2)(ii) .......................................................................................20

Fed. R. Civ. P. 23(e)(2)(A) .........................................................................................8

Fed. R. Civ. P. 23(e)(2)(B) .........................................................................................9

Fed. R. Civ. P. 23(e)(2)(C)(i) ...................................................................................10

Fed. R. Civ. P. 23(e)(2)(C)(ii) ..........................................................................11, 13

Fed. R. Civ. P. 23(e)(2)(C)(iii) .................................................................................12

Fed. R. Civ. P. 23(e)(2)(C)(iv) .................................................................................10

Fed. R. Civ. P. 23(e)(2)(D) .......................................................................................13

Fed. R. Civ. P. 23(e)(3) ..............................................................................................7

Fed. R. Civ. P. 23(g) ....................................................................................2, 19, 20

Fed. R. Civ. P. 23(g)(1) .............................................................................................19

Fed. R. Civ. P. 23(g)(1)(A) .......................................................................................19

**Other Authorities**

McLaughlin on Class Actions § 6.23 (17th ed. 2020) ...........................................12

## I.    Introduction

Plaintiffs Haff Poultry, Inc., Nancy Butler, Johnny Upchurch, Jonathan Walters, Myles Weaver, Melissa Weaver, Marc McEntire, Karen McEntire, Mitchell Mason, and Anna Mason, (collectively, "Plaintiffs"),[1] individually and on behalf of the proposed Settlement Class (defined *infra*), submit this memorandum in support of their motion seeking (a) preliminary approval of a settlement (the "Settlement") with Defendant Koch,[2] and (b) certification of the Settlement Class, for settlement purposes only.[3]

Pursuant to the Settlement, Koch and/or the Koch Group has agreed (a) to pay $15.5 million in cash (the "Settlement Amount"), (b) to provide Plaintiffs with cooperation in connection with their claims against the remaining Defendants[4]—cooperation that will potentially be valuable as Plaintiffs continue with deposition practice and toward trial, and (c) not to include or enforce provisions in its contracts with members of the Settlement Class that would either mandate

---

[1] Anna Mason is an individual plaintiff in a case that is part of this multi-district litigation and is not a proposed class representative.

[2] "Koch" means, collectively, Koch Foods, Inc. and Koch Meat Co., Inc. (doing business as Koch Poultry Co.). The "Koch Group" means Koch and all of their predecessors, successors, assigns, affiliates (including without limitation any affiliates who are alleged co-conspirators), and any and all past, present, and future parents, owners, subsidiaries, divisions, and/or departments.

[3] As discussed in connection with the prior settlements in this litigation, the Court need not wait for responses to this motion. Objections from absent Settlement Class members to the settlement would be premature (those come after notice is given), non-Settling Defendants lack standing to oppose the Settlement, and in any event, no party or person has indicated its intent to oppose preliminary approval. *E.g.*, *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1103 (10th Cir. 2001) ("[N]onsettling defendants in a multiple defendant litigation context have no standing to object to the fairness or adequacy of a settlement by other defendants[.]") (citation omitted); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-MD-2262, 2016 WL 7625708, at *3 (S.D.N.Y. Dec. 21, 2016) (objections to preliminary approval "are unavailing," as "the argument that we should not preliminarily approve the settlement . . . is premature" and "[s]uch an objection can be raised at the next stage in settlement proceedings [final approval]"); *In re Penthouse Exec. Club Comp. Litig.*, No. 10-cv-1145, 2013 WL 1828598, at *2 (S.D.N.Y. Apr. 30, 2013) (rejecting objections to preliminary approval from former named plaintiff as premature: "The proper time for the Court to consider objections to a settlement is at the final approval hearing.").

[4] "Defendants" refers to Koch; Tyson; Perdue; Pilgrim's Pride Corporation ("Pilgrim's"); and Sanderson Farms, Inc., Sanderson Farms, Inc. (Foods Division), Sanderson Farms, Inc. (Processing Division), and Sanderson Farms, Inc. (Production Division) (collectively, "Sanderson"). The "remaining" Defendants refers to the remaining, non-Settling Defendants, *i.e.*, Pilgrim's and Sanderson.

arbitration or bar initiation or participation in a class action for five years. The monetary recovery from Koch, which processes the smallest portion of the total live Broiler[5] pounds processed by the Defendants, brings aggregate recoveries in this action to over $51.25 million. The Settlement is an excellent result for the Settlement Class and merits preliminary, and ultimately, final approval.

In light of the Settlement, Plaintiffs are now moving to certify the Settlement Class under Fed. R. Civ. P. 23(a) and 23(b)(3) and for the Court to appoint Berger Montague PC and Hausfeld LLP ("Interim Co-Lead Class Counsel") as Settlement Class Counsel under Fed. R. Civ. P. 23(g). For the reasons discussed more fully below, the motion and all requested relief should be granted so the process for final approval of the Settlement can proceed.

## II.   Background

### A.   Litigation History

Plaintiffs allege that Defendants and seventeen Co-Conspirators,[6] which include the largest vertically integrated Broiler processors ("Integrators") in the United States, engaged in an overarching conspiracy to suppress compensation paid to Broiler farmers ("Growers") nationwide in violation of Section 1 of the Sherman Act and Section 202 of the Packers and Stockyards Act. *See, e.g.*, Consolidated Class Action Compl. ("CCAC") ¶¶ 166-179, ECF No. 59; *see also* Trans. of Mot. Hearing, Case No. 6:17-cv-00033, Dkt. No. 268 (E.D. Okla.) (Jan. 6, 2020) at 12:12-25. Plaintiffs seek to recover damages for themselves and all other similarly situated Growers nationwide that raised Broilers for Defendants and their alleged Co-Conspirators.

Plaintiffs have vigorously prosecuted their claims against staunch defense at every stage

---

[5] "Broilers" excludes specialty chicken that is grown, processed, and sold according to halal, kosher, free range, pasture-raised, or organic standards. Specialty chicken does not include chicken raised without antibiotics, such as No Antibiotics Ever ("NAE") or Antibiotic Free ("ABF") standards. "Broilers" as used herein includes NAE and ABF chicken. *See* Settlement § 1(d).

[6] Co-Conspirator" means the alleged co-conspirators referred to in the Complaint, that is: Agri Stats, Inc., Foster Farms, Mountaire Farms, Wayne Farms, George's, Inc., Peco Foods, Inc., House of Raeford Farms, Simmons Foods, Keystone Foods, Inc., Fieldale Farms Corp., O.K. Industries, Case Foods, Marshall Durbin Companies, Amick Farms, Inc., Mar-Jac Poultry, Inc., Harrison Poultry, Inc., Claxton Poultry Farms, and Norman W. Fries, Inc., including each of their past, present, and future, direct and indirect, corporate parents (including holding companies), owners, subsidiaries, related entities, Affiliates, associates, divisions, departments, joint ventures, predecessors, and/or successors. *See* Settlement § 1(e).

over the last five years. Since August 2021,[7] Plaintiffs have continued their efforts in discovery to substantial success. Plaintiffs have continued to meet and confer with Defendants and third parties, when necessary litigating motions to compel, resulting in the production of hundreds of thousands of additional documents (comprising millions of additional pages). Declaration of Gary I. Smith, Jr. ("Smith Decl.") ¶ 8. Plaintiffs have appeared before this Court in status conferences to keep the Court abreast of the litigation's status and any percolating disputes or recent developments and to present argument in connection with a motion to compel. *Id.* ¶ 5.

