## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE: BROILER CHICKEN GROWER ANTITRUST LITIGATION (NO. II) | MDL No. 6:20-2977-RJS-CMR<br><br>Hon. Chief Judge Robert J. Shelby<br><br>Hon. Cecilia M. Romero |

## PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT WITH SANDERSON

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................1

II.    BACKGROUND ................................................................................................2

    A.   Procedural Background .................................................................................2

    B.   The Settlement Negotiations and Settlement Agreement Terms ........................5

    C.   Preliminary Approval and the Proposed Notice and Claims Process ..................7

    D.   Class Notice, Objections, and Exclusions .......................................................8

    E.   The Proposed Allocation and Distribution to the Settlement Class ....................9

    F.   Plaintiffs' Application for Attorneys' Fees and Litigation Costs.........................9

III.   ARGUMENT ................................................................................................10

    A.   The Proposed Settlement is Fair, Reasonable, and Adequate and Should be Finally Approved ...............................................................................................10

        1.   Plaintiffs and Settlement Class Counsel Have Skillfully Represented the Settlement Class ...............................................................................................10

        2.   The Settlement Was Reached After Arm's Length Negotiation ...............................12

        3.   The Relief Provided to the Settlement Class is More Than Adequate, it is Substantial 13

           a. The costs, risks, and delay of trial and appeal favor final approval .......................14

           b.   The proposed method of distributing relief to the Settlement Class, including the method of processing claims, favors final approval .........................................15

           c. The proposed award of attorneys' fees favors final approval ................................16

        4.   The Settlement and Proposed Plan of Distribution Treat Members of the Settlement Class Equitably ...............................................................................................17

        5.   The Parties Agree that the Settlement Is Fair, Reasonable, and Adequate ...............17

    B.   Notice to the Settlement Class Comported with Rule 23 and Due Process ...................18

    C.   Final Judgment as to Sanderson Is Proper Under Rule 54(b) .........................21

IV.   CONCLUSION ................................................................................................21

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarado Partners, L.P. v. Mehta*,
   723 F. Supp. 540 (D. Colo. 1989)........................................................................15, 18

*Aragon v. Clear Water Prods. LLC*,
   No. 15-cv-02821, 2018 WL 6620724 (D. Colo. Dec. 18, 2018) ...........................12

*Blanco v. Xtreme Drilling & Coil Servs., Inc.*,
   No. 16-cv-249, 2020 WL 4041456 (D. Colo. July 17, 2020).................................12

*In re Broiler Chicken Antitrust Litig.*,
   No. 16-cv-8637 (N.D. Ill.) .......................................................................................4

*Chavez Rodriguez v. Hermes Landscaping, Inc.*,
   No. 17-cv-2142, 2020 WL 3288059 (D. Kan. June 18, 2020) ...................... *passim*

*Chieftain Royalty Co. v. XTO Energy Inc.*,
   No. 11-cv-29, 2018 WL 501656 (E.D. Okla. Jan. 18, 2018)..................................20

*Childs v. Unified Life Ins. Co.*,
   No. 10-cv-23, 2011 WL 6016486 (N.D. Okla. Dec. 2, 2011) ...............................15

*Cisneros v. EP Wrap-It Insulation, LLC*,
   No. 19-cv-500, 2021 WL 2953117 (D.N.M. July 14, 2021) ...........................12, 17

*In re Citric Acid Antitrust Litig.*,
   145 F. Supp. 2d 1152 (N.D. Cal. 2001) .................................................................17

*Colvin v. Tyson Foods, Inc., et al.*,
   No. 2:20-cv-2464 (D. Kan.)......................................................................................3

*Cook v. Rockwell Int'l Corp.*,
   No. 90-cv-181, 2017 WL 5076498 (D. Colo. Apr. 28, 2017) ...............................16

*In re Corrugated Container Antitrust Litig.*,
   659 F.2d 1322 (5th Cir. 1981) ...............................................................................14

*DeJulius v. New England Health Care Emps. Pension Fund*,
   429 F.3d 935 (10th Cir. 2005) ..........................................................................18, 19

*In re Dep't of Energy Stripper Well Exemption Litig.*,
   653 F. Supp. 108 (D. Kan. 1986)............................................................................18

*In re Domestic Airline Travel Antitrust Litig.*,
    378 F. Supp. 3d 10 (D.D.C. 2019) ..................................................................13

*Gelboim v. Bank of America Corp.*,
    574 U.S. 405 (2015)......................................................................................21

*Haff Poultry, Inc., et al. v. Tyson Foods, Inc., et al.*,
    No. 6:17-cv-33 (E.D. Okla.) ............................................................................3

*Hale v. State Farm Mut. Auto. Ins. Co.*,
    No. 12-cv-660, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ...........................15, 16

*Lawrence v. First Fin. Inv. Fund V, LLC*,
    No. 19-cv-174, 2021 WL 3809083 (D. Utah Aug. 26, 2021) (Shelby, J.) ........10, 21

*Lewis v. Wal-Mart Stores, Inc.*,
    No. 02-cv-0944, 2006 WL 3505851 (N.D. Okla. Dec. 4, 2006) ...........................16

*In re Lithium Ion Batteries Antitrust Litig.*,
    No. 13-md-2420, 2020 WL 7264559 (N.D. Cal. Dec. 10, 2020) ...........................14

*Mason v. Tyson Foods, Inc., et al.*,
    No. 5:20-cv-07049 (N.D. Cal.) .........................................................................3

*McEntire v. Tyson Foods, Inc., et al.*,
    No. 1:20-cv-2764 (D. Colo.)............................................................................3

*McGaffin v. Argos USA, LLC*,
    No. 16-cv-104, 2020 WL 3491609 (S.D. Ga. June 26, 2020) ..............................11

*McNeely v. Nat'l Mobile Health Care, LLC*,
    No. 07-cv-933, 2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) ...............11, 15, 18

*Miller v. Basic Rsch., LLC*,
    750 F.3d 1173 (10th Cir. 2014) ......................................................................21

*Montgomery v. Cont'l Intermodal Grp. Trucking LLC*,
    No. 19-cv-940, 2021 WL 1339305 (D.N.M. Apr. 9, 2021)..............................10, 11

*Moreno v. Beacon Roofing Supply, Inc.*,
    No. 19-cv-185, 2020 WL 3960481 (S.D. Cal. July 13, 2020) ..............................15

*In re Namenda Direct Purchaser Antitrust Litig.*,
    462 F. Supp. 3d 307 (S.D.N.Y. 2020)...............................................................17

*Perks v. Activehours, Inc.*,
    No. 19-cv-5543, 2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ...........................17

*In re Processed Egg Prod. Antitrust Litig.*,
284 F.R.D. 249 (E.D. Pa. 2012) ..................................................................13

*Retta v. Millennium Prods., Inc.*,
No. 15-cv-1801, 2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) .............................14

*In re Samsung Top-Load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig.*,
997 F.3d 1077 (10th Cir. 2021) .........................................................10, 12

*In re Samsung Top-load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig.*,
No. 17-md-2792, 2019 WL 6118267 (W.D. Okla. Nov. 18, 2019).........................20

*In re Samsung Top-Load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig.*,
No. 17-md-2792, 2020 WL 2616711 (W.D. Okla. May 22, 2020) ...................19, 20

*In re Sanderson & Koch Broiler Chicken Grower Litig.*,
No. 7:18-cv-31 (E.D.N.C.)....................................................................3

*Shaw v. Interthinx, Inc.*,
No. 13-cv-01229, 2015 WL 1867861 (D. Colo. Apr. 22, 2015) .............................16

*Stewart v. USA Tank Sales & Erection Co.*,
No. 12-cv-5136, 2014 WL 836212 (W.D. Mo. Mar. 4, 2014) ...............................12

*Suaverdez v. Circle K Stores, Inc.*,
No. 20-cv-01035, 2021 WL 4947238 (D. Colo. June 28, 2021) ............................10

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011).................................................................17

*In re Syngenta AG MIR 162 Corn Litig.*,
357 F. Supp. 3d 1094 (D. Kan. 2018) ......................................................16

*Tennille v. Western Union Co.*,
785 F.3d 422 (10th Cir. 2015) .........................................................19, 20

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
No. 02-md-1468, 2011 WL 1808038 (D. Kan. May 12, 2011) .............................16

*In re Urethane Antitrust Litig.*,
No. 04-md-1616, 2006 WL 2983047 (D. Kan. Oct. 17, 2006)...............................13