Plaintiffs are also in the midst of a rigorous deposition program. Plaintiffs have taken 33 depositions to date of Defendants' and Co-Conspirators' employees or former employees under Rule 30(b)(1) or Rule 30(b)(6), scheduled another 22 depositions of Defendant and Co-Conspirator witnesses to take place in the two months remaining prior to the close of fact discovery, and are working to schedule approximately fifteen more such depositions in that same time period. *Id.* ¶ 11. Plaintiffs are also preparing to defend the depositions of the named class representatives. *Id.*

### B. The Settlement Negotiations and Resulting Agreement

Settlement negotiations occurred directly between counsel for Plaintiffs and Koch. The negotiations, which began in June of 2021, were extensive, with counsel regularly engaging in telephonic negotiations and exchanging proposals and counterproposals. The resulting Settlement culminated in a long form settlement agreement executed on May 20, 2022. Smith Decl. ¶¶ 13-17.

> The Settlement Class is defined as:
>
> All individuals and entities in the United States and its territories that were compensated for Broiler Grow-Out Services[8] by a Defendant or Co-Conspirator, or by a division, subsidiary, predecessor, or affiliate of a Defendant or Co-Conspirator, at any time during the period January 27, 2013 through December 31, 2019 (the "Class Period").

Settlement § 5 (attached as Exhibit A to the Smith Decl.). This is the same class definition that applied to the Tyson and Perdue Settlements.

---

[7] Plaintiffs recounted the history of this litigation (from the filing of the first complaint in January 2017 through August 2021) in, *inter alia*, their Motion for Preliminary Approval of Settlement with Perdue, ECF 133. Plaintiffs will endeavor to limit the repetition here.

[8] "Broiler Grow-Out Services" means Broiler chicken growing services.

### 1. Monetary Consideration Provided Under the Settlement Agreement

Koch agreed to pay $15.5 million as part of the Settlement. Settlement Agreement § 1.z. The monetary component of the Settlement is all cash and non-reversionary and brings aggregate recoveries in this action to $51.25 million. Koch is the smallest defendant, representing approximately 5.8 percent[9] of the relevant market, and nearly a fourth the size of Tyson, which occupied 22 percent of the relevant market and settled for $21 million. The Koch settlement thus represents the highest amount any Settling Defendant has paid relative to the Defendant's market share and is an excellent result for the Settlement Class. After deducting reasonable attorneys' fees and litigation expenses (as determined by the Court) as well as claims administration costs, the common fund will be distributed to members of the Settlement Class *pro rata* as discussed below, meaning that none of the money will ever revert to Koch. The Settlement Class stands to recover even more as the case continues to proceed against the non-settling Defendants with the cooperation of the Settling Defendants.

### 2. Non-Monetary Consideration Provided Under the Settlement Agreement

In connection with the Settlement, Koch agreed: to provide Plaintiffs with a supplemental response to one of Plaintiffs' interrogatories; to endeavor to provide answers to Plaintiffs' outstanding questions regarding Koch's structured data; not to oppose or object to depositions from a certain number of Koch witnesses not deposed to date; to use reasonable efforts should Plaintiffs so request to provide Koch employees as witnesses at trial; and to use reasonable efforts to assist Plaintiffs in authenticating documents. Settlement § 10. This cooperation will potentially be valuable to Plaintiffs and the Class as this case continues through deposition practice, class certification, summary judgment, and trial.

Koch also agrees, for a period of five years after the Court enters a final judgment as to Koch in this action: (a) not to require that any member of the Settlement Class arbitrate any claims against Koch or any alleged Co-Conspirator or Defendant, (b) not to add a provision to any agreements with any Settlement Class member requiring that any claims against Koch be arbitrated, (c) not to argue that any Settlement Class members are required to arbitrate claims against Koch or

---

[9] While Plaintiffs pleaded that Koch occupied seven percent of the market and tied with Perdue as the third largest Defendant, discovery has shown that Koch was the smallest Defendant on a market share basis.

4

against any alleged Co-Conspirator or Defendant based on principles of estoppel, and (d) not to enforce any provisions in any agreements with one or more Growers purporting to ban collective or class actions against Koch. Settlement § 10.e.

### 3. Release for Koch

Plaintiffs and those members of the Settlement Class who do not opt out agree to release the Koch and the Koch Group for all claims relating to or referred to in the action or arising out of the factual predicates of this action. *See* Settlement § 14.

### 4. Rescission Based on Opt-Outs

Under the Settlement Agreement, Koch has the right and option (but not obligation) to rescind the Settlement Agreement under certain conditions based on the number of opt-outs from the Settlement Class, which are set forth in a separate confidential supplement agreement between Koch and Plaintiffs (the "Confidential Supplement"). *See* Settlement § 20.[10] The Confidential Supplement  does provide for a modest reduction of the Settlement Amount based upon a certain threshold of opt out Growers excluding themselves from the Settlement Class.

### C. The Proposed Distribution to Settlement Class Members

Growers (Settlement Class members) are paid in all or substantial part per pound of live weight of Broilers raised to slaughtering age. Plaintiffs allege and intend to prove at trial that due to the alleged conspiracy in this case, Growers were deprived of vigorous competition for their Broiler-Grow Out Services, causing the pay of all Growers for each pound of Broiler chicken produced to be artificially suppressed. CCAC ¶ 74.

Plaintiffs propose to distribute the common fund, net of Court-approved attorneys' fees, litigation expenses, and claims administration costs (the "Net Settlement Fund"), to the Settlement Class *pro rata* based on total payments received by individual Settlement Class members during the settlement Class Period. Such a *pro rata* distribution is fair and reasonable because it will compensate Settlement Class members commensurate with the degree of alleged harm suffered. For example, Growers that raised more Broilers (and thus likely suffered more in damages than Settlement Class members that grew fewer Broilers) will receive proportionately more from the Settlement. As discussed below, a *pro rata* distribution of this sort is the norm in complex antitrust class action settlements, *see* Section III.F., *infra*, and has been approved by this Court for use in

---

[10] The Confidential Supplement will be made available to the Court for *in camera* review upon request.

connection with the Tyson and Perdue settlements, *see* ECF No. 285.