*In re Urethane Antitrust Litig.*,
No. 04-md-1616, 2016 WL 4060156 (D. Kan. July 29, 2016)...............................16

*Vargas v. Ford Motor Co.*,
No. 12-cv-8388, 2020 WL 1164066 (C.D. Cal. Mar. 5, 2020).........................15, 16

iv

*In re Vitamins Antitrust Litig.*,
   No. 99-cv-197, 2000 WL 1737867 (D.D.C. Mar. 31, 2000) .................................................17

*Waltman v. Georgia-Pacific, LLC*,
   590 Fed. Appx. 799 (10th Cir. 2010) ...................................................................................21

*Wilkerson v. Martin Marietta Corp.*,
   171 F.R.D. 273 (D. Colo. 1997) ...........................................................................................14

**Constitutional Provisions**

U.S. Const. Amend V ................................................................................................................4

**Statutes**

28 U.S.C. § 1291 .......................................................................................................................21

Packers and Stockyards Act Section 202 ..................................................................................2

Sherman Act Section 1 ...............................................................................................................2

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................. *passim*

Fed. R. Civ. P. 23(a) ................................................................................................................10

Fed. R. Civ. P. 23(b)(3) ...................................................................................................8, 18, 19

Fed. R. Civ. P. 23(c)(2) ...................................................................................................1, 18, 20

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................18, 19, 20

Fed. R. Civ. P. 23(e) ...........................................................................................................10, 17

Fed. R. Civ. P. 23(e)(1) ............................................................................................................18

Fed. R. Civ. P. 23(e)(2) .....................................................................................................1, 2, 10

Fed. R. Civ. P. 23(e)(2)(A) .............................................................................................10, 11, 12

Fed. R. Civ. P. 23(e)(2)(B) .......................................................................................................12

Fed. R. Civ. P. 23 (e)(2)(C) ......................................................................................................13

Fed. R. Civ. P. 23(e)(2)(C)(i) ....................................................................................................14

Fed. R. Civ. P. 23(e)(2)(C)(ii) .............................................................................................15, 16

Fed. R. Civ. P. 23(e)(2)(C)(iv).................................................................13

Fed. R. Civ. P. 23(e)(2)(D)......................................................................17

Fed. R. Civ. P. 30(b)(1)............................................................................4

Fed. R. Civ. P. 30(b)(6)............................................................................4

Fed. R. Civ. P. 54(b).............................................................................1, 21

**Other Authorities**

William B. Rubenstein, 4 Newberg on Class Actions (5th ed.) ........................11, 14, 15

## I.  INTRODUCTION

Plaintiffs,[1] on their own behalf and on behalf of the certified settlement class ("Settlement Class") for the settlement with Sanderson[2] (the "Settlement" or the "Settlement Agreement"), respectfully submit this motion and supporting memorandum for: (1) final approval of the Settlement under Federal Rule of Civil Procedure 23(e)(2);[3] (2) final approval of the proposed *pro rata* plan of distribution to members of the Settlement Class; (3) a finding that the class notice program, as implemented, constituted the best notice practicable under the circumstances, comported with Federal Rule of Civil Procedure 23(c)(2) and due process and was effectuated in accordance with the Court-approved notice plan, and (4) a finding of no just reason for delay and entry of judgment under Federal Rule of Civil Procedure 54(b) as to Sanderson only in the MDL and its member cases.

Under the Settlement, Sanderson has paid $17.75 million in cash to the Settlement Class (bringing the aggregate recoveries by Plaintiffs to $69 million); is providing Plaintiffs with cooperation in connection with their claims against the remaining Defendant;[4] and, has agreed not to include or enforce provisions in its contracts with members of the Settlement Class that would either mandate arbitration or bar initiation or participation in a class action for five years. As this Court previously found in its Order preliminarily approving the Settlement, and as set

---

[1] The court appointed Haff Poultry, Inc., Nancy Butler, Johnny Upchurch, Jonathan Walters, Myles Weaver, Marc McEntire, Karen McEntire, and Mitchell Mason as representatives for the Settlement Class. ECF No. 482 ¶ 9. Unless otherwise specified, all docket citations are to the MDL docket: No. 6:20-md-2977 (E.D. Okla.).

[2] Sanderson means, collectively, Sanderson Farms, Inc., Sanderson Farms, Inc. (Food Division), Sanderson Farms, Inc. (Processing Division), Sanderson Farms, Inc. (Production Division), and any and all past, present, and future parents, owners, subsidiaries, divisions, and/or departments, including but not limited to Sanderson Farms, LLC, Sanderson Farms, LLC (Food Division), Sanderson Farms, LLC (Processing Division), Sanderson Farms, LLC (Production Division), and Wayne Farms, LLC.

[3] The Settlement Agreement was filed as an exhibit to Plaintiffs' motions for preliminary approval of the Settlement. ECF No. 435-1 (Exhibit A).

[4] "Defendants" refers to Koch, Tyson, Perdue, Sanderson, and Pilgrim's Pride Corporation ("Pilgrim's"). The "remaining Defendant" refers to the remaining, Non-Settling Defendant, *i.e.*, Pilgrim's.

forth in the Plaintiffs' counsel's declarations previously filed in connection with the Settlement,[5] the Settlement is fair, reasonable, and adequate under the criteria of Rule 23(e)(2) and the law of this Circuit. The Settlement should be finally approved.

## II.   BACKGROUND

### A.   Procedural Background

Certain Plaintiffs filed the original action in this MDL on January 27, 2017. Walker Decl. ¶ 7. Following centralization of various related actions by the Judicial Panel on Multidistrict Litigation ("JPML"), Plaintiffs filed their Consolidated Amended Class Action Complaint alleging Defendants and seventeen Co-Conspirators[6]—the largest vertically integrated Broiler[7] processors ("Integrators") among them—conspired to suppress compensation paid to Broiler farmers ("Growers") in violation of Section 1 of the Sherman Act and Section 202 of the Packers and Stockyards Act. *See, e.g.*, *id.* ¶¶ 8-12; *see also* Consol. Class Action Compl. ("CCAC") ¶¶ 166-179 (ECF No. 59).

This action has been pending six and a half years, over which time Plaintiffs have vigorously prosecuted their claims while Defendants have aggressively contested them at every stage. *See, e.g.*, Walker Decl. ¶¶ 13-30, 36-60, 133-134. Plaintiffs responded to numerous motions to dismiss for failure to state a claim, to compel arbitration, for improper venue, for lack

---

[5] These are the Declaration of Gary I. Smith, Jr. in Support of Plaintiffs' Motion for Preliminary Approval of Settlement with Sanderson and for Certification of the Settlement Class (ECF No. 435-1) ("Smith Decl.") and the Declaration of Daniel J. Walker in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (ECF No. 517-1) ("Walker Decl.").

[6] "Co-Conspirator" means the alleged co-conspirators identified in the CCAC: Agri Stats, Inc., Foster Farms, Mountaire Farms, Wayne Farms, George's, Inc., Peco Foods, Inc., House of Raeford Farms, Simmons Foods, Keystone Foods, Inc., Fieldale Farms Corp., O.K. Industries, Case Foods, Marshall Durbin Companies, Amick Farms, Inc., Mar-Jac Poultry, Inc., Harrison Poultry, Inc., Claxton Poultry Farms, and Norman W. Fries, Inc., including each of their past, present, and future, direct and indirect, corporate parents (including holding companies), owners, subsidiaries, related entities, Affiliates, divisions, and/or departments, joint ventures, predecessors, and/or successors. *See* Settlement Agreement ¶ 1(e).

[7] "Broilers" excludes specialty chicken that is grown, processed, and sold according to halal, kosher, free range, pasture-raised, or organic standards. Specialty chicken does not include chicken raised without antibiotics, such as No Antibiotics Ever ("NAE") or Antibiotic Free ("ABF") standards. "Broilers" as used herein includes NAE and ABF chicken. *See* Settlement Agreement ¶ 1(d).

of personal jurisdiction, and to dismiss under the "first to file" doctrine. *Id.* ¶¶ 14-17, 39-46. In order to prosecute their claims efficiently and effectively, Plaintiffs also fought for transfer to this Court by the Judicial Panel on Multidistrict Litigation ("JPML"), eventually succeeding in obtaining centralization in this District of five related actions. *Id.* ¶¶ 49-60. And Plaintiffs also prevented further enjoinment of Plaintiffs' damages claims against Pilgrim's Pride as a result of Pilgrim's purported bankruptcy discharge. *Id.* ¶¶ 31-35. To further effective case management and to facilitate discovery, Plaintiffs also negotiated case management orders and stipulations covering the production of hard copy and electronic discovery, confidentiality designations, and the boundaries of expert disclosure and discovery, including renegotiating those same issues once centralization was obtained following Plaintiffs' second trip to the JPML. *Id.* ¶¶ 61-65, 79.