Plaintiffs' proposed allocation plan will be efficient and streamlined. Those members of the Settlement Class for which Plaintiffs possess enough pay data—Growers accounting for approximately 99% of production volume covered by the Settlement Class—will receive a pre-populated form that will include each of their total payments over the Class Period. Smith Decl. ¶ 18. Those Growers will have an opportunity to respond to that form by either accepting those calculations or contesting them using their own records. *Id*. Settlement Class members that do not respond will be deemed to have accepted the calculations and be compensated based on those amounts. *Id.* This ensures that vast majority of the Settlement Class will receive a distribution from the common fund even if they do nothing—*i.e.*, without having to participate in a formal claims process, and without having to submit their own documentation, unless they so choose. *Id.*

All members of the Settlement Class for which Plaintiffs do not presently possess sufficient pay data—Growers accounting for approximately 1% of production volume covered by the Settlement Class—will have the opportunity to answer a series of simple questions through which a reasonable estimate of their total payments can be calculated using data obtained from Agri Stats, Inc.[11] Alternatively, they will be able to submit their own documentation of the amounts paid to them during the Class Period. After an estimate of total pay to each Settlement Class member is determined, the Net Settlement Fund will then be distributed *pro rata* to each Settlement Class member in proportion to each member's total pay during the Class Period. This plan of allocation will ensure the common fund is distributed to as many members of the Settlement Class as possible, as efficiently and fairly as possible.

## III. The Koch Settlement Merits Preliminary Approval

### A. Legal Standards for Preliminary Approval of Class Action Settlements

Preliminary approval of the Settlement Agreement is appropriate here because the proposed settlement is "fair, reasonable, and adequate." The proposed Settlement Class should be given notice, and a hearing should be scheduled to consider final approval. *Tennille v. W. Union Co.*, 785 F.3d 422, 430 (10th Cir. 2015).

---

[11] These questions will include primarily (1) the Coconspirator Broiler Grow-Out Services were performed for; (2) the years Broiler Grow-Out Services were performed, (3) the number of farms the Settlement Class member operated, and (4) for any partial years the Settlement Class member provided Broiler Grow-Out Services, the number of flocks raised during that partial year. Smith Decl. ¶ 19 n.20.

There are two applicable sets of multi-factor tests for evaluating whether a proposed settlement is fair, reasonable, and adequate: factors set forth in Tenth Circuit precedent, and the factors set forth in Federal Rule of Civil Procedure 23(e), as amended.

In determining whether a proposed settlement is fair, reasonable, and adequate, the Tenth Circuit considers: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) whether the parties judge the settlement to be fair and reasonable. *Cazeau v. TPUSA, Inc.*, No. 2:18-cv-00321, 2021 WL 1688540, at *3 (D. Utah Apr. 29, 2021) (Shelby, J.) (citing *Tennille*, 785 F.3d at 434).

Rule 23(e), which was amended in 2018 to include its own four-factor test for adequacy of a proposed class action settlement, considers:[12] (1) whether the class representatives and class counsel have adequately represented the class; (2) whether the proposal was negotiated at arm's length; (3) whether the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (4) whether the proposal treats class members equitable relative to each other. Fed. R. Civ. P. 23(e)(2).

The Tenth Circuit has, in at least one opinion, continued to apply its own factors after the 2018 amendments. *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752 (10th Cir. 2020) (unpublished). The Settlement satisfies both sets of factors, and Plaintiffs discuss overlapping Tenth Circuit and Rule 23(e) factors together where appropriate.

### B. Plaintiffs and Interim Co-Lead Class Counsel Have Represented the Settlement Class Vigorously and Skillfully (1st Rule 23 Factor)

Plaintiffs and Interim Co-Lead Counsel have more than adequately represented the proposed Settlement Class, which satisfies the first Rule 23 factor. To satisfy the adequacy requirement, "counsel must be qualified, experienced, and generally able to conduct the proposed litigation; the class representatives must have sufficient interest in the outcome to ensure vigorous

---

[12] These factors are delineated in Rule 23(e)(2) with letters but are reflected here with numbers for the sake of consistency.

advocacy; and the class representatives must not have antagonistic or conflicting interests with other members of the proposed class." *McNeely v. Nat'l Mobile Health Care, LLC*, No. 07-cv-933, 2008 WL 4816510, at *7 (W.D. Okla. Oct. 27, 2008). There is a "presumption of competence and experience that applies," particularly with "experienced . . . class action litigators." *Id.*

Interim Co-Lead Class Counsel—experienced class action litigators who have collectively recovered billions of dollars for injured plaintiffs over the course of their careers—have zealously and skillfully represented the interests of Plaintiffs and the Settlement Class through more than five years of hotly contested litigation. Interim Co-Lead Class Counsel have obtained an excellent result for the Settlement Class and will continue to do so as this case proceeds against the non-settling Defendants through discovery, class certification, summary judgment, and trial.

Plaintiffs and the proposed Settlement Class do not have antagonistic or conflicting claims. Indeed, they are all Growers asserting the same claims against the same Defendants to recover for the same injury inflicted by one alleged overarching anticompetitive scheme. Plaintiffs have "participated in the litigation" and are "genuinely concerned about the" alleged conduct's effects on other "similarly situated" Growers, and there has been "no evidence, let alone any 'real probability' that [Plaintiffs] have antagonistic interests with other members of the Settlement Class." *McNeely*, 2008 WL 4816510, at *7 (noting further that a purported "conflict must be more than merely speculative or hypothetical").

As such, Rule 23(e)(2)(A) is satisfied.

### C. The Settlement is the Product of Informed, Arm's Length Negotiations (1st Tenth Cir. Factor and 2nd Rule 23 Factor)

The Settlement was negotiated by experienced counsel for Plaintiffs and Koch, at arm's length and after years of hard-fought litigation. Accordingly, the Settlement satisfies both the first Tenth Circuit factor and the second Rule 23 factor. "The fairness of the negotiating process is to be examined 'in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that might have marred the negotiation themselves." *McNeely*, 2008 WL 4816510, at *11; *id.* at *12 (a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery") (internal quotations omitted).

As described above, the Plaintiffs and Defendants have been engaged in protracted litigation over the course of more than five years, involving the review of over 1.7 million

documents (spanning many tens of millions of pages), dozens of deposition transcripts from prior litigation, and extensive motion practice. *See* Section II.A., *supra*. Plaintiffs have taken over 30 depositions of Defendant and alleged Co-Conspirator witnesses and expect to take approximately 40 additional depositions of such witnesses in the two months remaining in fact discovery. Smith Decl. ¶ 11. In light of the significant amount of discovery conducted, Plaintiffs and Koch possess sufficient information to reach a fair, reasonable, and adequate settlement.

Further, the terms of the Settlement were vigorously negotiated by Plaintiffs' and Koch's counsel at arm's length. Smith Decl. ¶ 14. The negotiations between Plaintiffs and Koch were hard-fought and conducted in good faith—a fair process with a fair settlement.