Since fact discovery opened in April 2020, Plaintiffs have pursued extensive discovery in this Action,[8] including, but not limited to, the following:

- Serving requests for production of documents on all Defendants and more than 50 subpoenas on non-parties;

- Negotiating the scope of document productions with Defendants and non-parties, which included protracted negotiations over appropriate initial (and supplemental) document custodians and electronic search methodologies, and complicated remote collections and productions in the midst of the Covid-19 pandemic with five Defendants and over fifteen alleged co-conspirators and even more innocent non-party subpoena recipients;

- Propounding several rounds of interrogatories and requests for admissions on Defendants, and negotiating the sufficiency of responses thereto;

- Responding to several rounds of interrogatories and requests for admissions served on Plaintiffs, and negotiating the sufficiency of responses thereto;

- Undertaking strategic review of the more than 1.7 million documents produced by Defendants and non-parties, consisting of more than 10 million pages and

---

[8] Action includes the member cases *Haff Poultry, Inc., et al. v. Tyson Foods, Inc., et al.,* No. 6:17-cv-33 (E.D. Okla.); *In re Sanderson & Koch Broiler Chicken Grower Litig.,* No. 7:18-cv-31 (E.D.N.C.); *McEntire v. Tyson Foods, Inc., et al.,* No. 1:20-cv-2764 (D. Colo.); *Colvin v. Tyson Foods, Inc., et al.,* No. 2:20-cv-2464 (D. Kan.); and *Mason v. Tyson Foods, Inc., et al.,* No. 5:20-cv-07049 (N.D. Cal.).

structured transaction data for more than 650,000 Broiler flocks;

- Reviewing and challenging where appropriate Defendants' privilege logs;
- Seeking production of "downstream" materials from *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-8637 (N.D. Ill.);
- Taking 73 depositions under Federal Rules of Civil Procedure 30(b)(1) and 30(b)(6) and defending eight class representative depositions;
- Participating in emergency conferences before Magistrate Judge Romero concerning scheduled depositions and the invocation of the Fifth Amendment by Pilgrim's William Lovette and Timothy Stiller; and
- Producing more than 10,000 pages of documents in response to Defendants' requests for production, which required complicated remote collection amid the Covid-19 pandemic.

Walker Decl. ¶¶ 66-78, 80-81, 83, 86-87, 133. To secure this discovery, Plaintiffs undertook extensive negotiations with Defendants and non-parties to obtain the requisite discovery while avoiding bringing disputes to the Court where possible and engaging in motion practice, where necessary, regarding non-party depositions, privilege logs, and non-party productions. *Id.* ¶¶ 69, 82-91, 133.

Plaintiffs have also marshalled the evidence to assist the class certification and merits analyses of their economic expert, Dr. Singer. *Id.* ¶¶ 92-93, 95. Leading up to the submission of his opening report on August 19, 2022, Plaintiffs' counsel worked extensively with Dr. Singer, and then reviewed and analyzed the opposing expert reports of Defendants' three experts. *Id.* ¶¶ 92-95. After taking the depositions of Defendants' experts, Plaintiffs continued to work with Dr. Singer on his rebuttal report, submitted on January 23, 2023, and defended his deposition on February 24, 2023. *Id.* ¶¶ 94-95.

Following the conclusion of expert discovery, the parties fully briefed their respective *Daubert* motions through May 2023. *Id.* ¶¶ 96-97. In addition, Plaintiffs submitted their class certification motion on March 17, 2023, and after the remaining Defendant's opposition, Plaintiffs submitted their reply in support of class certification on June 9, 2023. *Id.* ¶ 98. Hearings were held on July 13-14, 2023, on the remaining Defendant's *Daubert* motion and

Plaintiffs' class certification motion. *Id.* ¶ 99.[9]

### B.   The Settlement Negotiations and Settlement Agreement Terms

Plaintiffs negotiated the Settlement directly with Sanderson's skilled, experienced counsel. Smith Decl. ¶¶ 17-18. The parties' extensive negotiations over the course of three months resulted in the final Settlement Agreement with Sanderson, executed on February 28, 2023. *Id.* ¶¶ 19-20. At the time the Settlement was reached, Plaintiffs had made significant discovery efforts, having received more than 1.7 million documents from Defendants and non-parties, and worked extensively with their economic expert, Dr. Singer, to assist him with his class certification and merits analyses. Smith Decl. ¶¶ 6-16.

The Settlement Agreement defined the Settlement Class as follows:

> All individuals and entities in the United States and its territories that were compensated for Broiler Grow-Out Services[10] by a Defendant or Co-Conspirator, or by a division, subsidiary, predecessor, or Affiliate of a Defendant or Co-Conspirator, at any time during the period January 27, 2013 through December 31, 2019.

Settlement Agreement ¶ 5. Under the Settlement, Sanderson provides cash and valuable cooperation to Plaintiffs and the members of the Settlement Class.

Under the Settlement, Sanderson agreed to pay $17.75 million. Settlement Agreement ¶

---

[9] Plaintiffs previously executed settlement agreements with Tyson, Perdue, and Koch, on June 30, 2021, August 11, 2021, and May 20, 2022, respectively. Walker Decl. ¶¶ 100-122. Tyson agreed to pay $21 million, Perdue agreed to pay $14.75 million, and Koch agreed to pay $15.5 million. *Id.* ¶¶ 102, 114. All three also provided cooperation in this litigation pursuant to their settlement agreements. *Id.* ¶¶ 103, 115. The Court granted preliminary approval for the Tyson and Perdue settlements on August 23, 2021, ECF Nos. 144-145, and approved the form and manner of notice on that same day, ECF No. 146. Walker Decl. ¶¶ 105-107. The Tyson and Perdue notice process commenced on September 22, 2021. *Id.* ¶ 109. Both settlements were finally approved on February 18, 2022, ECF No. 285, and that same day the Court also granted Plaintiffs' motion for an award of attorneys' fees, the reimbursement of litigation expenses, and an award of interim service awards to the class representatives, ECF No. 284. Walker Decl. ¶¶ 110-111. The Court granted preliminary approval for the Koch settlement on June 10, 2022, ECF No. 367, and approved the form and manner of notice on that same day, ECF No. 366. Walker Decl. ¶¶ 117-118. The Koch notice process commenced on July 11, 2022. *Id.* ¶ 120. The settlement was finally approved on October 28, 2022, ECF No. 420, and that same day the Court also granted Plaintiffs' motion for an award of attorneys' fees and reimbursement of litigation expenses, ECF No. 419. Walker Decl. ¶¶ 121-122.
[10] "Broiler Grow-Out Services" means Broiler chicken growing services. Settlement Agreement ¶ 1(c).

9. Sanderson deposited these funds in an escrow account. Walker Decl. ¶ 127; Settlement Agreement ¶ 8. No portion of the Settlement Fund reverts to Sanderson following final approval because, as discussed herein, the monetary components (net of Court-awarded fees, costs, and claims administration costs) will be distributed to the Settlement Class *pro rata*. Smith Decl. ¶¶ 22-23.

In addition to cash payments, under the Settlement Agreement, Sanderson has agreed to provide significant non-monetary consideration. First, Sanderson has agreed to provide Plaintiffs with valuable cooperation to assist their prosecution of Plaintiffs' claims against the remaining Defendant. Sanderson is required to use reasonable efforts to cooperate to authenticate documents and consider reasonable requests for additional information about Plaintiffs' Claims. Settlement Agreement ¶ 10(a). Second, for a five-year period following final judgment, Sanderson is prohibited from including or enforcing provisions in its contracts with members of the Settlement Class that would either mandate arbitration or bar initiation or participation in a class action. *Id.* ¶ 10(d).

In consideration of Sanderson's cash payments and non-monetary consideration, members of the Settlement Class agreed to release certain claims against Sanderson, relating to or referred to in the Action or arising from the factual predicates of the Action. The release covers only claims against Sanderson Released Parties.[11] *See* Settlement Agreement ¶ 14.