As such, Rule 23(e)(2)(B) and the first Tenth Circuit factor are satisfied.

### D. Serious Questions of Law and Fact Exist That Place the Outcome of the Litigation in Doubt (2nd Tenth Cir. Factor)

It has long been recognized that "[a]ntitrust cases are particularly risky, challenging, and widely acknowledged to be among the most complex actions to prosecute." *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420, 2020 WL 7264559, at *15 (N.D. Cal. Dec. 12, 2020) (collecting cases from across the circuits). Plaintiffs remain confident in their claims, but there are questions of law and fact that pose risks in any antitrust litigation. At a minimum, absent a settlement, Settlement Class members would likely need to wait at least another year before any recovery, with summary judgment briefing not scheduled to conclude until April 2023, and trial and an inevitable lengthy appeals period thereafter. The Settlement assures that there will be further monetary recovery now (on top of the $35.75 million recovered in connection with the Tyson and Perdue Settlements). *See also* Section II.B.2., *supra* (describing Koch's cooperation).

Courts often recognize the value of earlier recoveries. *E.g.*, *McNeely*, 2008 WL 4816510, at *13 (noting that the class was "better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted"); *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 547 (D. Colo. 1989) ("It has been held prudent to take a bird in the hand instead of a prospective flock in the bush.") (quotation omitted). But here, the Settlement provides both the certainty of some recovery now—particularly important while so many, including Settlement Class members, recover from the economic consequences of the Covid-19 pandemic—along with the prospects of additional recoveries in the future from the remaining Defendants. The substantial relief it affords "creates a certainty of some

9

recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation.'" *Childs v. Unified Life Ins. Co.*, No. 10-cv-23, 2011 WL 6016486, at *13 (N.D. Okla. Dec. 2, 2011) (quotation omitted).

Thus, the relief provided by the Settlement satisfies the second Tenth Circuit factor.

### E.   The Relief Provided to the Settlement Class is Substantial (3rd Tenth Cir. Factor and 3rd Rule 23 Factor)[13]

The proposed Settlement provides substantial relief to the Settlement Class, which satisfies the third factors of both the Tenth Circuit and Rule 23. Additionally, the Settlement—if approved— provides Plaintiffs and the members of the Settlement Class the benefit of Koch's cooperation as defined above in continuing to litigate their case. Koch's agreement concerning arbitration and class-waiver non-enforcement provide a separate form of structural relief for the Settlement Class, allowing Growers to not face these impediments to bringing claims. Settlement § 10.e.

For decades, courts around the country have recognized the benefit of cooperation in settlements in antitrust class actions like this one. *In re Corrugated Container Antitrust Litig.*, MDL No. 310, 1981 WL 2093, at *16 (S.D. Tex. June 4, 1981), *aff'd*, 659 F.2d 1322 (5th Cir. 1981) (noting that the cooperation provisions in the settling parties' agreements "constituted a substantial benefit to the class"); *see also In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 29 (D.D.C. 2019) (noting that the cooperation provisions of the settling parties' agreement weigh in favor of court approval); *In re Processed Egg Prod. Antitrust Litig.*, 284 F.R.D. 249, 275 (E.D. Pa. 2012) ("[T]he Court recognizes that [settling Defendant's] agreement to cooperate with Plaintiffs throughout the course of pre-trial proceedings and trial is valuable consideration in light of the risks in proceeding with this suit against the remaining Defendants."). This Circuit is no exception. *In re Urethane Antitrust Litig.*, No. 04-MD-1616, 2006 WL 2983047, at *1 (D. Kan. Oct. 17, 2006) (approving antitrust class action settlement, relying in part on the value of "the significant cooperation provisions of the Settlement Agreement").

---

[13] Rule 23(e)(2)(C)(i), which asks the Court to consider the adequacy of the relief taking into account "the costs, risks, and delay of trial and appeal" overlaps almost entirely with the second Tenth Circuit factor: whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt. *Cazeau*, 2021 WL 1688540, at *3. As such, Rule 23(e)(2)(C)(i) is not discussed separately. Additionally, and as there is only one agreement relevant to Rule 23(e)(2)(C)(iv) identified herein in Section II.B.4., that factor will also not be discussed separately.

10

### i.   The Relief is Adequate Considering the Effectiveness of Plaintiffs' Proposed Method of Distributing Relief to the Settlement Class

As discussed in more detail below in Section III.F., Plaintiffs propose to distribute the Net Settlement Fund *pro rata*, based on total payments received by individual Settlement Class members during the settlement Class Period, which treats all members of the Settlement Class equitably.[14] Such a *pro rata* distribution is fair and reasonable because it will compensate Settlement Class members commensurate with the degree of harm suffered. For example, Growers that raised more Broilers (and thus likely suffered more in damages than Settlement Class members that grew fewer Broilers) will receive proportionately more from the Settlement. In other words, the method of distribution will ensure that Settlement Class members are compensated in proportion to the alleged injuries they suffered. Such *pro rata* distribution is the norm in complex class action antitrust settlements, *see* Section III.F, *infra*, including in this Court, *see* ECF No. 285.

Plaintiffs' proposed allocation plan will be efficient and streamlined. Plaintiffs' proposed method of distribution includes the mailing of claim forms to Settlement Class members, which is widely accepted as an effective form of distributing notice in class actions. *See, e.g.*, *Montgomery v. Cont'l Intermodal Grp.-Trucking LLC*, No. 19-cv-940, 2021 WL 1339305, at *7 (D.N.M. Apr. 9, 2021). Furthermore, Plaintiffs propose to send pre-populated claim forms to Settlement Class members for whom they have sufficient structured data, which will essentially mean that those Settlement Class members will not need to take any additional action at all (unless they disagree with the data on their pre-populated form) in order to receive monetary relief under the Settlement. This method of distribution eliminates a barrier to settlement awards for known Settlement Class members who are entitled to an award but who may forget to return the claim form or discard it. This plan of allocation will ensure the common fund is distributed to as many members of the Settlement Class as possible, as efficiently and fairly as possible.

As such, and for the reasons stated more fully in Plaintiffs' motion for approval of their proposed form of notice, Plaintiffs' proposed method of distributing relief to the Settlement Class is highly effective and satisfies Rule 23(e)(2)(C)(ii).

### ii.   The Relief is Adequate Considering the Contemplated Requests for Attorneys' Fees and Expenses, Which Are Within the Range Routinely Awarded in Analogous Antitrust Litigation

---

[14] Plaintiffs are filing a separate motion to address their proposed form of notice and manner of distribution of monetary relief to the members of the Settlement Class. *See* Section VI, *infra*.

Plaintiffs' Counsel will submit an application(s) to the Court for: (i) an award of attorneys' fees of one-third (33%) of the Settlement Amount, and (ii) reimbursement of expenses and costs reasonably and actually incurred in connection with prosecuting the action, not to exceed $3,000,000.[15] Plaintiffs are not seeking another interim incentive award for the named class representatives, but reserve the right to seek incentive awards from future settlements or judgments.