Under the Confidential Supplement incorporated into the Settlement Agreement, Sanderson has the option (but not the obligation) to rescind the Settlement Agreement under certain conditions based on the number of members of the Settlement Class that opt out of the Settlement.[12] *See* Settlement Agreement ¶ 20. The deadline to object to or opt out of the Settlement Class expired on July 31, 2023. Order Approving Notice Plan and Authorizing Issuance of Notice ¶ 5 ("Notice Order") (ECF No. 483). As of August 9, 2023, Plaintiffs' analysis reveals that only 12 opt out notices have been received and the conditions to rescind or reduce the amount of the monetary component of the Settlement Agreement have not been triggered. *See also* Section I.D., *infra* (describing the *de minimis* number of opt outs).

---

[11] Released Parties are identified in paragraph 1(q) of the Settlement Agreement.

[12] The Confidential Supplement was made available for *in camera* review. ECF No. 435 at 5 & n.8.

### C.  Preliminary Approval and the Proposed Notice and Claims Process

On March 3, 2023, Plaintiffs filed a motion for preliminary approval of the Settlement as well as a motion for approval of the form and manner of notice of the Settlement to the Settlement Class. ECF Nos. 435-436. The proposed notice program included direct mail notice to Growers for which Defendants and alleged Co-Conspirators provided mailing addresses. ECF No. 436 at 6-7. This direct notice was supplemented by publication notice targeted at Growers for which mailing addresses were unavailable, including publication in a trade periodical as well as in select print and media outlets that reached geographic areas in which certain alleged Co-Conspirators (that did not produce Grower addresses or pay data) contracted with Growers for Broiler Grow-Out Services. *Id.* at 7-9. The latter publication notice was directed at members of the Settlement Class for which direct notice could not be provided. *Id.* This direct mail and publication notice was supplemented by an array of additional online services, including targeted internet advertising, a social media campaign, and a settlement website. *Id.*; ECF No. 436-1 (Decl. of Steven Weisbrot on Proposed Notice Plan ("Weisbrot Notice Decl.")) ¶¶ 19, 22-29.

Additionally, Plaintiffs included two claim forms in the direct mail notice and made them available to the members of the Settlement Class via the settlement website or upon request to Angeion (defined *infra*): a pre-populated claim form and an unpopulated claim form. ECF No. 436 at 10-12. Members of the Settlement Class for which Plaintiffs received sufficient data from Defendants and alleged Co-Conspirators reflecting Grower compensation over the class period received a claim form that was pre-populated with the payments members of the Settlement Class received for Broiler Grow-Out Services, obviating the need for those members of the Settlement Class to complete a claim form. *See* Smith Decl. ¶ 22; Weisbrot Notice Decl. Ex. D (proposed pre-populated claim form). These members of the Settlement Class are nonetheless permitted to contest the information that was pre-populated by submitting corrected information and documentation. *See* Weisbrot Notice Decl. Ex. D at 1. Members of the Settlement Class for which Plaintiffs lacked sufficient data on compensation paid by Defendants and alleged Co-Conspirators received an unpopulated claim form, which they had the option of returning with documentation reflecting their total compensation for Broiler Grow-Out Services or, alternatively, if they lack that documentation, with information from which their total compensation could be estimated. *See* Smith Decl. ¶ 23; Weisbrot Notice Decl. ¶ 14 & Ex. E.

On April 17, 2023, the Court preliminarily approved the Settlement; certified the

Settlement Class under Federal Rule of Civil Procedure 23(b)(3); appointed Hausfeld LLP and Berger Montague PC as Settlement Class Counsel; appointed Angeion Group, LLC ("Angeion") as the claims administrator; appointed Plaintiffs as representatives of the Settlement Class; and approved the notice plan, the form of notice, and the proposed claim forms. ECF Nos. 482-483. The Court found the notice plan represented the "best notice that is practicable under the circumstances," was "reasonably calculated to reach the members of the Settlement Class," and met "the requirements of Federal Rule of Civil Procedure 23 and due process." Notice Order ¶ 3.

### D.   Class Notice, Objections, and Exclusions

Following approval of the notice plan, Angeion provided potential members of the Settlement Class with the Court-approved notice in accord with the settlement notice program. *See generally* Declaration of Steven Weisbrot Regarding Implementation of Notice Plan ("Weisbrot Implementation Decl."), attached hereto. Beginning on May 17, 2023, Angeion successfully mailed direct notice to 22,870 members of the Settlement Class.[13] Weisbrot Implementation Decl. ¶¶ 5-10 & Exs. A-C.[14]

On the same day, Angeion launched the programmatic internet advertising banner program, which uses algorithms to identify websites most likely to be visited by members of the Settlement Class, as well as the Facebook and Instagram social media campaign, achieving a total of over 2.87 million impressions with such internet ads. *Id.* ¶¶ 11-13 & Exs. D & E. Also beginning on May 17, 2023, Angeion placed publication notice in eight local print publications to reach Growers who were less likely to be mailed direct notice. *Id.* ¶ 14 & Ex. F. Notice was also published in the national trade publication *Poultry Times*, whose readership of 13,000 includes many Growers. *Id.* ¶ 15 & Ex. G. Angeion issued a press release publicizing the Settlement that was distributed over the National and Agriculture circuits of a major newswire service to drive traffic to the settlement website. *Id.* ¶ 16 & Ex. H.

Angeion timely launched the settlement website to provide potential members of the

---

[13] Angeion initially mailed direct notice to 23,978 addresses. Weisbrot Implementation Decl. ¶ 7. 1,339 of those were returned undeliverable. *Id.* ¶ 8. Following address verification searches for those addresses (skip tracing), Angeion remailed direct notice to 231 addresses. *Id.* The net successfully mailed notice packets is thus 22,870. *Id.* ¶ 9.

[14] The final direct notice and claim forms provided to potential class members are attached as Exhibits A-C to the Weisbrot Implementation Declaration.

Settlement Class with information about the Settlement, which included a downloadable direct notice and an unpopulated claim form, the Settlement Agreement, court filings related to the Settlement (including Plaintiffs' application for attorneys' fees and costs and interim service awards), a "Frequently Asked Questions" section, a contact page allowing users to submit questions to Angeion, and a means to upload completed claims forms. *Id.* ¶ 17. Angeion also established a dedicated toll-free line, allowing callers to speak with a live operator during business hours, request a claim form, and get answers to their questions. *Id.* ¶ 19. As of August 9, 2023, there were 71,835 unique visitors on the website and 791 calls were made to the dedicated toll-free line, totaling more than 3,911 minutes (or over 65 hours of call time). *Id.* ¶¶ 18, 20.

The deadline for mailing objections to the Settlement or requests for exclusion from the Settlement Class was July 31, 2023. *See* Notice Order ¶ 5. As of August 9, 2023, 12 Growers requested exclusion from the Settlement. Weisbrot Implementation Decl. ¶ 22 & Ex. I. As of August 9, 2023, no objections have been filed. *Id.* ¶ 23.

### E.   The Proposed Allocation and Distribution to the Settlement Class

Members of the Settlement Class who received pre-populated claims forms—those for whom Plaintiffs possessed adequate compensation data—were notified that if they do not exclude themselves from the Settlement or contest the data in the pre-populated form they will be deemed to have accepted the pre-populated calculations. Weisbrot Implementation Decl., Ex. B at 1-3. Their settlement award will be calculated based on the compensation in the pre-populated claims form. Thus, an estimated 99 percent of the Settlement Class is eligible to receive payment from the Settlement even if they do nothing. Smith Decl. ¶ 22. Growers who received an unpopulated claim form or obtained a claim form from Angeion or the settlement website have until December 13, 2023 to return the form with completed compensation data or other information from which their Settlement award will be calculated. Notice Order ¶ 5. As of August 9, 2023, Angeion has received 56,356 Claim Form submissions or updated address submissions. Weisbrot Implementation Decl. ¶ 21.

### F.   Plaintiffs' Application for Attorneys' Fees and Litigation Costs

The notice informed members of the Settlement Class that Settlement Class Counsel would seek an award of attorneys' fees, capped at one-third of the gross settlement fund and reimbursement of litigation costs of up to $2.5 million. Weisbrot Implementation Decl. Ex. A at

9

§ 15. On July 3, 2023, Plaintiffs filed their motion for fees and costs. ECF No. 517. The petition sought an award of attorneys' fees of one-third of the gross settlement fund (or $5,916,667 million) and reimbursement of $972,341.98 in litigation costs. *Id.* at 19. Angeion posted the fee petition on the settlement website. Weisbrot Implementation Decl. ¶ 17.