With respect to attorneys' fees, courts in this Circuit routinely award attorneys' fees of one-third of settlement funds in class actions, including in analogous antitrust cases. *See, e.g.*, *Cazeau*, 2021 WL 1688540, at *8 (awarding attorney's fees of one-third of the settlement fund in an FLSA class action); *In re Urethane Antitrust Litig.*, No. 04-MD-1616, ECF Nos. 3251, 3276 (D. Kan. July 29, 2016) (awarding fees of one-third of antitrust settlement of $835 million).[16]

Accordingly, Rule 23(e)(2)(C)(iii) is satisfied.

### F.   The Relief is Adequate Because the Settlement and the Proposed Plan of Allocation Treats Class Members Equitably (4th Rule 23 Factor)

The Settlement treats Settlement Class members equitably, in that every person or entity that provided Broiler Grow-Out Services for a Defendant or Co-Conspirator from January 27, 2013, through December 31, 2019, is subject to the same terms of Settlement, and the proposed plan of allocation will provide for relief in proportion to the harm allegedly suffered.

---

[15] Consistent with practice in class actions under Rule 23, Plaintiffs will file a separate motion addressing their requested attorneys' fees and litigation expenses in advance of the opt out and objection deadline established by the Court. Prior to notice being given to the Settlement Class, the Court must determine whether it will likely be able to approve the proposal under Rule 23(e)(2)— that is, whether the requested percentage is within the range typically approved by courts. After Settlement Class members have had the opportunity to weigh in on the request, and a final approval hearing is held, the Court will decide whether to approve the requested attorneys' fees and litigation expenses. *See In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-cv-20000, 2020 WL 8256366, at *23 (N.D. Ala. Nov. 30, 2020) (preliminarily approving proposed fee percentage "in line with benchmarks" in the Circuit, noting that settlement class members would receive the formal "fee and expense request and will have an opportunity to object to any such award prior to final approval").

[16] *See also, e.g.*, *In re Universal Serv. Fund Tel. Billing Practices Litig.*, No. 02-MD-1468, 2011 WL 1808038, at *2 (D. Kan. May 12, 2011) ("[A]n award of one-third of the fund falls within the range of awards deemed reasonable by courts.") (citation omitted); *Shaw v. Interthinx, Inc.*, No. 13-cv-01229, 2015 WL 1867861, at *6 (D. Colo. Apr. 22, 2015) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class."), *Lewis v. Wal-Mart Stores, Inc*., No. 02-cv-0944, 2006 WL 3505851, at *1, *5 (N.D. Okla. Dec. 4, 2006) (awarding one-third of the settlement fund in case settling after three years of litigation and noting that "[a] contingency fee of one-third is relatively standard in lawsuits that settle before trial").

A plan of allocation will pass muster so long as "it has a 'reasonable, rational basis,' particularly if 'experienced and competent' class counsel support it." MCLAUGHLIN ON CLASS ACTIONS § 6.23 (17th ed. 2020). Courts in this Circuit routinely find that proposed *pro rata* allocations of net common fund settlements are reasonable and appropriate, including in antitrust class actions. *In re Urethane Antitrust Litig.*, No. 04-MD-1616, 2013 WL 3879264, at *3 (D. Kan. July 26, 2013) ("The Court concludes that plaintiffs' proposed plan for the distribution of the damages is reasonable and appropriate."), *aff'd*, 768 F.3d 1245 (10th Cir. 2014); *Nakamura v. Wells Fargo Bank, Nat'l Ass'n*, No. 17-cv-4029, 2020 WL 5118070, at *2 (D. Kan. Aug. 31, 2020) ("The court determines that it is practicable and reasonable to distribute the remaining Net Settlement Fund proceeds, on a pro rata basis, to the 351 Settlement Class Members who cashed their original checks."); *O'Dowd v. Anthem, Inc.*, No. 14-cv-02787, 2019 WL 4279123, at *15 (D. Colo. Sept. 9, 2019) (similar); *Koehler v. Freightquote.com, Inc.*, No. 12-cv-2505, 2016 WL 1403730, at *9 (D. Kan. Apr. 11, 2016) (similar).

As discussed in detail above and below, *see* Sections II.C., *supra*, Plaintiffs propose a *pro rata* allocation and a method of processing claims and distributing funds that ensures that as many members of the Settlement Class can participate as possible, as easily as possible. Indeed, approximately 99% of the Settlement Class will receive their fair share of the Settlement without having to take any action at all, unless they so choose. *Id.* As such, the relief provided by the Settlement is adequate considering the effectiveness of the proposed method of distributing relief to the class, which will get funds into as many hands as possible, as easily as possible. And the proposed plan of *pro rata* allocation treats class members equitably relative to one another.

This satisfies Rules 23(e)(2)(C)(ii) and (e)(2)(D).

### G. Counsel, in Their Judgment, Recommend the Settlement (4th Tenth Cir. Factor)

The Settlement, which was extensively negotiated, reflects the opinion of counsel to both Plaintiffs and Koch that the Settlement is fair and reasonable and satisfies the fourth Tenth Circuit factor. Counsel's opinion that the Settlement is fair and reasonable is entitled to "considerable weight." *McNeely*, 2008 WL 4816510, at *13 (quotation omitted); *see also In re Dep't of Energy Stripper Well Exemption Litig.*, 653 F. Supp. 108, 116 (D. Kan. 1986) ("Although the Court has independently evaluated the proposed settlement, the professional judgment of counsel involved in the litigation—who have made a determination that the settlement represents a fair allotment for

13

their clients—is entitled to significant weight."); *Alvarado Partners*, 723 F. Supp. at 548 ("Courts have consistently refused to substitute their business judgment for that of counsel and the parties."). This is particularly true where, as demonstrated above, Counsel and the Plaintiffs have already zealously represented the interests of the Settlement Class. *See* Section II.B., *supra*.

Plaintiffs' counsel are experienced antitrust litigators who, at the time of the Settlement, were extremely knowledgeable about the factual and legal issues in the case. Over the years, Plaintiffs' counsel have worked, and continue to work, diligently to prosecute the case. *See* Section II.A., *supra*. Koch's counsel are also very experienced antitrust litigators, giving them a view into the reasonableness of this Settlement. Counsel for Plaintiffs and Koch agree that this Settlement is fair, reasonable, and adequate.

As such, the fourth Tenth Circuit factor is satisfied.

## IV.     The Settlement Class Satisfies Rule 23(a) and Rule 23(b)(3)

This Court should certify the proposed Settlement Class because it satisfies the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and Rule 23(b)(3)—namely, that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class action treatment is the "superior" method to fairly and efficiently adjudicate the controversy." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621 (1997). Moreover, according to the Supreme Court, the class certification burden is lower for "settlement-only class certification," because the Court "need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620 (citations omitted). The Court's focus is instead "on whether a proposed class has sufficient unity so that absent class members can fairly be bound by" the Settlement. *Id.* at 621.