## III.    ARGUMENT

### A.    The Proposed Settlement is Fair, Reasonable, and Adequate and Should be Finally Approved

The Settlement should be approved. Rule 23(e) requires that before finally approving a class action settlement, a court must find that the settlement is fair, reasonable, and adequate considering whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2). These considerations augment rather than supplant the traditional factors courts have considered at final approval. *Chavez Rodriguez v. Hermes Landscaping, Inc.*, No. 17-cv-2142, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020). In this Circuit, those traditional factors are whether: (1) the proposed settlement was fairly and honestly negotiated; (2) serious questions of law and fact place the ultimate outcome of the litigation in doubt; (3) the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the parties judge the settlement to be fair and reasonable. *See In re Samsung Top-Load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig.*, 997 F.3d 1077, 1087 (10th Cir. 2021). With the exception of the fourth traditional factor, this Circuit's factors overlap with the considerations under Rule 23(e)(2). *Rodriguez*, 2020 WL 3288059, at *2. The Settlement warrants final approval under all of these factors.

### 1.    Plaintiffs and Settlement Class Counsel Have Skillfully Represented the Settlement Class

In certifying the Settlement Class, the Court previously found Settlement Class Counsel and Plaintiffs adequate under Rule 23(a), ECF No. 482, which is sufficient to satisfy Rule 23(e)(2)(A). *See Suavedez v. Circle K Stores, Inc.,* No. 20-cv-01035, 2021 WL 4947238, at *7 (D. Colo. June 28, 2021); *Lawrence v. First Fin. Inv. Fund V, LLC*, No. 19-cv-174, 2021 WL 3809083, at *6 (D. Utah Aug. 26, 2021) (Shelby, J.). Under Rule 23(e)(2)(A), courts may also evaluate "the actual performance of counsel acting on behalf of the class," including the extent of discovery taken. *Montgomery v. Cont'l Intermodal Grp. Trucking LLC*, No. 19-cv-940, 2021

10

WL 1339305, at *4 (D.N.M. Apr. 9, 2021) (citations and quotation omitted). The extent of discovery informs whether the settlement is made with sufficient information about the case and demonstrates that the parties have litigated in an adversarial posture. William B. Rubenstein, 4 Newberg on Class Actions § 13:49 (5th ed.); *see also Montgomery,* 2021 WL 1339305, at *4-5. Those considerations weigh in favor of approval here.

      The record in this Action demonstrates Settlement Class Counsel's adequacy and the informed basis on which they and Plaintiffs negotiated the Settlement. Settlement Class Counsel have extensive experience with the prosecution and settlement of antitrust class actions.[15] As discussed in Section I.A., *supra*, Settlement Class Counsel have zealously and skillfully represented the interests of Plaintiffs and the Settlement Class through over six and a half years of hotly contested litigation in five district courts, a bankruptcy court, and two visits to the JPML: they defeated multiple motions to dismiss; fought a purported bankruptcy discharge of Plaintiffs' claims; secured centralization before this Court; conducted extensive discovery, having served and negotiated production requests and interrogatories, conducted targeted review of the more than 1.7 million documents produced, and taken over 70 depositions; secured valuable cooperation from Tyson, Perdue, and Koch; worked extensively with Plaintiffs' economic expert on his class certification and merits analyses; briefed offensive and defensive *Daubert* motions and class certification; presented oral argument on the defensive *Daubert* motion and class certification; and diligently complied with the notice plan and settlement procedures. *See, e.g.*, *Montgomery*, 2021 WL 1339305, at *4.

      The Plaintiffs selected as class representatives also have actively participated in the prosecution of their claims by providing information, participating in discovery, and attending hearings, and have no conflicts with the members of the Settlement Class; each is a Grower that suffered the same harm as every member of the Settlement Class and shares the same interests of the Settlement Class in obtaining relief. *See McNeely v. Nat'l Mobile Health Care, LLC,* No. 07-cv-933, 2008 WL 4816510, at *7 (W.D. Okla. Oct. 27, 2008) (considering whether representative had interests antagonistic to the class); *McGaffin v. Argos USA, LLC,* No. 16-cv-104, 2020 WL 3491609, at *4 (S.D. Ga. June 26, 2020) (Rule 23(e)(2)(A) satisfied where

---

[15] Settlement Class Counsel's antitrust and class action experience is described in detail in each of their firm resumes. *See* ECF Nos. 214-18 & 214-19.

11

representatives have same interests and claims as the class and participated in action).

### 2.   The Settlement Was Reached After Arm's Length Negotiation[16]

The Settlement satisfies Rule 23(e)(2)(B), which requires courts to evaluate whether the Settlement was reached after fair and honest arm's length negotiations. Similar to Rule 23(e)(2)(A), courts evaluate whether a settlement was negotiated fairly and honestly by considering the duration of litigation and status of discovery prior to the Settlement and the adversarial nature of the process. *See Cisneros v. EP Wrap-It Insulation, LLC*, No. 19-cv-500, 2021 WL 2953117, at *6 (D.N.M. July 14, 2021) (considering degree of active litigation, disputes, and circumstances of settlement negotiations); *Blanco v. Xtreme Drilling & Coil Servs., Inc.*, No. 16-cv-249, 2020 WL 4041456, at *3 (D. Colo. July 17, 2020) (same); *Aragon v. Clear Water Prods. LLC*, No. 15-cv-02821, 2018 WL 6620724, at *3 (D. Colo. Dec. 18, 2018) (approving settlement after considering status of discovery and duration of litigation).

The record demonstrates the fairness of the negotiation process for the Settlement. As described in Section I.A., *supra*, Plaintiffs and Defendants had been engaged in adversarial litigation for over six years when the Settlement was reached. Further, the terms of the Settlement were negotiated by Plaintiffs' counsel with counsel for Sanderson over the course of three months.

The structure of the Settlement and plan of allocation and distribution—which maximizes relief to the Settlement Class—also supports a finding of arm's-length negotiations: Sanderson has no reversionary interest in the Settlement because the entirety of the net Settlement Fund is distributed to the members of the Settlement Class *pro rata*; and the Settlement does not specify attorneys' fees other than that Plaintiffs may petition the Court for an award of fees and costs from the gross Settlement Fund, the amount of which can be determined by only the Court. *Cf., e.g.*, *In re Samsung,* 997 F.3d at 1088-91 (scrutinizing fairness of agreement that specified fee for counsel in the agreement with "kicker" provision that returned amounts not awarded by the court to defendant, not the class); *Stewart v. USA Tank Sales & Erection Co.*, No. 12-cv-5136, 2014 WL 836212, at *6 (W.D. Mo. Mar. 4, 2014) (scrutinizing settlements that provide for large reversions to the settling defendants).

---

[16] "The Tenth Circuit's fair and honest negotiation requirement can be subsumed under Rule 23's second factor—arm's-length negotiation." *Rodriguez*, 2020 WL 3288059, at *3.

**3.     The Relief Provided to the Settlement Class is More Than Adequate, it is Substantial**

The relief achieved for the Settlement Class is more than adequate under Rule 23(e)(2)(C), which requires that courts evaluate whether the relief provided for the class is adequate, taking into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement [made in connection with the Settlement]."[17] Fed. R. Civ. P. 23(e)(2)(C).

The terms of the Settlement Agreement itself make clear the substantial relief afforded to members of the Settlement Class. As discussed in Section I.B., *supra*, the Settlement provides a total of $17.75 million in cash consideration as well as meaningful cooperation that will aid Plaintiffs' ongoing prosecution of the claims against the remaining Defendant. Courts recognize the value of cooperation in partial settlements in ongoing antitrust litigation. *See, e.g.*, *In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 29 (D.D.C. 2019) (noting cooperation provisions weigh in favor of approval); *In re Processed Egg Prod. Antitrust Litig.*, 284 F.R.D. 249, 275 (E.D. Pa. 2012) (finding cooperation throughout the course of pre-trial proceedings and trial is valuable consideration); *In re Urethane Antitrust Litig.*, No. 04-md-1616, 2006 WL 2983047, at *1 (D. Kan. Oct. 17, 2006) (approving antitrust class action settlement, noting the value of cooperation provisions). Considering the factors under Rule 23(e)(2)(C), the monetary and non-monetary consideration provide significant relief to the Settlement Class. Additionally, Sanderson's agreement to forego inclusion or enforcement of provisions in its contracts with members of the Settlement Class that would either mandate arbitration or bar initiation or participation in a class action.