### A.      The Numerosity Requirement is Satisfied

The Settlement Class is so numerous that joinder is impracticable. *See* Rule 23(a)(1) (requiring that "the class is so numerous that joinder of all members is impracticable"). "The Tenth Circuit does not prescribe any set formula to satisfy the numerosity element, nor has it said numerosity may be presumed by a specific number of class members." *McNeely*, 2008 WL 4816510, at *5. But numerosity has been satisfied where "the class consists of hundreds, if not thousands, of geographically dispersed businesses." *In re Urethane Antitrust Litig.*, 237 F.R.D. 440, 446 (D. Kan. 2006). In any given year, there are thousands of Growers spread across the United

States, performing Broiler Grow-Out Services for Defendants and their alleged Co-Conspirators. Joinder would be more than impracticable—it would be essentially impossible.

Rule 23(a)(1) is satisfied.

### B.    The Commonality Requirement is Satisfied

There are numerous questions of law and fact common to the Settlement Class members. Under Rule 23(a)(2), however, a *single* common question of either "law *or* fact" suffices. Fed. R. Civ. P. 23(a)(2) (emphasis added). Indeed, courts consistently recognize that the commonality requirement "does not present plaintiffs with a particularly exacting standard." *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775, 2014 WL 7882100, at *30 (E.D.N.Y. Oct. 15, 2014)*; see also, e.g.*, *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1256 (10th Cir. 2014) (affirming trial court's certification of class in price-fixing case where "two common questions [] could yield common answers at trial: the existence of a conspiracy and the existence of impact"); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 666 (D. Kan. 2004) (common issues include: whether defendants "engaged in a combination or conspiracy to raise, fix, stabilize, and maintain . . .  surcharges at supracompetitive levels; the effect of the alleged . . . conspiracy; . . . and whether the alleged combination or conspiracy violated the antitrust laws").

Common questions in this action include the numerous legal and factual questions regarding whether the Defendants and their Co-Conspirators entered into an unlawful combination, contract, or conspiracy, whether that conduct suppressed Grower compensation below competitive levels, and what is the proper measure of damages. CCAC ¶ 163. Each of these legal and factual questions will be the same for all Settlement Class members. Thus, as in other antitrust class actions, these overwhelmingly common questions here satisfy Rule 23(a)(2).

### C.    The Typicality Requirement is Satisfied

Plaintiffs' claims are typical of those of the members of the Settlement Class. The "typicality" requirement of Rule 23(a)(3) "may be satisfied even though varying fact patterns support the claims or defenses of individual class members or there is a disparity in the damages claimed by the representative parties and the other members of the class." *United Food & Com. Workers Union v. Chesapeake Energy Corp.*, 281 F.R.D. 641, 652 (W.D. Okla. 2012) (quotation omitted). Typicality is rarely at issue in antitrust conspiracy cases because the named plaintiffs need to prove a conspiracy, its effectuation, and damages, which is precisely what the absentee class members must also prove. *See Universal Serv. Fund*, 219 F.R.D. at 666.

15

Typicality is satisfied here because the representative Plaintiffs each allege the same legal theories and fact issues that underlie the rest of the Settlement Class' claims—that Defendants and their Co-Conspirators engaged in a common course of conduct to stabilize and suppress Grower compensation throughout the United States. CCAC ¶¶ 1-11, 66-89, 159. Plaintiffs allege that each member of the Settlement Class suffered the same type of injury—suppressed Grower pay—arising out of the same factual scenario—a conspiracy to suppress grower pay—and seek to recover damages flowing from that conduct. This is more than enough to satisfy Rule 23(a)(3).

### D.        The Adequacy Requirement is Satisfied

Plaintiffs and Interim Co-Lead Counsel satisfy the test for adequacy of representation under Rule 23(a)(4) because (1) "the named plaintiffs and their counsel" do not "have any conflicts of interest with other class members;" and (2) "the named plaintiffs and their counsel" have "prosecute[d] the action vigorously on behalf of the class." *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002); *McNeely*, 2008 WL 4816510, at *7.

First, there are no conflicts of interest between Plaintiffs, Interim Co-Lead Counsel, and the Settlement Class. To pose a problem under Rule 23(a)(4), such a conflict must be "more than merely speculative or hypothetical." *McNeely*, 2008 WL 4816510, at *7. There is no such conflict here, nor has anyone ever suggested any conflict, actual or hypothetical.

Second, Plaintiffs are represented by seasoned counsel who are thoroughly familiar with class action and antitrust litigation. *McNeely*, 2008 WL 4816510, at *7 (applying presumptions of competence and experience of class counsel) (citation omitted); *Zapata v. IBP, Inc.*, 167 F.R.D. 147, 161 (D. Kan. 1996) ("In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to vigorously prosecute the action on behalf of the class."). As discussed above, Plaintiffs and Interim Co-Lead Class Counsel have vigorously litigated this action for over four years. As such, Rule 23(a)(4) is satisfied.

### E.        The Predominance Requirement is Satisfied

Questions of law and fact common to Settlement Class members predominate over any questions affecting only individual members, and thus, Rule 23(b)(3) is satisfied.

The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454 (2016) (quotation omitted). "When one or more of the central issues in the action are common to the class and can be said to

16

predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (quotation omitted). And predominance requires that "*questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013) (emphasis in original).

As the Tenth Circuit has recognized, "[i]n price-fixing cases, courts have regarded the existence of a conspiracy as the overriding issue even when the market involves diversity in products, marketing, and prices." *In re Urethane Antitrust Litig.*, 768 F.3d at 1255 (collecting cases). This rule persists in the litigation class context, but it is particularly true in the context of settlement classes, where "the proposal is that there be no trial." *Amchem*, 521 U.S. at 620-21.[17] In the settlement context, the Supreme Court has noted that "the predominance requirement of Rule 23(b)(3) is similar to the requirement of Rule 23(a)(3) that 'claims or defenses' of the named representatives must be 'typical of the claims or defenses of the class.'" *Id.* at n.18.

For litigation class certification purposes, by contrast, Plaintiffs intend to prove through facts and expert analysis that are common to the proposed Class as a whole, that all or virtually all Class members suffered antitrust injury due to the challenged conduct. The CACC in this case shows in detail how Plaintiffs will prove their claims, including class-wide impact, with proof common to the class as a whole.  In particular, Plaintiffs will use common evidence and analysis to show that the Defendants' alleged anticompetitive conduct, including the "no poach" agreement, artificially suppressed Grower compensation generally, and more specifically that the challenged conduct artificially suppressed both base pay and the total (or net) compensation paid to each Grower. Thus, Plaintiffs will show through this predominantly if not exclusively class-wide evidence and analysis that when Defendants' scheme suppressed the base pay for Growers, the net pay for all Class members was suppressed, including Growers in all geographic regions and irrespective of whether a Grower was a high or low performer under the "tournament system."