---

[17] Rule 23(e)(2)(C)(iv) is inapplicable here. There are no agreements in connection with the Settlement. The confidential supplement incorporated into the Settlement Agreement—which sets conditions for recission of the Settlement Agreement based on class member exclusions— are terms of the Settlement Agreement itself and are available to the Court for *in camera* review. *See supra* n.12. In any event, Plaintiffs' analysis shows that the triggering events for the confidential supplement have not been met, mooting it.

a.     **The costs, risks, and delay of trial and appeal favor final approval**[18]

Notwithstanding this substantial relief, courts must evaluate the value of settlements considering the cost and risk of continued litigation, and the delay in monetary relief should the claims proceed to trial and through appeal. This factor weighs in favor of final approval here.

Courts consider antitrust cases to be "particularly risky" and acknowledge that they are among the most complex actions to prosecute. *See, e.g.*, *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-2420, 2020 WL 7264559, at *15 (N.D. Cal. Dec. 10, 2020) (collecting cases). Plaintiffs remain confident in their claims, but there are complex questions of law and fact that pose risks in any antitrust litigation. Defendants have disputed and will continue to dispute the existence and scope of the alleged anticompetitive conspiracy. This "[l]egal complexity [and] factual complexity . . . all weigh in favor of settlement." Newberg § 13:52. Additionally, although Plaintiffs are confident that the proposed class will be certified for litigation purposes, Defendants have vigorously contested class certification as well as Plaintiffs' expert's conclusions through a *Daubert* challenge. *See Retta v. Millennium Prods., Inc*., No. 15-cv-1801, 2017 WL 5479637, at *5 (C.D. Cal. Aug. 22, 2017). And proceeding through class certification and summary judgment to trial, even with the strongest evidentiary arsenal, poses risks because any "ultimate jury result is uncertain, unknown and unpredictable." *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 285 (D. Colo. 1997). This is particularly so in a complex antitrust case. *See, e.g.*, *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1327 (5th Cir. 1981) ("The complexity of an antitrust jury trial of [multiple] defendants gives rise to the very real possibility that the plaintiffs' case could be prejudiced.").

Absent this Settlement, with summary judgment briefing not scheduled to conclude until December 2023, trial likely a year away, and any trial outcome likely subject to a lengthy appeal process, members of the Settlement Class would need to wait years before receiving any recovery through a trial against Sanderson. Courts recognize that a class is often "better off receiving compensation now as opposed to being compensated, if at all, several years down the

---

[18] The Tenth Circuit's requirement that courts evaluate whether "serious questions of law and fact . . . plac[e] the ultimate outcome of the litigation in doubt and whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. . . . largely overlap[s] and can be subsumed under" Rule 23(e)(2)(C)(i)'s evaluation of the costs, risk, and delay of trial and appeal. *Rodriguez*, 2020 WL 3288059, at *3.

14

line, after the matter is certified, tried, and all appeals are exhausted." *McNeely*, 2008 WL
4816510, at *13; *see also Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 547 (D. Colo.
1989) ("It has been held prudent to take a bird in the hand instead of a prospective flock in the
bush.") (quotation omitted); *Childs v. Unified Life Ins. Co.*, No. 10-cv-23, 2011 WL 6016486, at
*13 (N.D. Okla. Dec. 2, 2011) (noting settlement "creates a certainty of some recovery, and
eliminates doubt, meaning the possibility of no recovery after long and expensive litigation")
(quotation omitted). And by virtue of principles of joint and several liability, Plaintiffs can
recover the remainder of their class-wide treble damages from the remaining Defendant.

>    **b.      The proposed method of distributing relief to the Settlement Class,
>            including the method of processing claims, favors final approval**

Plaintiffs satisfy the relevant standard for ensuring that the claims process facilitates
filing legitimate claims while protecting against unduly burdensome claims procedures. Fed. R.
Civ. P. 23(e)(2)(C)(ii) advisory committee notes (2018 amendments). This ensures that the
claims process and distribution provide "as much of the available damages remedy to class
members as possible and in as simple and expedient a manner as possible." Newberg § 13:53;
*see also Rodriguez*, 2020 WL 3288059, at *3.

The claims and notice process here ensures that an overwhelming majority of the
Settlement Class will receive a distribution from the Settlement Fund without having to do
anything at all. As described in Section I.C., *supra*, Plaintiffs obtained from Defendants and
alleged Co-Conspirators sufficient compensation information and mailing addresses for most
members of the Settlement Class, allowing them to mail claims forms that were pre-populated
with the compensation information on which their settlement awards would be based. Those who
receive pre-populated claims forms and do not opt out of the Settlement will automatically
receive their *pro rata* shares of the Settlement Fund even if they do nothing in response to the
notice, ensuring an outstanding claims rate. Courts widely recognize that claims procedures that
require little or no action by settlement class members to receive a payment satisfy Rule
23(e)(2)(C)(ii). *Moreno v. Beacon Roofing Supply, Inc*., No. 19-cv-185, 2020 WL 3960481, at *5
(S.D. Cal. July 13, 2020) (finding "claim process is not burdensome and straightforward because
it does not require Class Members to submit a claim to receive compensation"); *Vargas v. Ford
Motor Co.*, No. 12-cv-8388, 2020 WL 1164066, at *9 (C.D. Cal. Mar. 5, 2020) (finding method
of distribution appropriate where claims forms are pre-populated); *Hale v. State Farm Mut. Auto.*

*Ins. Co.*, No. 12-cv-660, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) (similar).

Growers who are among the small portion of the Settlement Class for which Plaintiffs did not have sufficient claims data to provide a pre-populated claim form or whose identities were unknown (approximately one percent), need only submit a claim form with their compensation information and documentation. If they do not have that information, they may instead provide basic information to qualify for a payment, such as the name of the Defendant or alleged Co-Conspirator for whom they grew Broilers, the number of farms operated, and years those farms were in operation, from which their resulting *pro rata* share may be calculated. Weisbrot Implementation Decl. Ex. C; Weisbrot Notice Decl. Ex. E.[19] A claims process that requires submission of such basic data provides for an efficient and reasonable distribution while meeting the goals of Rule 23(e)(2)(C)(ii) to ensure legitimate claims are submitted. *See, e.g.*, *Hale*, 2018 WL 6606079, at *5 (finding claims procedure to be claimant-friendly, efficient, and cost-effective where class members whose contact information is known need not submit a claim at all and others need only submit a simple claim form); *Vargas*, 2020 WL 1164066, at *9 (requirement to submit basic documentation is reasonable).

### c.    The proposed award of attorneys' fees favors final approval

Here, Plaintiffs have sought an award of attorneys' fees of one-third of the gross Settlement Fund—an amount routinely recognized as falling within an acceptable range of fee awards. *Cook v. Rockwell Int'l Corp.*, No. 90-cv-181, 2017 WL 5076498, at *1 & n.1 (D. Colo. Apr. 28, 2017) (citing cases awarding fees from one-third to 40% of the common fund).[20] A one-third fee in class action common fund cases, including in antitrust cases, is routinely awarded. *See, e.g.*, *In re Urethane Antitrust Litig.*, No. 04-md-1616, 2016 WL 4060156, at *8 (D. Kan. July 29, 2016) (awarding one-third of $835 million settlement); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, No. 02-md-1468, 2011 WL 1808038, at *2 (D. Kan. May 12, 2011)

---

[19] The calculation has been made available on the settlement website.

[20] *See also, e.g.*, *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1099 (D. Kan. 2018) (awarding one-third of common fund); *Shaw v. Interthinx, Inc.*, No. 13-cv-01229, 2015 WL 1867861, at *6 (D. Colo. Apr. 22, 2015) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class."); *Lewis v. Wal-Mart Stores, Inc.*, No. 02-cv-0944, 2006 WL 3505851, at *1-2 (N.D. Okla. Dec. 4, 2006) (noting that a "contingency fee of one-third is relatively standard in lawsuits that settle before trial").

(finding award of one-third of the fund falls within the range of awards deemed reasonable by courts). And, as explained in Plaintiffs' fee petition, the award is warranted under the applicable law of this Circuit. *See* ECF No. 517 at 8-18.