The underpayment is the injury here. *See*, *e.g.*, *In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1123 (N.D. Cal. 2012) (plaintiffs suffered antitrust injury when anticompetitive

---

[17] *See also, e.g.*, *In re Processed Egg Prod. Antitrust Litig.*, No. 08-MD-2002, 2016 WL 3584632, at *8 (E.D. Pa. June 30, 2016) (holding that certain litigation class concerns, like common impact, fall away in the context of a settlement class because they are trial management issues).

conduct resulted in suppression of compensation); *Doe v. Ariz. Hosp. & Healthcare Ass'n*, No. 07–cv-1292, 2009 WL 1423378, at *5 (D. Ariz. Mar. 19, 2009) (same). Because impact is a legal and factual issue common to the Class, and because it can be shown through proof that it is common to the Class, Plaintiffs will show that Rule 23(b)(3)'s predominance requirement is satisfied for litigation purposes, and thus is certainly satisfied for settlement purposes—where even the theoretical possibility of individualized issues of proof are not present.

The question of whether Defendants participated in the alleged conspiracy—including the numerous questions of law and fact that that entails—is common to all members of the Class and will be answered with evidence that is common to the Class as a whole. CCAC ¶ 163. That alone is sufficient to find Rule 23(b)(3)'s predominance requirement satisfied.

Similarly, the question of whether the challenged conduct artificially suppressed Grower compensation generally, such that all or virtually all Growers would be impacted by that suppression, CCAC ¶¶ 74, 134, 137, 141-43, 144, 150, is also common to all members of the proposed Class and will be answered with evidence that is common to the proposed Class as a whole. Plaintiffs will make this showing through economic, documentary, testimonial, and econometric evidence that is common to the Class as a whole. Thus, both the question of whether the Defendants conspired and whether Class members were impacted, and the answer to those questions, are common, and they satisfy Rule 23(b)(3)'s predominance requirement.

This Court's inquiry in the context of settlement class certification is even easier. As the Supreme Court has observed, even in a litigation class context, "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws," *Amchem*, 521 U.S. at 625, because they present issues that are capable of proof by generalized evidence that "are more substantial than the issues subject only to individualized proof," *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quotation omitted). Plaintiffs' and the Settlement Class members' claims all focus on the same operative set of facts and legal theories. They were all harmed by the same conduct by Defendants and their Co-Conspirators, and the evidence of conspiracy would be entirely common if presented in a litigation posture—which, again, is not at issue here, because the proposal is there would be no trial, and in turn, no evidence. In sum, the predominance requirement for a settlement class is met here as "[a]ll claims arise out of the same course of defendants' conduct; [and] all share a common nucleus of operative fact, supplying the necessary cohesion." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012) (quotation omitted).

18

As the Settlement Class members' claims and damages arise out of the same alleged anticompetitive conduct, the issues relating to settlement satisfy the predominance requirement.

### F.      The Superiority Requirement is Satisfied

Class treatment is superior to other methods of adjudication here. In considering class certification, the Court must balance the advantages of a class action with other available methods of adjudication, considering (a) class members' interests in individual litigation, (b) the extent of ongoing individual litigation, (c) the desirability of centralizing the claims in one forum, and (d) difficulties in managing a class action trial. Fed. R. Civ. P. 23(b)(3)(A)-(D).

In most antitrust class actions, although the conduct at issue generates widespread harm, individual recoveries are relatively modest, at least compared to the millions of dollars in attorney time and litigation expenses required to recover them. *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 109 (E.D.N.Y. 2012) (recognizing that in antitrust litigation it can be "prohibitively expensive for class members with small claims to proceed individually" as litigation "require[s] significant fees toward expert analysis and testimony"). For this reason, the first superiority factor favors certifying the Settlement Class. And likely because of that same reason, there are no individual Sherman Act actions being prosecuted outside of this MDL, such that the second superiority factor favors certification too.

As to the third superiority factor, individual suits would be "grossly inefficient, costly, and time consuming because the parties, witnesses, and courts would be forced to endure unnecessarily duplicative litigation" while a "class action is by far the more superior method." *Universal Serv.*, 219 F.R.D. at 679. And as to the fourth superiority factor, in a settlement-only class certification, the Court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. at 620.

Consequently, all four superiority factors favor certification here.

### V.      Interim Co-Lead Class Counsel Should Be Appointed Settlement Counsel

Under Rule 23(g), a court that certifies a class must appoint class counsel, who is charged with fairly and adequately representing the interests of the class. *See* Fed. R. Civ. P. 23(g)(1). In determining class counsel, the Court must consider (1) the work undertaken by counsel in identifying or investigating the potential claims; (2) counsel's experience in handling class actions, other complex litigation, and similar claims; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(1)(A).

Interim Co-Lead Class Counsel readily meet these requirements and should be appointed as counsel for the Settlement Class. As discussed above, Interim Co-Lead Class Counsel undertook significant effort in identifying and asserting the claims in this action. They have significant experience litigating antitrust class actions, as this Court implicitly recognized when it appointed Interim Co-Lead Class Counsel to represent the proposed Class pursuing claims against all Defendants. *See* MDL Pre-Trial Order No. 2, ECF No. 56 (Feb. 12, 2021). Interim Co-Lead Class Counsel have vigorously prosecuted this case and committed the substantial resources necessary to effectively litigate this case, including significant out of pocket litigation expenses and thousands of hours of attorney time, with no guarantees of remuneration. For these reasons, the Court should appoint Interim Co-Lead Class Counsel as Settlement Class Counsel.

## VI.     Plaintiffs Will Bring a Separate Motion to Approve the Form and Manner of Dissemination of Notice to the Settlement Class

Plaintiffs move under Rule 23(e) to determine whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2) and (ii) certify the class for purposes of judgment on the proposal," such that "giving notice [to the Settlement Class] is justified." Fed. R. Civ. P. 23(e)(1)(B). Plaintiffs are contemporaneously filing a separate motion to approve the form and manner of dissemination of notice to the Settlement Class, which will include deadlines for members of the Settlement Class to object to, or opt out of, the Settlement, as well as claims administration deadlines, and a proposed final approval hearing date for the Court's consideration.

## VII.    Conclusion

Plaintiffs respectfully submit that their Motion for Preliminary Approval of Settlement with Koch should be granted, the Settlement Class certified under Rules 23(a) and 23(b)(3), and Interim Co-Lead Class Counsel appointed Settlement Class counsel under Rule 23(g).