### 4.     The Settlement and Proposed Plan of Distribution Treat Members of the Settlement Class Equitably

The Court-approved distribution plan treats all members of the Settlement Class equitably. As discussed in Section I.E., *supra*, Plaintiffs propose to distribute the Settlement Fund *pro rata*, based on total qualifying compensation each member of the Settlement Class received for Broiler Grow-Out Services from any Defendant or alleged Co-Conspirator during the class period as a percentage of total qualifying compensation received by all members of the Settlement Class who have valid claims. Such a *pro rata* distribution is fair and equitable because it compensates members of the Settlement Class based on their relative harm suffered.

Since the 2018 amendment of Rule 23(e) expressly required this consideration, courts have consistently found *pro rata* distribution is equitable to settlement classes. *See, e.g.*, *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 316 (S.D.N.Y. 2020) (in antitrust action, finding courts uniformly approve plans of allocation distributing funds on a *pro rata* basis as equitable under Rule 23(e)(2)(D)); *Perks v. Activehours, Inc.*, No. 19-cv-5543, 2021 WL 1146038, at *6 (N.D. Cal. Mar. 25, 2021) (*pro rata* distribution is "inherently equitable" because it allocates settlement proceeds based on the amount of each member's potential damages); *Cisneros*, 2021 WL 2953117, at *10 (finding *pro rata* allocation provides equitable treatment). Even prior to the 2018 amendment, courts considered this factor and routinely found *pro rata* distribution of settlement funds in antitrust actions to be fair and reasonable. *See, e.g.*, *In re Vitamins Antitrust Litig.*, No. 99-cv-197, 2000 WL 1737867, at *6 (D.D.C. Mar. 31, 2000) (*pro rata* distribution has "repeatedly been deemed fair and reasonable").[21]

### 5.     The Parties Agree that the Settlement Is Fair, Reasonable, and Adequate

Experienced counsel for both Plaintiffs and Sanderson endorse the Settlement,[22] which is

---

[21] *See also, e.g.*, *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011) ("Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable."); *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001) (allocation plan based on the type and extent of their injuries is generally reasonable).

[22] *See* Smith Decl. ¶ 21.

a further basis to approve it. *Rodriguez*, 2020 WL 3288059, at *4 ("If all Class Members are treated equitably, counsel for both sides agree the outcome is good, and there are no objections to the Settlement Agreement, it appears the parties agree the settlement is fair and reasonable."). Counsel's opinion that the Settlement is fair and reasonable is entitled to "considerable weight." *McNeely*, 2008 WL 4816510, at *13; *see also In re Dep't of Energy Stripper Well Exemption Litig.*, 653 F. Supp. 108, 116 (D. Kan. 1986) (noting "the professional judgment of counsel involved in the litigation—who have made a determination that the settlement represents a fair allotment for their clients—is entitled to significant weight"); *Alvarado*, 723 F. Supp. at 548 ("Courts have consistently refused to substitute their business judgment for that of counsel and the parties."). This is particularly true where, as demonstrated above, Settlement Class Counsel and the Plaintiffs have already zealously represented the interests of the Settlement Class. *See* Section I.A., *supra*.

Settlement Class Counsel are experienced antitrust litigators who, at the time of the Settlement, were extremely knowledgeable about the factual and legal issues in the case. *See, e.g.*, Walker Decl. ¶¶ 132-133. As demonstrated by Plaintiffs' motion papers and as discussed herein, it is the opinion of Settlement Class Counsel that the Settlements offer tremendous value to the Settlement Class both because of the monetary consideration provided now and Sanderson's ongoing cooperation through trial that will aid Plaintiffs in securing additional monetary and injunctive relief from the remaining Defendant.

The reaction of the Settlement Class demonstrates that the class members agree. Only 12 Growers have excluded themselves from the Settlement. Weisbrot Implementation Decl. ¶ 22 & Ex. I. And there have been no objections to the Settlement. *Id.* ¶ 23.

### B. Notice to the Settlement Class Comported with Rule 23 and Due Process

The means and manner of notice satisfies the Federal Rules and due process. Under Rule 23(e)(1), notice of the settlement must be provided in a reasonable manner to all class members who would be bound by the proposal. Fed. R. Civ. P. 23(e)(1). Under Rule 23(c)(2) and procedural due process, the court must direct to members of a Rule 23(b)(3) monetary relief class "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) (noting constitutional guarantees and the requirements of Rule 23(c)(2)(B) are coextensive); *see also*

*Tennille v. Western Union Co.*, 785 F.3d 422, 436 (10th Cir. 2015). Due process does not require, however, "*actual* notice to each party intended to be bound by the adjudication of a representative action." *DeJulius*, 429 F.3d at 944 (emphasis in original). It is universally recognized that the method of notice used here, namely direct notice supplemented with publication notice targeted to reach class members who cannot be sent direct notice, satisfies due process and Rule 23(c)(2)(B). *See, e.g.*, *In re Samsung Top-Load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig.*, No. 17-md-2792, 2020 WL 2616711, at *11 (W.D. Okla. May 22, 2020), *aff'd*, 997 F.3d 1077 (10th Cir. 2021).

Substantively, Rule 23(b)(3) class notices must state in plain, easily understood language, (i) the nature of the action; (ii) the definition of the class that is being certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the Court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members. Fed. R. Civ. P. 23(c)(2)(B). Notice will satisfy Rule 23 if it gives Rule 23(b)(3) class members "sufficient information about the specific lawsuit to allow a class member to assess whether to exercise the right either to appear or to opt out." *Tennille*, 785 F.3d at 437 (quotation and citation omitted); Weisbrot Implementation Decl. Exs. A, D-H.

Here the notice plan approved by the Court and as implemented by Settlement Class Counsel and Angeion satisfies these criteria. Settlement Class Counsel obtained from Defendants and alleged Co-Conspirators mailing addresses for 23,776 members of the Settlement Class. Angeion mailed direct notice and claims forms to those addresses, and remailed notice to updated addresses for addressees whose notice was returned undeliverable, resulting in direct notice mailed to the overwhelming majority of the Settlement Class. *See* Section I.D., *supra*, Weisbrot Implementation Decl. ¶¶ 6-10.

For the remainder of the Settlement Class for which Settlement Class Counsel did not have mailing addresses, a supplemental publication notice program was implemented. Publication notice was placed in print publications in geographic locations in which members of the Settlement Class without known mailing addresses raised Broilers (in Ohio, Georgia, and North Carolina), and in a trade publication targeted at the Broiler industry. Weisbrot Implementation Decl. ¶¶ 14-15. An internet-based programmatic display advertising campaign was launched, targeting placement on websites expected to be of interest to Growers, and a

social media campaign engaged with Settlement Class members via news feed and story units, image ads, and right column ads. *Id.* ¶¶ 11-13, 16. Publication notice directed members of the Settlement Class to the settlement website where they could obtain the Settlement Agreement, the long form notice, and an unpopulated claim form. *Id.* Exs. D-H. This notice—combining direct notice to nearly all members of the Settlement Class and robust publication notice—satisfies Rule 23(c)(2) and due process. *See, e.g.*, *In re Samsung,* 2020 WL 2616711, at *9-11.

Similarly, the substance of the notice satisfied Rule 23(c)(2)(B). The direct and publication notice informed members of the Settlement Class: (i) about the nature of the action; (ii) of the definition of the class that was being certified; (iii) about the class claims, issues, or defenses; (iv) that each has a right to enter an appearance through an attorney if the member so desires; (v) that the Court will exclude from the Settlement Class any member who timely requests exclusion; (vi) how and when to request exclusion; and (vii) about the binding effect of a class judgment on members. Weisbrot Implementation Decl. Ex. A at §§ 1-3, 5, 14, 16-17; 21-24. The notice also used clear and concise language in conveying this information and identified all critical deadlines as well as the date of the fairness hearing. *See id.* Ex. A at pp. 2-3, 13. Thus, the notice met all of the requirements of Rule 23. *See Tennille*, 785 F.3d at 436-37 (finding notice adequate when notice generally informed class members that if they did not opt out, they would give up their right to sue defendant for the claims the lawsuit resolved); *Chieftain Royalty Co. v. XTO Energy Inc*., No. 11-cv-29, 2018 WL 501656, at *3 (E.D. Okla. Jan. 18, 2018) (approving notice that, *inter alia*, described the terms and effect of the settlement, notified the class of important deadlines, and described the procedure for objecting and opting out); *In re Samsung*, 2020 WL 2616711, at *10 (approving notice that, *inter alia*, explained the nature of the action, the definition of the class certified, identified the claims, explained that the court will exclude any member who makes a timely request, and provided important deadlines).