Dated: May 27, 2022

Respectfully submitted,

*/s/ Gary I. Smith, Jr.*
Gary I. Smith, Jr.*
**HAUSFELD LLP**
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
Telephone: (215) 985-3270
Facsimile: (215) 985-3271
Email: gsmith@hausfeld.com

Michael D. Hausfeld*
James J. Pizzirusso*

20

Melinda R. Coolidge*
Samantha Derksen*
**HAUSFELD LLP**
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
Email: mhausfeld@hausfeld.com
Email: jpizzirusso@hausfeld.com
Email: mcoolidge@hausfeld.com
Email: sderksen@hausfeld.com
Email: sderksen@hausfeld.com

Kyle G. Bates*
**HAUSFELD LLP**
600 Montgomery St, Ste 3200
San Francisco, CA 94111
Telephone: (415) 633-1908
Facsimile: (415) 633-4980
Email: kbates@hausfeld.com

Eric L. Cramer*
Patrick F. Madden*
David Langer*
Haley Brogan Pritchard*
Ellen T. Noteware*
Michaela L. Wallin***BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
Email: ecramer@bm.net
Email: pmadden@bm.net
Email: dlanger@bm.net
Email: hpritchard@bm.net
Email: enoteware@bm.net
Email: mwallin@bm.net

Daniel J. Walker*
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20006
Telephone: (202) 559-9745
Email: dwalker@bm.net

*Interim Co-Lead Counsel for Plaintiffs and the*

21

*Proposed Class*

M. David Riggs
Donald M. Bingham
Kristopher Koepsel
**RIGGS ABNEY NEAL TURPEN ORBISON & LEWIS**
502 West Sixth Street
Tulsa, OK 74119
Telephone: (918) 699-8914
Facsimile: (918) 587-9708
Email: driggs@riggsabney.com
Email: don_bingham@riggsabney.com
Email: Email: kkoepsel@riggsabney.com

William A. Edmondson (OBA No. 2628)
**RIGGS ABNEY NEAL TURPEN ORBISON & LEWIS**
528 N.W. 12th Street
Oklahoma City, OK 73103
Telephone: (405) 843-9909
Facsimile: (405) 842-2913
Email: dedmondson@riggsabney.com

*Liaison Counsel for Plaintiffs and the*
*Proposed Class*

Larry D. Lahman (OBA No. 5166)
Roger L. Ediger (OBA 19449)
**MITCHELL DECLERK, PLLC**
202 West Broadway Avenue
Enid, OK 73701
Telephone: (580) 234-5144
Facsimile: (580) 234-8890
Email: ldl@mdpllc.com
Email: rle@mdpllc.com

Vincent J. Esades*
**HEINS MILLS & OLSON, PLC**
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
Email: vesades@heinsmills.com

Warren T. Burns*
**BURNS CHAREST, LLP**
900 Jackson Street, Suite 500

Dallas, TX 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
Email: wburns@burnscharest.com

Gregory L. Davis*
**DAVIS & TALIAFERRO, LLC**
7031 Halcyon Park Drive
Montgomery, AL 36117
Telephone: (334) 832-9080
Facsimile: (334) 409-7001
Email: gldavis@knology.net

Charles D. Gabriel*
**CHALMERS & ADAMS LLC**
North Fulton Satellite Office
5755 North Point Parkway, Suite 251
Alpharetta, GA 30022
Telephone: (678) 735-5903
Facsimile: (678) 735-5905
Email: cdgabriel@cpblawgroup.com

Larry S. McDevitt*
David M. Wilkerson*
**VAN WINKLE LAW FIRM**
11 North Market Street Asheville, NC 28801
Telephone: (828) 258-2991
Facsimile: (828) 257-2767
Email: lmcdevitt@vwlawfirm.com
Email: dwilkerson@vwlawfirm.com

Harlan Hentges (OBA No. 17911)
**HENTGES & ASSOCIATES, PLLC**
102 East Thatcher Street
Edmond, OK 73034
Telephone: (405) 340-6554
Facsimile: (405) 340-6562
Email: harlan@organiclawyers.com

John C. Whitfield*
Caroline R. Taylor*
**WHITFIELD COLEMAN BULLOCK, PPLC**
19 North Main Street
Madisonville, KY 42431
Telephone: (270) 821-0656
Facsimile: (270) 825-1163

23

Email: jwhitfield@wcbfirm.com
Email: caroline@wbmllp.com

J. Dudley Butler*
**BUTLER FARM & RANCH LAW GROUP,
PLLC**
499-A Breakwater Drive
Benton, MS 39039
Telephone: (662) 673-0091
Facsimile: (662) 673-0091
Email: jdb@farmandranchlaw.com

Daniel M. Cohen*
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Ave., NW
Suite 200
Washington, DC 20016
Telephone: (202)789-3960
Facsimile: (202)789-1813
Danielc@cuneolaw.com

David S. Muraskin*
**PUBLIC JUSTICE, PC**
1620 L Street NW, Suite 630
Washington, DC 20036
Telephone: (202) 861-5245
Facsimile: (202) 232-7203
Email: dmuraskin@publicjustice.net

Kellie Lerner*
Meegan F. Hollywood
Matthew J. Geyer*
**ROBINS KAPLAN, LLP**
1325 Avenue of the Americas, Suite 2601
New York, NY 10019
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
Email: KLerner@RobinsKaplan.com
Email: MHollywood@RobinsKaplan.com
Email: MGeyer@RobinsKaplan.com

Aaron Sheanin*
**ROBINS KAPLAN, LLP**
2440 West El Camino Real, Suite 100
Mountain View, CA 94040
Telephone: (650) 784-4040

24

Facsimile: (650) 784-4041
Email: ASheanin@RobinsKaplan.com

M. Stephen Dampier*
**DAMPIER LAW FIRM**
55 North Section Street
P.O. Box 161
Fairhope, AL 36532
Telephone: (251) 929-0900
Facsimile: (251) 929-0800
Email: stevedampier@dampierlaw.com

Michael L. Silverman*
**ROACH LANGSTON BRUNO LLP**
205 North Michigan Avenue, Suite 810
Chicago, IL 60601
Telephone: (773) 969-6160
Email: msilverman@rlbfirm.com

Grant L. Davis*
Thomas C. Jones*
Timothy Gaarder*
Thomas E. Ruzicka, Jr.*
**DAVIS BETHUNE & JONES, LLC**
1100 Main St, Ste 2930
Kansas City, MO 64105
Telephone: (816) 421-1600
Email: gdavis@dbjlaw.net
Email: tgaarder@dbjlaw.net
Email: tjones@dbjlaw.net
Email: truzicka@dbjlaw.net

Robert Bonsignore, Esq.*
**BONSIGNORE, TRIAL LAWYERS, PLLC**
23 Forest St
Medford, MA 02155
Telephone: (781) 350-0000
Email: rbonsignore@class-actions.us

***Additional Class Counsel for Plaintiffs and the Proposed Class***

* admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 27, 2022, I electronically transmitted a true and correct copy of

the foregoing document to the Clerk of Court for filing using the CM/ECF system, which will send

notification of such filing to all counsel of record.

*/s/ Gary I. Smith, Jr.*
Gary I. Smith, Jr.