Finally, the notice disclosed the maximum amount Plaintiffs would seek from the gross Settlement Fund for attorneys' fees and reimbursement of litigation costs. Weisbrot Implementation Decl. Ex. A at § 15. Plaintiffs' fee petition was posted on the settlement website. *Id.* ¶ 17. Members of the Settlement Class thus had adequate notice of the fee petition and an opportunity to review it prior to deciding whether to exclude themselves from or object to the Settlement. *See In re Samsung Top-load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig*., No. 17-md-2792, 2019 WL 6118267, at *1-2 (W.D. Okla. Nov. 18, 2019).

### C. Final Judgment as to Sanderson Is Proper Under Rule 54(b)

"As a general matter, the courts of appeal have jurisdiction only to review the 'final decisions' of district courts" pursuant to 28 U.S.C. § 1291. *Miller v. Basic Rsch., LLC*, 750 F.3d 1173, 1175–76 (10th Cir. 2014). However, where its requirements are met, "Rule 54(b) permits district courts to authorize immediate appeal of dispositive rulings on separate claims in a civil action raising multiple claims." *Gelboim v. Bank of America Corp.*, 574 U.S. 405, 409 (2015). Specifically, Rule 54(b) permits entry of final judgment "as to one or more, but fewer than all, claims or parties" permitted that the Court determines that there is "no just reason for delay." Fed. R. Civ. P. 54(b). In the Tenth Circuit, three requirements have evolved to guide the Court's Rule 54(b) analysis. *First*, the "order must stem from a lawsuit that involves multiple claims." *Waltman v. Georgia-Pacific, LLC*, 590 Fed. Appx. 799, 809 (10th Cir. 2010). *Second*, the "order must represent a final decision on at least one of the claims." *Id. Finally*, the "order must include the district court's express determination 'that there is no just reason for delay.'" *Id.* For the same reasons advanced by Plaintiffs in their request for Rule 54(b) judgment as to Tyson and Perdue, *see* ECF No. 288, Plaintiffs respectfully submit that this standard is satisfied as to Sanderson, as well.

## IV.   CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement Agreement with Sanderson, grant final approval to the *pro rata* distribution, find that Sanderson has provided the appropriate notice pursuant to CAFA, find notice to the Settlement Class comported with Rule 23 and due process, and determine that there is no just cause for delay and entry of judgment as to Sanderson under Rule 54(b) is appropriate.

Dated:   August 10, 2023                    Respectfully submitted,

*/s/ Samantha S. Derksen*
Samantha Derksen*
Michael D. Hausfeld*
James J. Pizzirusso*
Melinda R. Coolidge*
**HAUSFELD LLP**
888 16th Street, NW, Suite 300
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
sderksen@hausfeld.com

21

mhausfeld@hausfeld.com
jpizzirusso@hausfeld.com
mcoolidge@hausfeld.com

Gary I. Smith, Jr.*
Kyle G. Bates*
**HAUSFELD LLP**
600 Montgomery Street, Suite
3200 San Francisco, CA 94111
Telephone: (415) 633-1908
Facsimile: (415) 633-4980
gsmith@hausfeld.com
kbates@hausfeld.com

Eric L. Cramer*
Patrick F. Madden*
David Langer*
Ellen T. Noteware*
Michaela L. Wallin*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
ecramer@bm.net
pmadden@bm.net
dlanger@bm.net
enoteware@bm.net
mwallin@bm.net

Daniel J. Walker*
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW Suite 300
Washington, DC 20006
Telephone: (202) 559-9745
dwalker@bm.net

***Interim Co-Lead Counsel for Plaintiffs and the
Proposed Class***

M. David Riggs
Donald M. Bingham
Kristopher Koepsel
**RIGGS ABNEY NEAL TURPEN ORBISON & LEWIS**
502 West Sixth Street
Tulsa, OK 74119

22

Telephone: (918) 699-8914
Facsimile: (918) 587-9708
driggs@riggsabney.com
don_bingham@riggsabney.com
kkoepsel@riggsabney.com

William A. Edmondson (OBA No. 2628)
**RIGGS ABNEY NEAL TURPEN ORBISON & LEWIS**
528 N.W. 12th Street
Oklahoma City, OK 73103
Telephone: (405) 843-9909
Facsimile: (405) 842-2913
dedmondson@riggsabney.com

*Liaison Counsel for Plaintiffs and the
Proposed Class*

Larry D. Lahman (OBA No. 5166)
Roger L. Ediger (OBA 19449)
**MITCHELL DECLERK, PLLC**
202 West Broadway Avenue
Enid, OK 73701
Telephone: (580) 234-5144
Facsimile: (580) 234-8890
ldl@mdpllc.com
rle@mdpllc.com

Warren T. Burns*
**BURNS CHAREST, LLP**
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
wburns@burnscharest.com

Gregory L. Davis*
**DAVIS & TALIAFERRO, LLC**
7031 Halcyon Park Drive
Montgomery, AL 36117
Telephone: (334) 832-9080
Facsimile: (334) 409-7001
gldavis@gregdavislaw.com

Charles D. Gabriel*
**CHALMERS & ADAMS LLC**
North Fulton Satellite Office

23

5755 North Point Parkway, Suite 251
Alpharetta, GA 30022
Telephone: (678) 735-5903
Facsimile: (678) 735-5905
cdgabriel@cpblawgroup.com

Larry S. McDevitt*
David M. Wilkerson*
VAN WINKLE LAW FIRM
11 North Market Street Asheville, NC
28801 Telephone: (828) 258-2991
Facsimile: (828) 257-2767
lmcdevitt@vwlawfirm.com
dwilkerson@vwlawfirm.com

Harlan Hentges (OBA No. 17911)
HENTGES & ASSOCIATES, PLLC
102 East Thatcher Street
Edmond, OK 73034
Telephone: (405) 340-6554
Facsimile: (405) 340-6562
harlan@organiclawyers.com

John C. Whitfield*
WHITFIELD COLEMAN MONTOYA, PLLC (TN)
518 Monroe Street
Nashville, TN 37208
Telephone: (615) 921-6500
Facsimile: (615) 921-6501
jwhitfield@wcbfirm.com

J. Dudley Butler*
BUTLER FARM & RANCH LAW GROUP, PLLC
499-A Breakwater Drive
Benton, MS 39039
Telephone: (662) 673-0091
Facsimile: (662) 673-0091
jdb@farmandranchlaw.com

Daniel M. Cohen*
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Ave., NW Suite 200
Washington, DC 20016
Telephone: (202)789-3960
Facsimile: (202)789-1813
Danielc@cuneolaw.com

24

David S. Muraskin*
**PUBLIC JUSTICE, PC**
1620 L Street NW, Suite 630
Washington, DC 20036
Telephone: (202) 861-5245
Facsimile: (202) 232-7203
dmuraskin@publicjustice.net

Kellie Lerner*
Meegan F. Hollywood*
Benjamin Steinberg*
**ROBINS KAPLAN, LLP**
1325 Avenue of the Americas, Suite
2601 New York, NY 10019
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
KLerner@RobinsKaplan.com
MHollywood@RobinsKaplan.com
BSteinberg@RobinsKaplan.com

M. Stephen Dampier*
**DAMPIER LAW FIRM**
55 North Section Street
P.O. Box 161
Fairhope, AL 36532
Telephone: (251) 929-0900
Facsimile: (251) 929-0800
stevedampier@dampierlaw.com

Michael L. Silverman*
**ROACH LANGSTON BRUNO LLP**
205 North Michigan Avenue, Suite 810
Chicago, IL 60601
Telephone: (773) 969-6160
msilverman@rlbfirm.com

Grant L. Davis*
Thomas C. Jones*
Timothy Gaarder*
Thomas E. Ruzicka, Jr.*
**DAVIS BETHUNE & JONES, LLC**
1100 Main Street, Suite 2930
Kansas City, MO 64105
Telephone: (816) 421-1600
gdavis@dbjlaw.net

25

tgaarder@dbjlaw.net
tjones@dbjlaw.net
truzicka@dbjlaw.net

Robert Bonsignore, Esq.*
**BONSIGNORE, TRIAL LAWYERS, PLLC**
23 Forest Street
Medford, MA 02155
Telephone: (781) 350-0000
rbonsignore@class-actions.us

***Additional Class Counsel for***
***Plaintiffs and the Proposed Class***

* admitted *pro hac vice*

26

**CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2023, I electronically transmitted a true and correct copy of the foregoing document to the Clerk of Court for filing using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Samantha S. Derksen*
Samantha S. Derksen