## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| IN RE: BROILER CHICKEN GROWER ANTITRUST LITIGATION (NO. II) | MDL No. 6:20-2977-RJS-CMR<br><br>Hon. Chief Judge Robert J. Shelby<br><br>Hon. Cecilia M. Romero |

## PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT PILGRIM'S PRIDE CORP.

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................5

        A.      Procedural Background................................................................................5

        B.      The Settlement Negotiations and Settlement Agreement Terms..............8

        C.      Preliminary Approval and the Proposed Notice and Claims Process.................10

        D.      Class Notice, Objections, and Exclusions................................................11

        E.      The Proposed Allocation and Distribution to the Settlement Class................12

        F.      Plaintiffs' Application for Attorneys' Fees, Litigation Costs, and Service
                Awards .......................................................................................................13

III.    ARGUMENT .......................................................................................................13

        A.      The Proposed Settlement is Fair, Reasonable, and Adequate and Should be
                Finally Approved .......................................................................................13

                1.      Plaintiffs and Settlement Class Counsel Have Skillfully Represented
                        the Settlement Class.......................................................................14

                2.      The Settlement Was Reached After Arm's Length Negotiation ..............15

                3.      The Relief Provided to the Settlement Class is More Than Adequate,
                        it is Substantial..............................................................................16

                        a.      The costs, risks, and delay of trial and appeal favor final
                                approval..............................................................................17

                        b.      The proposed method of distributing relief to the Settlement
                                Class, including the method of processing claims, favors final
                                approval..............................................................................19

                        c.      The proposed award of attorneys' fees favors final approval........20

                4.      The Settlement and Proposed Plan of Distribution Treat Members of
                        the  Settlement Class Equitably ..................................................21

                5.      The Parties Agree that the Settlement Is Fair, Reasonable,
                        and Adequate ..................................................................................22

        B.      Notice to the Settlement Class Comported with Rule 23 and Due Process...........23

IV.     CONCLUSION....................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alvarado Partners, L.P. v. Mehta*,
    723 F. Supp. 540 (D. Colo. 1989)..............................................................................18, 22

*Aragon v. Clear Water Prods. LLC*,
    No. 15-cv-2821, 2018 WL 6620724 (D. Colo. Dec. 18, 2018) ........................................15

*Baker v. Saint-Gobain Performance Plastics Corp.*,
    No. 16-cv-0917, 2022 WL 1025185 (N.D.N.Y. Feb. 4, 2022)........................................16

*Blanco v. Xtreme Drilling & Coil Servs., Inc.*,
    No. 16-cv-0249, 2020 WL 4041456 (D. Colo. July 17, 2020) ........................................15

*Broiler Chicken Antitrust Litig.*,
    No. 16-cv-08637, ECF No. 7316 (N.D Ill.) .......................................................................3

*Castro v. Sanofi Pasteur Inc.*,
    No. 11-cv-7178, 2017 WL 4776626 (D.N.J. Oct. 23, 2017) .............................................3

*Chavez Rodriguez v. Hermes Landscaping, Inc.*,
    No. 17-cv-2142, 2020 WL 3288059 (D. Kan. June 18, 2020) ................ 13, 15, 17, 19, 22

*Chieftain Royalty Co. v. XTO Energy Inc.*,
    No. 11-cv-0029, 2018 WL 501656 (E.D. Okla. Jan. 18, 2018)........................................25

*Childs v. Unified Life Ins. Co.*,
    No. 10-cv-0023, 2011 WL 6016486 (N.D. Okla. Dec. 2, 2011) ......................................18

*Cisneros v. EP Wrap-It Insulation, LLC*,
    No. 19-cv-0500, 2021 WL 2953117 (D.N.M. July 14, 2021) ....................................15, 21

*Cook v. Rockwell Int'l Corp.*,
    No. 90-cv-0181, 2017 WL 5076498 (D. Colo. Apr. 28, 2017) ........................................20

*DeJulius v. New England Health Care Emps. Pension Fund*,
    429 F.3d 935 (10th Cir. 2005) .........................................................................................23

*Fager v. CenturyLink Commc'ns, LLC*,
    854 F.3d 1167 (10th Cir. 2016) .......................................................................................23

*Hale v. State Farm Mut. Auto. Ins. Co.*,
    No. 12-cv-0660, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ..................................19, 20

*Harris v. Chevron U.S.A., Inc.*,
    No. 15-cv-0094, 2019 WL 5846917 (W.D. Okla. July 29, 2019) ................................... 16

*In re Blue Cross Blue Shield Antitrust Litig.*,
    No. 13-cv-20000, 2022 WL 4587618 (N.D. Ala. Aug. 9, 2022) ........................................ 2

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    No. 14-cv-02025, 2015 WL 9266493 (N.D. Cal. Dec. 17, 2015) ..................................... 3

*In re Cattle Antitrust Litig.*,
    No. 19-cv-01222 (D. Minn.) .......................................................................................... 3

*In re Cattle & Beef Antitrust Litig.*,
    No. 22-md-03031 (D. Minn.) ........................................................................................ 3

*In re Citric Acid Antitrust Litig.*,
    145 F. Supp. 2d 1152 (N.D. Cal. 2001) ....................................................................... 22

*In re Corrugated Container Antitrust Litig.*,
    659 F.2d 1322 (5th Cir. 1981) ..................................................................................... 18

*In re Dep't of Energy Stripper Well Exemption Litig.*,
    653 F. Supp. 108 (D. Kan. 1986) ................................................................................. 22

*In re High-Tech Emp. Antitrust Litig.*,
    No. 11-cv-02509, 2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) ..................................... 3

*In re Lithium Ion Batteries Antitrust Litig.*,
    No. 13-md-2420, 2020 WL 7264559 (N.D. Cal. Dec. 10, 2020) ................................... 18

*In re Namenda Direct Purchaser Antitrust Litig.*,
    462 F. Supp. 3d 307 (S.D.N.Y. 2020) ......................................................................... 21

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ................................................................ 2

*In re Prandin Direct Purchaser Antitrust Litig.*,
    No. 10-cv-12141, 2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) ................................... 3

*In re Pork Antitrust Litig.*,
    No. 21-md-2998 (D. Minn.) .......................................................................................... 3

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
    2020 WL 6193857 (E.D.N.Y. Oct. 7, 2020) .................................................................. 2

*See In re Samsung Top-Load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig.*,
    997 F.3d 1077 (10th Cir. 2021) ........................................................................... 13,16, 23

iii

*In re Samsung Top-Load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig.*,
No. 17-md-2792, 2020 WL 2616711 (W.D. Okla. May 22, 2020) ..................... 23, 24, 25

*In re Samsung Top-load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig.*,
No. 17-md-2792, 2019 WL 6118267 (W.D. Okla. Nov. 18, 2019)................................ 25

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
No. 13-md-2445, 2024 WL 815503 (E.D. Pa. Feb. 27, 2024).......................................... 2

*In re Syngenta AG MIR 162 Corn Litig.*,
357 F. Supp. 3d 1094 (D. Kan. 2018) ................................................................................ 20

*In re Turkey Antitrust Litig.*,
No. 19-cv-8318, ECF No. 350 (N.D. Ill.) ............................................................................ 3

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
No. 02-md-1468, 2011 WL 1808038 (D. Kan. May 12, 2011) ....................................... 20

*In re Urethane Antitrust Litig.*,
No. 04-md-1616, 2016 WL 4060156 (D. Kan. July 29, 2016)........................................ 20

*In re Vitamins Antitrust Litig.*,
No. 99-cv-0197, 2000 WL 1737867 (D.D.C. Mar. 31, 2000) ........................................ 21

*Lawrence v. First Fin. Inv. Fund V, LLC*,
No. 19-cv-0174, 2021 WL 3809083 (D. Utah Aug. 26, 2021)........................................ 14

*Lewis v. Wal-Mart Stores, Inc.*,
No. 02-cv-0944, 2006 WL 3505851 (N.D. Okla. Dec. 4, 2006) .................................... 20

*McGaffin v. Argos USA, LLC*,
No. 16-cv-0104, 2020 WL 3491609 (S.D. Ga. June 26, 2020) ...................................... 15

*McNeely v. Nat'l Mobile Health Care, LLC*,
No. 07-cv-0933, 2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) ....................... 15, 18, 22

*Montgomery v. Cont'l Intermodal Grp. Trucking LLC*,
No. 19-cv-0940, 2021 WL 1339305 (D.N.M. Apr. 9, 2021).................................... 14, 15

*Moreno v. Beacon Roofing Supply, Inc.*,
No. 19-cv-0185, 2020 WL 3960481 (S.D. Cal. July 13, 2020)...................................... 19

*Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*,
No. 17-cv-0304, 2021 WL 1387110 (D. Colo. Apr. 13, 2021) ...................................... 23

*Perks v. Activehours, Inc.*,
No. 19-cv-5543, 2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) .................................... 21

iv

*Pilgrim's Pride v. Haff Poultry, Inc.*,
  No. 24-00602 (10th Cir. May 24, 2024) ............................................... 4

*Retta v. Millennium Prods., Inc.*,
  No. 15-cv-1801, 2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) ...................................... 18

*Shaw v. Interthinx, Inc.*,
  No. 13-cv-1229, 2015 WL 1867861 (D. Colo. Apr. 22, 2015) ...................................... 20

*Stanley v. Panorama Orthopedics & Spine Ctr., P.C.*,
  No. 22-cv-01176, 2024 WL 4546178 (D. Colo. Oct. 7, 2024) .................................. 22-23

*Stewart v. USA Tank Sales & Erection Co.*,
  No. 12-cv-5136, 2014 WL 836212 (W.D. Mo. Mar. 4, 2014) ...................................... 16

*Suaverdez v. Circle K Stores, Inc.*,
  No. 20-cv-01035, 2021 WL 4947238 (D. Colo. June 28, 2021) ...................................... 14

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) ................................................................ 21-22

*Tawfilis v. Allergan, Inc.*,
  No. 15-cv-00307, 2018 WL 4849716 (C.D. Cal. Aug. 27, 2018) ...................................... 3

*Tennille v. Western Union Co.*,
  785 F.3d 422 (10th Cir. 2015) ............................................................ 23, 24, 25

*Vargas v. Ford Motor Co.*,
  No. 12-cv-8388, 2020 WL 1164066 (C.D. Cal. Mar. 5, 2020)................................. 19, 20

*Voulgaris v. Array Biopharma Inc.*,
  No. 17-cv-2789, 2021 WL 6331178 (D. Colo. Dec. 3, 2021) ......................................... 16

*Wilkerson v. Martin Marietta Corp.*,
  171 F.R.D. 273 (D. Colo. 1997) ................................................................ 18

**Statutes**

29 U.S.C. § 216(b) .......................................................................... 4

**Rules**

Federal Rule of Civil Procedure 23 .............................................................. *passim*

Federal Rule of Civil Procedure 30 .............................................................. 7

**Other Authorities**

William B. Rubinstein, 4 *Newberg on Class Actions* (5th ed.)........................... 14, 18, 19

v

## I.    INTRODUCTION

Plaintiffs,[1] on their own behalf and on behalf of the certified settlement class ("Settlement Class") for the settlement with Pilgrim's[2] (the "Settlement" or the "Settlement Agreement"), respectfully submit this motion and supporting memorandum for: (1) final approval of the Settlement under Federal Rule of Civil Procedure 23(e)(2);[3] (2) final approval of the proposed *pro rata* plan of distribution to members of the Settlement Class; and (3) a finding that the class notice program, as implemented, constituted the best notice practicable under the circumstances, comported with Federal Rule of Civil Procedure 23(c)(2) and due process, and was effectuated in accordance with the Court-approved notice plan.

The Pilgrim's Settlement is the fifth and final settlement in this case.[4] It is also, by far, the largest. Plaintiffs achieved this result through a series of hard-fought negotiations with the

---

[1] The Court appointed Haff Poultry, Inc., Nancy Butler, Johnny Upchurch, Jonathan Walters, Myles Weaver, Marc McEntire, Karen McEntire, and Mitchell Mason as class representatives for the Settlement Class. ECF No. 617, ¶ 10 & n.1. Unless otherwise specified, all docket citations are to the MDL docket: No. 6:20-md-2977 (E.D. Okla.). The Settlement Class differs from the certified litigation class in only one respect; like in the prior settlements in this case, the Settlement Class includes Growers for Claxton that were not included in the certified litigation class. Plaintiffs excluded these Claxton Growers from the litigation class because Claxton did not preserve structured Grower pay data.

[2] "Pilgrim's" means Defendant Pilgrim's Pride Corporation. "Defendants" refers to (i) "Koch" (Koch Foods, Inc. and Koch Meat Co., Inc.), (ii) "Tyson" (Tyson Foods, Inc., Tyson Chicken, Inc., Tyson Breeders, Inc., and Tyson Poultry, Inc.), (iii) "Perdue" (Perdue Farms, Inc. and Perdue Foods, LLC), (iv) "Sanderson" (Sanderson Farms, Inc., Sanderson Farms, Inc. (Food Division), Sanderson Farms, Inc. (Processing Division), and Sanderson Farms, Inc. (Production Division)), and (v) Pilgrim's.

[3] The Settlement Agreement was filed as an exhibit to Plaintiffs' motions for preliminary approval of the Settlement. ECF No. 435-1 (Exhibit A).

[4] Plaintiffs previously executed settlement agreements with Tyson, Perdue, Koch, and Sanderson on June 30, 2021, August 11, 2021, May 20, 2022, and February 28, 2023, respectively. Declaration of Melinda R. Coolidge In Support of Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards to Class Representatives, ECF No. 628-1, ¶¶ 108-140 (November 11, 2024) (the "Coolidge Decl."). Tyson agreed to pay $21 million, Perdue agreed to pay $14.75 million, Koch agreed to pay $15.5 million, and Sanderson agreed to pay $17.75 million. *Id.* ¶¶ 110, 122, 132. All four also provided cooperation in this litigation pursuant to their settlement agreements. *Id.* ¶¶ 111, 123, 133. The Court granted preliminary approval for the Tyson and Perdue settlements on August 23, 2021, ECF Nos. 144-45, and approved the form and manner of notice on that same day, ECF No. 146. Coolidge Decl. ¶¶ 114-15. The Tyson and Perdue notice process commenced on September 22, 2021. *Id.* ¶ 117. Both settlements were finally approved on February 18, 2022, ECF No. 285, and that same day

assistance of renowned mediator, Professor Eric D. Green. *See* Coolidge Decl. ¶ 141. Under the Settlement, Pilgrim's has paid $100 million in cash into a common settlement fund for the benefit of the Settlement Class and Pilgrim's has agreed not to include or enforce provisions in its contracts with members of the Settlement Class that would either mandate arbitration or bar initiation or participation in a class action for five years. *Id.* ¶ 142. If this Settlement is finally approved, this case will come to an end.

The monetary component of the Settlement is entirely in cash with no reversionary interest for Pilgrim's. The Settlement brings the aggregate recoveries from all five Defendants in this action to $169 million.[5] This aggregate recovery represents no less than 18.3% to 22.2% of single damages as calculated by Plaintiffs' expert Hal J. Singer, Ph.D. (depending on the model used).[6] This aggregate result is superior from multiple perspectives—in absolute terms and as a share of available damages—to recoveries in analogous antitrust cases, and especially relative to antitrust class action settlements on behalf of protein farmers.[7] Standing on its own, the recovery

---

the Court also granted Plaintiffs' motion for an award of attorneys' fees, the reimbursement of litigation expenses, and an award of interim service awards to the class representatives, ECF No. 284. Coolidge Decl. ¶¶ 118-19. The Court granted preliminary approval for the Koch settlement on June 10, 2022, ECF No. 366, and approved the form and manner of notice on that same day, ECF No. 367. Coolidge Decl. ¶¶ 125-26. The Koch notice process commenced on July 11, 2022. *Id.* ¶ 128. The settlement was finally approved on October 28, 2022, ECF No. 420, and that same day the Court also granted Plaintiffs' motion for an award of attorneys' fees and reimbursement of litigation expenses, ECF No. 419. Coolidge Decl. ¶¶ 129-30. The Court granted preliminary approval for the Sanderson settlement on April 17, 2023, ECF No. 482, and approved the form and manner of notice on that same day, ECF No. 483. Coolidge Decl. ¶¶ 135-36. The Sanderson notice process commenced on May 17, 2023. *Id.* ¶ 138. The settlement was finally approved on November 1, 2023, ECF No. 56, and the next day (Nov. 2) the Court also granted Plaintiffs' motion for an award of attorneys' fees and reimbursement of litigation expenses, ECF No. 566. Coolidge Decl. ¶¶ 139-40.

[5] *See* n.4 *supra* describing the prior settlements with each of the other Defendants.

[6] *See* ECF No. 454 (Plaintiffs' classwide evidence indicates that the class suffered aggregate damages of $761.22 to $924.24 million).

[7] *See*, *e.g.*, *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-md-2445, 2024 WL 815503, at *2, *9 (E.D. Pa. Feb. 27, 2024) (12% to 14% of single damages); *In re Blue Cross Blue Shield Antitrust Litig.*, No. 13-cv-20000, 2022 WL 4587618, at *2, *20 (N.D. Ala. Aug. 9, 2022) (7.3% to 14.3% of the estimated damage ranging from $18.6 billion to $36.1 billion); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 2020 WL 6193857, at *1 (E.D.N.Y. Oct. 7, 2020) (5-20% of range of estimated damages); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2019 WL 6875472, at *28 (E.D.N.Y. Dec. 16, 2019) (court approved an antitrust class action settlement representing less than 1.4% of the

from Pilgrim's represents the second largest settlement amount paid by a single defendant in any of the dozens of antitrust cases in the protein industry on behalf of farmers *or* buyers.[8] Both the recovery from Pilgrim's and the aggregate recoveries from all Defendants in this case represent the largest sum recovered for a class of Growers in any litigation—ever (whether by settlement or jury verdict).[9]

As Plaintiffs explained at preliminary approval, when compared with the four prior settlements in this case, this Settlement is by far the largest not just in absolute terms but also in relationship to the relative market share of the settling Defendant.[10] The Settlement is almost five

---

low end of estimated damages); *In re Dental Supplies Antitrust Litig.*, No. 16-cv-0696, ECF No. 341 (E.D.N.Y. June 24, 2019) (2.5-21% of estimated single damages); *Tawfilis v. Allergan, Inc.*, No. 15-cv-00307, 2018 WL 4849716, at *1, *4 (C.D. Cal. Aug. 27, 2018) (approved settlement represented approximately 8.36% of single damages); *Castro v. Sanofi Pasteur Inc.*, No. 11-cv-7178, 2017 WL 4776626, at *1-2, *6 (D.N.J. Oct. 23, 2017) (approximately 14% of single damages); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-cv-02025, 2015 WL 9266493, at *5 (N.D. Cal. Dec. 17, 2015) (following summary judgment briefing, court approved $9.75 million antitrust class action settlement where settlement represented 0.49% of maximum possible recovery); *In re High-Tech Emp. Antitrust Litig.*, No. 11-cv-02509, 2015 WL 5159441, at *2-*4 (N.D. Cal. Sept. 2, 2015) (14% of single damages); *In re Prandin Direct Purchaser Antitrust Litig.*, No. 10-cv-12141, 2015 WL 1396473, at *1-*3 (E.D. Mich. Jan. 20, 2015) (approximately 12% of single damages).

[8] *See generally In re Cattle Antitrust Litig.*, No. 19-cv-01222 (D. Minn.); *In re Cattle & Beef Antitrust Litig.*, No. 22-md-03031 (D. Minn.) ($52.5 million settlement with one defendant); *In re Turkey Antitrust Litig.*, No. 19-cv-8318, ECF No. 350 (N.D. Ill.) ($4.65 million settlement with Tyson); *In re Pork Antitrust Litig.*, No. 21-md-2998 (D. Minn.) (settlements with four defendants ranging from $4.865 million to $83 million) (*see* Court Documents, https://porkantitrustlitigation.com/Home/CourtDocs (last visited Dec. 10, 2024)); *Broiler Chicken Antitrust Litig.*, No. 16-cv-08637, ECF No. 7316 (N.D. Ill.) (listing thirteen settlements ranging from $2.25 million to $79.34 million); *Brown et al. v. JBS Food Company et al.*, No. 22-cv-02946, ECF No. 369 (D. Colo.) (listing nine settlements ranging from $1.25 million to $72.5 million, including one for cooperation only); *Jien et al. v. Perdue Farms, Inc. et al.*, No. 19-cv-02521, ECF No. 905-1 (D. Md.) (listing eleven settlements ranging from $3 million to $60.65 million, including one for cooperation only).

[9] *See generally Been v. OK Industries Inc*, No. 02-cv-00285 (E.D. Okla. May 29, 2002) ($21 million judgment plus approximately $15.5 million post-judgment interest, totaling $36.5 million); *United States v. Cargill Meat Solutions Corp.*, No. 22-cv-01821, ECF No. 83, 85 (D. Md.) ($90.6 million settlement with four defendants).

[10] *Compare* n.4 (setting out the previous settlement amounts) *with* Expert Report of Hal J. Singer, Ph.D., at 40, Ex. 1 (August 19, 2022), Table 7 (2013-2019 market share by Broiler production) (ECF No. 454). To illustrate, the following shows the ratio of the Pilgrim's settlement amount to each of the other four settling Defendants followed by the ratio of Pilgrim's

times larger than the settlement with Tyson ($21 million) even though Tyson has a significantly larger market share than Pilgrim's. As another example, while Pilgrim's market share is twice the size of Sanderson's, the Settlement amount here is more than five and half times the Sanderson settlement ($100 million vs. $17.75 million). Further, Plaintiffs achieved this extraordinary Settlement in the context of Pilgrim's financial difficulties. Pilgrim's has indicated that it "lacks the financial resources to pay" a jury verdict in line with the damages sought by Plaintiffs.[11] Such a jury verdict would likely have resulted in Pilgrim's declaring bankruptcy and would have presented a severe risk of non-payment.

In addition to the monetary recovery, the Settlement requires that Pilgrim's will not include or enforce provisions in its contracts with members of the Settlement Class that would either mandate arbitration or bar initiation or participation in a class action for five years. This relief is valuable to Growers because it permits them to participate in class or collective actions that might otherwise be barred by the arbitration or class waiver terms in the contracts. As one example, the District Court of Maryland recently granted conditional certification of a class of Growers, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), alleging that Perdue (a defendant here whose settlement of Plaintiffs' claims similarly included an agreement not to include or enforce arbitration clauses or class action bans) improperly misclassified its Growers as independent contractors rather than employees as part of an alleged practice to avoid paying Growers the federal minimum wage. *See Tripp v. Perdue Foods, LLC*, No. 24-cv-0987, ECF No. 34, at 1, 15 (November 13, 2024).

---

market share to the market share of the other Defendants, which illustrates the overall favorable aspect of the Pilgrim's Settlement:

- Pilgrim's to Tyson settlement ratio is $100 million:$21 million (or 4.8:1) as compared to a market share ratio of 17.5 percent:21.3 percent (or 0.8:1).
- Pilgrim's to Sanderson settlement ratio is $100 million:$17.75 million (or 5.6:1) as compared to a market share ratio of 17.5 percent:8.7 percent (or 2:1).
- Pilgrim's to Perdue settlement ratio is $100 million:$14.75 million (or 6.8:1) as compared to a market share ratio of 17.5 percent:7.2 percent (or 2.4:1).
- Pilgrim's to Koch settlement ratio is $100 million:$15.5 million (or 6.5:1) as compared to a market share ratio of 17.5 percent:6.0 percent (or 2.9:1).

[11] Pilgrim's Petition for Leave to Appeal Pursuant to FRCP 23(f), at 7, *Pilgrim's Pride v. Haff Poultry, Inc.*, No. 24-00602 (10th Cir. May 24, 2024) (*citing* Pilgrim's Form 10-Q for the Quarterly Period Ended Mar. 31, 2024, https://ir.pilgrims.com/static-files/e7e3839c-f1e3-4e5b-b05f-15bd3161c30c, showing that "as of March 31, 2024," Pilgrim's "net income in the preceding quarter was approximately $174 million").

In sum, the Settlement is an excellent result for the Settlement Class and merits final approval. Consistent with this Court's findings at the preliminarily approval stage, and as set forth in the Class Counsel's declarations previously filed in connection with the Settlement,[12] the Settlement is fair, reasonable, and adequate under the criteria of Rule 23(e)(2) and the law of this Circuit. Plaintiffs respectfully request that the Settlement be finally approved.

## II.    BACKGROUND

### A.    Procedural Background

A subset of the Plaintiffs filed the original action in this Court on January 27, 2017. Coolidge Decl. ¶ 7. The Judicial Panel on Multidistrict Litigation ("JPML") subsequently centralized all of the related actions in this Court. *See id.* ¶¶ 49-60.  Plaintiffs then filed their Consolidated Amended Class Action Complaint, which alleged that Defendants and seventeen Co-Conspirators[13]—the largest vertically integrated Broiler[14] processors ("Integrators") among them—conspired to suppress compensation paid to Broiler farmers ("Growers") in violation of Section 1 of the Sherman Act and Section 202 of the Packers and Stockyards Act. *See*, *e.g.*, *id.* ¶¶ 8-12; *see also* Consol. Class Action Compl. ("CCAC") ¶¶ 166-179 (ECF No. 59).

This action has been pending for nearly eight years. Over the life of this case, Plaintiffs have zealously prosecuted their claims while Defendants have aggressively contested them at every stage. *See*, *e.g.*, Coolidge Decl. ¶¶ 13-30, 36-60, 86-89, 96-106, 149. Plaintiffs responded to numerous motions to dismiss for failure to state a claim, to compel arbitration, for improper venue, for lack of personal jurisdiction, and to dismiss under the "first to file" doctrine. *Id.* ¶¶ 14-

---

[12] These are (a) the Declaration of Gary I. Smith, Jr. in Support of Plaintiffs' Motion for Preliminary Approval of Settlement with Pilgrim's and for Certification of the Settlement Class (ECF No. 614-1) ("Smith Decl."), and (b) the Coolidge Decl.

[13] "Co-Conspirator" means the alleged co-conspirators identified in the CCAC: Agri Stats, Inc., Foster Farms, Mountaire Farms, Wayne Farms, George's, Inc., Peco Foods, Inc., House of Raeford Farms, Simmons Foods, Keystone Foods, Inc., Fieldale Farms Corp., O.K. Industries, Case Foods, Marshall Durbin Companies, Amick Farms, Inc., Mar-Jac Poultry, Inc., Harrison Poultry, Inc., Claxton Poultry Farms, and Norman W. Fries, Inc., including each of their past, present, and future, direct and indirect, corporate parents (including holding companies), owners, subsidiaries, related entities, Affiliates, divisions, and/or departments, joint ventures, predecessors, and/or successors. *See* Settlement Agreement § 1(e).

[14] "Broilers" excludes specialty chicken that is grown, processed, and sold according to halal, kosher, free range, pasture-raised, or organic standards. Specialty chicken does not include chicken raised without antibiotics, such as No Antibiotics Ever ("NAE") or Antibiotic Free ("ABF") standards. "Broilers" as used herein includes NAE and ABF chicken. *See* Settlement Agreement § 1(d).

17, 39-46. In order to prosecute their claims efficiently and effectively, Plaintiffs also fought for transfer to this Court by the JPML, eventually succeeding in obtaining the centralization of five related actions in this District. *Id.* ¶¶ 49-60. Plaintiffs also successfully opposed Pilgrim's efforts to enjoin Plaintiffs' damages claims against it as a result of Pilgrim's purported bankruptcy discharge. *Id.* ¶¶ 31-35. To further effective case management and to facilitate discovery, Plaintiffs negotiated case management orders and stipulations covering the production of hard copy and electronic discovery, confidentiality designations, and the boundaries of expert disclosure and discovery, including renegotiating those same issues once centralization was obtained following Plaintiffs' second trip to the JPML. *Id.* ¶¶ 61-65, 79.

Since fact discovery opened in April 2020, Plaintiffs have pursued extensive discovery in this Action from Defendants and multiple third parties,[15] including, but not limited to, the following:

- Serving requests for production of documents on all Defendants and more than 50 subpoenas on third-parties;
- Negotiating the scope of document productions with Defendants and third-parties, which included protracted negotiations over appropriate initial (and supplemental) document custodians and electronic search methodologies, and complicated remote collections and productions in the midst of the COVID-19 pandemic with five Defendants and over fifteen alleged co-conspirators and other third-party subpoena recipients;
- Propounding several rounds of interrogatories and requests for admissions on Defendants, and negotiating the sufficiency of the responses;
- Responding to several rounds of interrogatories and requests for admissions served on Plaintiffs, and negotiating the sufficiency of the responses;
- Reviewing the more than 2 million documents produced by Defendants and third-parties, consisting of tens of millions of pages and structured transaction data for more than 650,000 Broiler flocks;

---

[15] The term "Action" includes the member cases *Haff Poultry, Inc., et al. v. Tyson Foods, Inc., et al.,* No. 6:17-cv-33 (E.D. Okla.); *In re Sanderson & Koch Broiler Chicken Grower Litig.*, No. 7:18-cv-31 (E.D.N.C.); *McEntire v. Tyson Foods, Inc., et al.*, No. 1:20-cv-2764 (D. Colo.); *Colvin v. Tyson Foods, Inc., et al.*, No. 2:20-cv-2464 (D. Kan.); and *Mason v. Tyson Foods, Inc., et al.*, No. 5:20-cv-07049 (N.D. Cal.).

6

- Reviewing, and challenging where appropriate, Defendants' privilege logs;
- Seeking production of materials from *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-8637 (N.D. Ill.);
- Taking 73 depositions under Federal Rules of Civil Procedure 30(b)(1) and 30(b)(6) and defending eight class representative depositions;
- Participating in emergency conferences before Magistrate Judge Romero concerning scheduled depositions and the invocation of the Fifth Amendment by Pilgrim's William Lovette and Timothy Stiller; and
- Producing more than 10,000 pages of documents in response to Defendants' requests for production, which required complicated remote collection amid the COVID-19 pandemic.

Coolidge Decl. ¶¶ 66-78, 80-81, 83, 86-87, 149. To secure the affirmative discovery, Plaintiffs undertook extensive negotiations with Defendants and non-parties to obtain the requisite materials. Plaintiff sought to avoid bringing disputes to the Court where possible, but also engaged in motion practice, where necessary, regarding non-party depositions, privilege logs, and third-party productions. *Id.* ¶¶ 69, 82-91, 149.

Plaintiffs have also marshalled the evidence to assist the class certification and merits analyses of their economic expert, Dr. Singer. *Id.* ¶¶ 92-93, 95. Leading up to the submission of his opening report on August 19, 2022, Plaintiffs' counsel worked extensively with Dr. Singer. When Defendants served their three opposing expert reports on November 19, 2022, Plaintiffs studied these submissions. *Id.* ¶¶ 92-95. After taking the depositions of Defendants' three experts, Plaintiffs continued to work with Dr. Singer on his rebuttal report, which was submitted on January 23, 2023. Plaintiffs defended Dr. Singer's deposition on February 24, 2023. *Id.* ¶¶ 94-95, 99.

Following the conclusion of expert discovery, on March 17, 2023, the parties submitted *Daubert* motions and Co-Lead Counsel filed Plaintiffs' motion for class certification. *Id.* ¶¶ 96, 98. The parties filed their respective opposing papers on April 28, 2023, and reply papers in support of their *Daubert* motions and class certification were filed on June 2 and 9, 2023, respectively. *Id.* ¶¶ 97-98. The Court held a two-day hearing on these motions on July 13-14, 2023. *Id.* ¶ 100.

On May 8, 2024, the Court (a) granted Plaintiffs' motion for class certification and (b)

denied Pilgrim's motion to exclude the vast bulk of the opinions proffered by Plaintiffs' expert witness, Dr. Hal J. Singer. ECF No. 574. On May 15, 2024, the Court granted in part Plaintiffs' motion to exclude certain opinions offered by one of Pilgrim's proffered experts, Dr. John B. Carey. ECF No. 575. Plaintiffs then defended the Court's class certification opinion in opposing Pilgrim's petition for appeal under Fed. R. Civ. P. 23(f). Coolidge Decl. ¶ 105. Plaintiffs successfully opposed Pilgrim's efforts to stay proceedings pending resolution of that appeal. *Id.* Further, the parties submitted contested briefing over the structure and timing of trial in this Action, resulting in a trial schedule set to commence in February 2025. *Id.* ¶ 107. On June 13, 2024, Plaintiffs filed their motion for partial summary judgment (ECF Nos. 600-01). *Id.* ¶ 106. Finally, before reaching the Settlement in principle with Pilgrim's, Plaintiffs prepared briefing in response to Pilgrim's summary judgment motion and its motion to enforce class waivers. *Id.* ¶ 106.

### B.    The Settlement Negotiations and Settlement Agreement Terms

Plaintiffs negotiated the Settlement directly with the skilled, experienced counsel for Pilgrim's, and in significant part under the auspices of renowned mediator Professor Eric Green. *See* Coolidge Decl. ¶ 141. The negotiations first began in earnest in the Fall of 2021, kicking off with a day-long mediation on November 12, 2021, and followed up with multiple mediated and unmediated discussions with Pilgrim's counsel. Discussions broke off at the end of 2023, but picked up again after the Court certified the class and denied in substantial part Pilgrim's *Daubert* motion as to Dr. Singer. On June 19, 2024, the parties conducted another day-long mediation session with Prof. Green, ultimately resulting in a Settlement in principle based on the parties accepting the mediator's proposal. *Id.* The Settlement culminated in a long form settlement agreement executed on August 6, 2024. Smith Decl. ¶ 22.

The Settlement Agreement defined the Settlement Class as follows:

> All individuals and entities in the United States and its territories that were compensated for Broiler Grow-Out Services[16] by a Defendant or Co-Conspirator, or by a division, subsidiary, predecessor, or Affiliate of a Defendant or Co-Conspirator, at any time during the period January 27, 2013 through December 31, 2019.

Settlement Agreement § 1(f).

---

[16] "Broiler Grow-Out Services" means Broiler chicken growing services. Settlement Agreement § 1(c).

This is the same class definition that applied to the Tyson, Perdue, Koch, and Sanderson settlements.[17]

Specifically, Pilgrim's agreed to pay $100 million, which funds Pilgrim's deposited into an interest-bearing escrow account on October 28, 2024. *See* Settlement Agreement §§ 1.w, 8. No portion of the Settlement Fund reverts to Pilgrim's following final approval because, as discussed herein, the cash value of the settlement (net of Court-awarded fees, costs, and claims administration costs) will be distributed to the Settlement Class *pro rata*. *See* Smith Decl. ¶¶ 22-23.

In addition to cash payments, under the Settlement Agreement, Pilgrim's has agreed, for a five-year period following final judgment, that Pilgrim's will not: (a) require that any member of the Settlement Class arbitrate any claims against Pilgrim's or against any alleged co-conspirator or co-defendant, (b) add a provision to any agreements with any Settlement Class member requiring that any claims against Pilgrim's be arbitrated, (c) argue that any Settlement Class member is required to arbitrate claims against Pilgrim's or against any alleged co-conspirator or co-defendant based on principles of estoppel, and (d) enforce any provisions in any agreements with one or more Settlement Class members purporting to ban collective or class actions against Pilgrim's. Settlement Agreement § 9. This provision excludes any arbitration pending between Pilgrim's and any Settlement Class members as of July 10, 2024. *Id.*

In consideration of the cash payment and non-monetary consideration, members of the Settlement Class agreed to release claims against Pilgrim's arising from the factual predicates of the Action. *See id.* § 13. The release covers only claims against Pilgrim's Released Parties (as defined in the Agreement).[18] *See id.*

Under the Court approved notice plan, the deadline for Settlement Class members to submit objections or requests to opt out of the Settlement was December 3, 2024. *See* ECF No. 618; Coolidge Decl. ¶ 147. As of December 12, 2024, Co-Lead Counsel have received ten requests for exclusion from the Settlement (out of a class of approximately 30,000), and only one objection, which is to Class Counsel's request for fees only and not to the Settlement (*see*

---

[17] *See* n.1 *supra* (explaining that the Settlement Class includes Growers for Claxton who were not included in the certified litigation class because Claxton did not preserve structured Grower pay data).

[18] The Released Parties are identified in paragraph 1(q) of the Settlement Agreement.

Section III.A.5 *infra*). *See* Section II.D *infra* (discussing the *de minimis* number of opt outs); *see also* Coolidge Decl. ¶ 147.

###### C.    Preliminary Approval and the Proposed Notice and Claims Process

On August 16, 2024, Plaintiffs filed a motion for preliminary approval of the Settlement as well as a motion for approval of the form and manner of notice of the Settlement to the Settlement Class. ECF Nos. 614-15. On August 20, 2024, the Court preliminarily approved the Settlement; certified the Settlement Class under Federal Rule of Civil Procedure 23(b)(3); appointed Hausfeld LLP and Berger Montague PC as Settlement Class Counsel; appointed Angeion Group, LLC ("Angeion") as the claims administrator; appointed Plaintiffs as representatives of the Settlement Class; and approved the notice plan, the form of notice, and the proposed claim forms. ECF Nos. 617 (preliminarily approving the Settlement), 618 (approving the notice plan (the "Notice Order")), 621 (revising the notice schedule). The Court found the notice plan represented the "best notice that is practicable under the circumstances," was "reasonably calculated to reach the members of the Settlement Class," and met "the requirements of Federal Rule of Civil Procedure 23 and due process." Notice Order ¶ 3.

The results of the notice program are discussed in more detail at Sections II.D and III.B, *infra*. Generally, the notice program that the Court approved (ECF No. 618) included direct mail notice to Growers for which Defendants and alleged Co-Conspirators provided mailing addresses. *See* ECF No. 615, at 6-7 (describing the notice plan in detail). This direct notice was supplemented by publication notice, including publication in a trade periodical as well as in select print and media outlets that reached geographic areas in which certain alleged Co-Conspirators (that did not produce Grower addresses or pay data) contracted with Growers for Broiler Grow-Out Services. *Id.* at 7-10. Under the Court-approved notice plan, the Court-appointed Claims Administrator (Angeion) supplemented this direct mail and publication notice with an array of additional online services, including targeted internet advertising, a social media campaign, and a settlement website. *Id.* 7-10; ECF No. 615-1, ¶¶ 15, 22-28 (Decl. of Steven Weisbrot on Proposed Notice Plan ("Weisbrot Notice Decl.")).

Additionally, under the notice plan, Plaintiffs included two claim forms in the direct mail notice and made them available to the members of the Settlement Class via the settlement

website or upon request to Angeion: a pre-populated claim form and an unpopulated claim form. ECF No. 615, at 11-12.[19]

### D.    Class Notice, Objections, and Exclusions

Following approval of the notice plan, Angeion provided potential members of the Settlement Class with the Court-approved notice in accord with the settlement notice program. *See generally* Declaration of Steven Weisbrot Regarding Implementation of Notice Plan ("Weisbrot Implementation Decl."), attached hereto. Beginning on September 19, 2024, Angeion successfully mailed direct notice to 23,978 members of the Settlement Class.[20] Weisbrot Implementation Decl. ¶¶ 5-10 & Exs. A-C.[21]

On the same day, Angeion launched the programmatic internet advertising banner program, which uses algorithms to identify websites most likely to be visited by members of the Settlement Class, as well as the Facebook and Instagram social media campaign, achieving a total of over 3.94 million impressions with banner ads. *Id.* ¶¶ 11-13 & Exs. D & E. Also beginning on September 19, 2024, Angeion placed publication notice in eight local print publications to reach Growers who were less likely to be mailed direct notice. *Id.* ¶ 14 & Ex. F. Notice was also published in the national trade publication *Poultry Times*, whose readership of 13,000 includes many Growers. *Id.* ¶ 15 & Ex. G. Angeion issued a press release publicizing the Settlement that was distributed over the National and Agriculture circuits of a major newswire

---

[19] Members of the Settlement Class for which Plaintiffs received sufficient data from Defendants and alleged Co-Conspirators reflecting Grower compensation over the class period received a claim form that was pre-populated with the payments members of the Settlement Class received for Broiler Grow-Out Services, obviating the need for those members of the Settlement Class to complete a claim form. *See* Smith Decl. ¶ 25; Weisbrot Notice Decl. Ex. D (proposed pre-populated claim form). These members of the Settlement Class are nonetheless permitted to contest the information that was pre-populated by submitting corrected information and documentation. *See* Weisbrot Notice Decl. Ex. D at 1. Members of the Settlement Class for which Plaintiffs lacked sufficient data on compensation paid by Defendants and alleged Co-Conspirators received an unpopulated claim form, which they have the option of returning with documentation reflecting their total compensation for Broiler Grow-Out Services or, alternatively, if they lack that documentation, with information from which their total compensation could be estimated. *See* Smith Decl. ¶ 23; Weisbrot Notice Decl. ¶ 17 & Ex. E.
[20] Angeion initially mailed direct notice to 23,978 addresses. Weisbrot Implementation Decl. ¶ 7. 1,434 of those were returned undeliverable. *Id.* ¶ 8. Following address verification searches for those addresses (skip tracing), Angeion remailed direct notice to 340 addresses. *Id.* The net successfully mailed notice packets is thus 22,884. *Id.* ¶ 9.
[21] The final direct notice and claim forms provided to potential class members are attached as Exhibits A-C to the Weisbrot Implementation Declaration.

service to drive traffic to the settlement website (https://broilergrowersantitrustsettlement.com/
pilgrim-settlement/). *Id.* ¶ 16 & Ex. H.

Angeion timely launched the settlement website to provide potential members of the
Settlement Class with information about the Settlement, which included a downloadable direct
notice and an unpopulated claim form, the Settlement Agreement, court filings related to the
Settlement (including Plaintiffs' application for attorneys' fees and costs and interim service
awards), a "Frequently Asked Questions" section, a contact page allowing users to submit
questions to Angeion, and a means to upload completed claim forms. *Id.* ¶ 17. Angeion also
established a dedicated toll-free line, allowing callers to speak with a live operator during
business hours, request a claim form, and get answers to their questions. *Id.* ¶ 19. As of
December 12, 2024, there were 4,772 unique visitors to the website and 1,005 calls were made to
the dedicated toll-free line, totaling more than 6,811 minutes (or over 113 hours of call time). *Id.*
¶¶ 18, 20.

The deadline for mailing objections to the Settlement or requests for exclusion from the
Settlement Class was December 3, 2024. *See* Notice Order ¶ 5. As of December 12, 2024, ten
(10) Growers timely requested exclusion from the Settlement and one objection concerning only
Co-Lead Counsel's motion for attorneys' fees. Weisbrot Implementation Decl. ¶¶ 22-23 & Ex. I.

E.    **The Proposed Allocation and Distribution to the Settlement Class**

Under the notice plan, Angeion sent members of the Settlement Class for whom Plaintiffs
possessed adequate compensation data pre-populated claim forms. These forms notified such
Class members that if they did not exclude themselves from the Settlement or contest the data in
the pre-populated form they would be deemed to have accepted the pre-populated calculations.
*See* Weisbrot Implementation Decl., Ex. B at 1-3. Such Class members would have their
settlement awards calculated based on the compensation in the pre-populated claim form.
Angeion estimates that 99 percent of the Settlement Class is eligible to receive payment from the
Settlement even if they do nothing. Smith Decl. ¶ 22. Growers who received an unpopulated
claim form (or obtained an unpopulated claim form from Angeion or the settlement website)
have until April 17, 2025 to return the form with completed compensation data or other
information from which their Settlement award will be calculated. As of December 12, 2024,
Angeion has received 2,151Claim Form submissions or updated address submissions. Weisbrot
Implementation Decl. ¶ 21.

F.     **Plaintiffs' Application for Attorneys' Fees, Litigation Costs, and Service Awards**

The Court-approved notice informed members of the Settlement Class that Settlement Class Counsel would seek an award of attorneys' fees, capped at one-third of the gross settlement fund, reimbursement of litigation costs of up to $2 million, and service awards of up to $100,000 per class representative. *See* Weisbrot Implementation Decl. Ex. A ¶ 15. On November 4, 2024, Plaintiffs filed their motion for fees and costs. ECF No. 628. The petition sought an award of attorneys' fees of one-third of the gross settlement fund plus accrued interest (or $33,333,333 million plus one-third of any accrued interest), reimbursement of $402,434.23 in litigation costs, and service awards of $100,000 to each of the seven Class Representatives. *Id.* at 3, 24. Angeion immediately posted the motion papers on the settlement website. *See* Weisbrot Implementation Decl. ¶ 17.

III.     **ARGUMENT**

A.     **The Proposed Settlement is Fair, Reasonable, and Adequate and Should be Finally Approved**

The Settlement should be approved. Rule 23(e) requires that before finally approving a class action settlement, a court must find that the settlement is fair, reasonable, and adequate considering whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2). These considerations augment rather than supplant the traditional factors courts have considered at final approval. *Chavez Rodriguez v. Hermes Landscaping, Inc*., No. 17-cv-2142, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020). In this Circuit, those traditional factors are whether: (1) the proposed settlement was fairly and honestly negotiated; (2) serious questions of law and fact place the ultimate outcome of the litigation in doubt; (3) the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the parties judge the settlement to be fair and reasonable. *See In re Samsung Top-Load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig*., 997 F.3d 1077, 1087 (10th Cir. 2021). With the exception of the fourth traditional factor, this Circuit's factors overlap with the considerations under Rule 23(e)(2). *Rodriguez*, 2020 WL 3288059, at *2. The Settlement warrants final approval under all of these factors.

13

1.    **Plaintiffs and Settlement Class Counsel Have Skillfully Represented the Settlement Class.**

In certifying the Settlement Class, the Court previously found Settlement Class Counsel and Plaintiffs adequate under Rule 23(a), ECF No. 617, which is sufficient to satisfy Rule 23(e)(2)(A). *See Suaverdez v. Circle K Stores, Inc.*, No. 20-cv-01035, 2021 WL 4947238, at *7 (D. Colo. June 28, 2021); *Lawrence v. First Fin. Inv. Fund V, LLC*, No. 19-cv-0174, 2021 WL 3809083, at *6 (D. Utah Aug. 26, 2021) (Shelby, J.). Under Rule 23(e)(2)(A), courts may also evaluate "the actual performance of counsel acting on behalf of the class," including the extent of discovery taken. *Montgomery v. Cont'l Intermodal Grp. Trucking LLC*, No. 19-cv-0940, 2021 WL 1339305, at *4 (D.N.M. Apr. 9, 2021) (citations and quotation omitted). The extent of discovery informs whether the settlement is made with sufficient information about the case and demonstrates that the parties have litigated in an adversarial posture. William B. Rubenstein, 4 *Newberg on Class Actions* § 13:49 (5th ed.); *see also Montgomery*, 2021 WL 1339305, at *4-*5. Those considerations weigh in favor of approval here.

The record in this Action demonstrates Settlement Class Counsel's adequacy in litigating and resolving this case, including successfully completing discovery and class certification. Settlement Class Counsel have extensive experience with the prosecution and settlement of antitrust class actions, which experience was put to work in this matter.[22] As discussed in Section II.A., *supra*, Settlement Class Counsel have zealously and skillfully represented the interests of Plaintiffs and the Settlement Class through nearly eight years of hotly contested litigation in five district courts, a bankruptcy court, and two visits to the JPML. They defeated multiple motions to dismiss; fought a purported bankruptcy discharge of Plaintiffs' claims; secured centralization before this Court; conducted extensive discovery, having served and negotiated production requests and interrogatories, conducted targeted review of the more than 2 million documents produced, and taken over 70 depositions; secured valuable cooperation from Tyson, Perdue, Koch, and Sanderson; worked extensively with Plaintiffs' economic expert on his class certification and merits analyses; briefed and argued offensive and defensive *Daubert* motions and class certification; defended the class certification order from Pilgrim's Rule 23(f) petition; submitted contested briefing regard the structure and timing of trail; briefed an

---

[22] Settlement Class Counsel's antitrust and class action experience is described in detail in each of their firm resumes. *See* ECF Nos. 214-18 & 214-19.

offensive partial summary judgment motion and prepared to oppose Pilgrim's summary judgment motion; and diligently complied with the notice plan and settlement procedures. *See*, *e.g.*, *Montgomery*, 2021 WL 1339305, at *4.

The Plaintiffs selected as class representatives also have actively participated in the prosecution of their claims by providing information, participating in discovery, and attending hearings, and have no conflicts with the members of the Settlement Class (*see* Coolidge Decl. ¶¶ 158-73); each is a Grower that suffered the same harm as every member of the Settlement Class and shares the same interests of the Settlement Class in obtaining relief. *See McNeely v. Nat'l Mobile Health Care, LLC*, No. 07-cv-0933, 2008 WL 4816510, at *7 (W.D. Okla. Oct. 27, 2008) (considering whether representative had interests antagonistic to the class); *McGaffin v. Argos USA, LLC*, No. 16-cv-0104, 2020 WL 3491609, at *4 (S.D. Ga. June 26, 2020) (Rule 23(e)(2)(A) satisfied where representatives have same interests and claims as the class and participated in action).

## 2.    The Settlement Was Reached After Arm's Length Negotiation.[23]

The Settlement satisfies Rule 23(e)(2)(B), which requires courts to evaluate whether the Settlement was reached after fair and honest arm's length negotiations. Similar to Rule 23(e)(2)(A), courts evaluate whether a settlement was negotiated fairly and honestly by considering the duration of litigation and status of discovery prior to the Settlement and the adversarial nature of the process. *See Cisneros v. EP Wrap-It Insulation, LLC*, No. 19-cv-0500, 2021 WL 2953117, at *6 (D.N.M. July 14, 2021) (considering degree of active litigation, disputes, and circumstances of settlement negotiations); *Blanco v. Xtreme Drilling & Coil Servs., Inc.*, No. 16-cv-0249, 2020 WL 4041456, at *3 (D. Colo. July 17, 2020) (same); *Aragon v. Clear Water Prods. LLC*, No. 15-cv-2821, 2018 WL 6620724, at *3 (D. Colo. Dec. 18, 2018) (approving settlement after considering status of discovery and duration of litigation).

The record demonstrates the fairness of the negotiation process for the Settlement. As described in Section II.A., *supra*, Plaintiffs and Defendant had been engaged in adversarial litigation for nearly eight years when the Settlement was reached. Further, Plaintiffs negotiated the terms of the Settlement, in substantial part under the auspices of mediator Prof. Green. The negotiations spanned a period of years; included two day-long mediation sessions (one on

---

[23] "The Tenth Circuit's fair and honest negotiation requirement can be subsumed under Rule 23's second factor—arm's-length negotiation." *Rodriguez*, 2020 WL 3288059, at *3.

November 12, 2021 and a second on June 19, 2024); and resulted in resolution only after significant aggressive litigation and the certification of a litigation class. *See* Coolidge Decl. ¶¶ 103, 141. The parties only arrived at the final Settlement amount by jointly accepting a mediator's proposal. This factor weighs heavily in favor of approval. *See Voulgaris v. Array Biopharma Inc.*, No. 17-cv-2789, 2021 WL 6331178, at *6 (D. Colo. Dec. 3, 2021), *aff'd*, 60 F.4th 1259 (10th Cir. 2023) ("arm's-length nature of the parties' negotiations and the active involvement of an independent mediator . . . provide strong support for approval of the Settlement"); *Harris v. Chevron U.S.A., Inc.*, No. 15-cv-0094, 2019 WL 5846917, at *3 (W.D. Okla. July 29, 2019) ("[u]tilization of an experienced mediator during the settlement negotiations supports a finding that the settlement is reasonable, was reached without collusion, and should therefore be approved"); *Baker v. Saint-Gobain Performance Plastics Corp.*, No. 16-cv-0917, 2022 WL 1025185, at *3 (N.D.N.Y. Feb. 4, 2022) ("Court finds that the Settlement was negotiated at arm's length, in good faith, and was overseen by an experienced mediator, Professor Eric Green, which demonstrates that the negotiated resolution was procedurally fair.").

The structure of the Settlement and plan of allocation and distribution—which maximizes relief to the Settlement Class—also supports approval. For instance, Pilgrim's has no reversionary interest in the Settlement; the entirety of the net Settlement Fund is distributed to the members of the Settlement Class *pro rata*. Moreover, the Settlement does not specify attorneys' fees other than that Plaintiffs may petition the Court for an award of fees and costs from the gross Settlement Fund, the amount of which can be determined by only the Court. *Cf.*, *e.g.*, *In re Samsung*, 997 F.3d at 1088-91 (scrutinizing fairness of agreement that specified fee for counsel in the agreement with "kicker" provision that returned amounts not awarded by the court to defendant, not the class); *Stewart v. USA Tank Sales & Erection Co.*, No. 12-cv-5136, 2014 WL 836212, at *6 (W.D. Mo. Mar. 4, 2014) (scrutinizing settlements that provide for large reversions to the settling defendants).

### 3.    The Relief Provided to the Settlement Class is More Than Adequate.

The relief achieved for the Settlement Class is more than adequate. Fed. R. Civ. P. 23(e)(2)(C) requires that courts evaluate whether the relief provided for the class is adequate, taking into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of

payment; and (iv) any agreement [made in connection with the Settlement]."[24] Fed. R. Civ. P. 23(e)(2)(C). The result here satisfies this test.

The terms of the Settlement Agreement itself make clear the substantial relief afforded to members of the Settlement Class. As discussed in Sections I and II.B, *supra*, the Settlement provides a total of $100 million in cash consideration, which represents the second largest settlement payment by a defendant in any of the antitrust cases involving the protein industry (*see* n.8 *supra*). Additionally, Pilgrim's has agreed to forego inclusion or enforcement of provisions in its contracts with members of the Settlement Class that would either mandate arbitration or bar initiation or participation in a class action. As discussed in Section I, *supra*, relief from these types of clauses is valuable to Growers because it allows them to benefit from class or collective actions. One such example is a recent case involving Growers seeking to recover wages against Perdue under the Fair Labor Standards Act ("FLSA"). *See generally Tripp v. Perdue Foods, LLC*, No. 24-cv-0987. The court there recently granted conditional certification of a class of Growers seeking to recover wages under the FLSA based on allegations that Perdue improperly categorized the Growers as independent contractors rather than as employees to avoid paying the Growers the federal minimum wage. *See id.* ECF No. 34, at 1, 15 (November 13, 2024). Like the Settlement here, Perdue's settlement of Plaintiffs' claims similarly included an agreement not to include or enforce arbitration clauses or class action bans, which allows for Perdue Growers to choose to participate in the FLSA action.

Considering the factors under Rule 23(e)(2)(C), the monetary and non-monetary consideration provide significant relief to the Settlement Class.

          a.        **The costs, risks, and delay of trial and appeal favor final approval.**[25]

Courts must also evaluate the value of settlements considering the cost and risk of continued litigation, and the delay in any monetary relief should the case not settle and were the claims to proceed to trial and through appeal. This factor weighs in favor of final approval here.

---

[24] Rule 23(e)(2)(C)(iv) is inapplicable here. There are no agreements in connection with the Settlement.

[25] The Tenth Circuit's requirement that courts evaluate whether "serious questions of law and fact . . . plac[e] the ultimate outcome of the litigation in doubt and whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. . . . largely overlap[s] and can be subsumed under" Rule 23(e)(2)(C)(i)'s evaluation of the costs, risk, and delay of trial and appeal. *Rodriguez*, 2020 WL 3288059, at *3.

Courts consider antitrust cases to be "particularly risky" and acknowledge that they are among the most complex actions to prosecute. *See, e.g.*, *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-2420, 2020 WL 7264559, at *15 (N.D. Cal. Dec. 10, 2020) (collecting cases). Plaintiffs remain confident in their claims, but there are complex questions of law and fact that pose risks in any antitrust litigation. Pilgrim's has disputed and would continue to dispute the existence and scope of the alleged anticompetitive conspiracy. This "[l]egal complexity [and] factual complexity . . . all weigh in favor of settlement." *Newberg* § 13:52. Additionally, although Plaintiffs are confident that the proposed class will be certified for litigation purposes, Pilgrim's has vigorously contested class certification as well as Plaintiffs' expert's conclusions through a *Daubert* challenge. *See Retta v. Millennium Prods., Inc.*, No. 15-cv-1801, 2017 WL 5479637, at *5 (C.D. Cal. Aug. 22, 2017). And proceeding through summary judgment to trial, even with the strongest evidentiary arsenal, poses risks because any "ultimate jury result is uncertain, unknown and unpredictable." *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 285 (D. Colo. 1997). This is particularly so in a complex antitrust case. *See, e.g.*, *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1327 (5th Cir. 1981) ("The complexity of an antitrust jury trial of [multiple] defendants gives rise to the very real possibility that the plaintiffs' case could be prejudiced.").

Absent this Settlement, Plaintiffs could lose at trial. Or Plaintiffs could win at trial in an ambiguous way (with a mixed verdict or a win on liability but a reduced damages award). Or Plaintiffs could win at trial, but lose on appeal. Moreover, even if Plaintiffs were to win at every stage, the post-trial motions and appeals would be lengthy, members of the Settlement Class would need to wait years before receiving any recovery. For these reasons, courts recognize that a class is often "better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted." *McNeely*, 2008 WL 4816510, at *13; *see also Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 547 (D. Colo. 1989) ("It has been held prudent to take a bird in the hand instead of a prospective flock in the bush.") (quotation omitted); *Childs v. Unified Life Ins. Co.*, No. 10-cv-0023, 2011 WL 6016486, at *13 (N.D. Okla. Dec. 2, 2011) (noting settlement "creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation") (quotation omitted).

18

      **b.**     **The proposed method of distributing relief to the Settlement Class, including the method of processing claims, favors final approval.**

Plaintiffs satisfy the relevant standard for ensuring that the claims process facilitates filing legitimate claims while protecting against unduly burdensome claims procedures. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii) advisory committee notes (2018 amendments). Plaintiffs have ensured that the claims and distribution process provide "as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." *Newberg* § 13:53; *see also Rodriguez*, 2020 WL 3288059, at *3.

The claims and notice process here ensures that an overwhelming majority of the Settlement Class will receive a distribution from the Settlement Fund without having to do anything at all. As described in Section II.C., *supra*, Plaintiffs obtained from Defendants and alleged Co-Conspirators sufficient compensation information and mailing addresses for most members of the Settlement Class, which information has been updated via the notice and distribution procedures from the prior settlements. As a result, the claims administrator has been able to mail claim forms that were pre-populated with the compensation information on which their settlement awards would be based. If the Settlement is approved, those who receive pre-populated claim forms and do not opt out of the Settlement will automatically receive their *pro rata* shares of the Settlement Fund even if they do nothing in response to the notice, ensuring an outstanding claims rate. Courts widely recognize that claims procedures that require little or no action by settlement class members to receive a payment satisfy Rule 23(e)(2)(C)(ii). *Moreno v. Beacon Roofing Supply, Inc*., No. 19-cv-0185, 2020 WL 3960481, at *5 (S.D. Cal. July 13, 2020) (finding "claim process is not burdensome and straightforward because it does not require Class Members to submit a claim to receive compensation"); *Vargas v. Ford Motor Co.*, No. 12-cv-8388, 2020 WL 1164066, at *9 (C.D. Cal. Mar. 5, 2020) (finding method of distribution appropriate where claim forms are pre-populated); *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-cv-0660, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) (similar).

Growers who are among the small portion of the Settlement Class for which Plaintiffs did not have sufficient claims data to provide a pre-populated claim form or whose identities were unknown (approximately one percent), need only submit a claim form with their compensation information and documentation. If they do not have that information, they may instead provide basic information to qualify for a payment, such as the name of the Defendant or alleged Co-

19

Conspirator for whom they grew Broilers, the number of farms operated, and years those farms were in operation, from which their resulting *pro rata* share may be calculated. *See* Weisbrot Implementation Decl. Ex. C; Weisbrot Notice Decl. Ex. E.[26] A claims process that requires submission of such basic data provides for an efficient and reasonable distribution while meeting the goals of Rule 23(e)(2)(C)(ii) to ensure legitimate claims are submitted. *See, e.g.*, *Hale*, 2018 WL 6606079, at *5 (finding claims procedure to be claimant-friendly, efficient, and cost-effective where class members whose contact information is known need not submit a claim at all and others need only submit a simple claim form); *Vargas*, 2020 WL 1164066, at *9 (requirement to submit basic documentation is reasonable).

        **c.**     **The proposed award of attorneys' fees favors final approval.**

Here, Plaintiffs have sought an award of attorneys' fees of one-third of the gross Settlement Fund—an amount routinely recognized as falling within an acceptable range of fee awards. *See Cook v. Rockwell Int'l Corp.*, No. 90-cv-0181, 2017 WL 5076498, at *1 & n.1 (D. Colo. Apr. 28, 2017) (citing cases awarding fees from one-third to 40% of the common fund).[27] A one-third fee in class action common fund cases, including in antitrust cases, is routinely awarded. *See, e.g.*, *In re Urethane Antitrust Litig.*, No. 04-md-1616, 2016 WL 4060156, at *8 (D. Kan. July 29, 2016) (awarding one-third of $835 million settlement); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, No. 02-md-1468, 2011 WL 1808038, at *2 (D. Kan. May 12, 2011) (finding award of one-third of the fund falls within the range of awards deemed reasonable by courts).

And, as explained in Plaintiffs' fee petition, the award is warranted under the applicable law of this Circuit. *See* ECF No. 628, at 8-20. Specifically, Plaintiffs' request for one-third of the cash component of the Pilgrim's Settlement (*i.e.*, $33.33 million) plus accrued interest, when combined with the prior fee awards, reflects a multiplier of 1.56 using Class Counsel's lodestar at current rates through September 30, 2024. *See id.* at 3. Such a multiplier reflects a fair and

---

[26] The calculation has been made available on the settlement website.

[27] *See also, e.g.*, *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1099 (D. Kan. 2018) (awarding one-third of common fund); *Shaw v. Interthinx, Inc.*, No. 13-cv-1229, 2015 WL 1867861, at *6 (D. Colo. Apr. 22, 2015) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class."); *Lewis v. Wal-Mart Stores, Inc.*, No. 02-cv-0944, 2006 WL 3505851, at *1-*2 (N.D. Okla. Dec. 4, 2006) (noting that a "contingency fee of one-third is relatively standard in lawsuits that settle before trial").

reasonable return on the risk taken by Class Counsel, and it is well within—and in fact below—multipliers awarded in similar antitrust class actions. *See id.* at 12-13 (discussing cases). Class Counsel vigorously litigated on behalf of the Class, expending more than 56,000 hours over nearly eight years in the face of considerable risks that any recovery would be delayed for years or perhaps never obtained, as discussed at Section II.A.3.a, *infra. See also id.* at 13-16 (discussing the contested character of the Action). Class Counsel's efforts yielded a settlement that is the largest in this Action, as well as among the largest settlements with any defendant in an antitrust action involving the protein industry. *See* Section I, *infra*.

        **4.**      **The Settlement and Proposed Plan of Distribution Treat Members of the Settlement Class Equitably.**

The Court-approved distribution plan treats all members of the Settlement Class equitably. As discussed in Section II.E., *supra*, Plaintiffs propose to distribute the Settlement Fund *pro rata*, based on total qualifying compensation each member of the Settlement Class received for Broiler Grow-Out Services from any Defendant or alleged Co-Conspirator during the class period as a percentage of total qualifying compensation received by all members of the Settlement Class who have valid claims. Such a *pro rata* distribution is fair and equitable because it compensates members of the Settlement Class based on their relative harm suffered.

Since the 2018 amendment of Rule 23(e) expressly required this consideration, courts have consistently found *pro rata* distribution is equitable to settlement classes. *See, e.g.*, *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 316 (S.D.N.Y. 2020) (in antitrust action, finding courts uniformly approve plans of allocation distributing funds on a *pro rata* basis as equitable under Rule 23(e)(2)(D)); *Perks v. Activehours, Inc.*, No. 19-cv-5543, 2021 WL 1146038, at \*6 (N.D. Cal. Mar. 25, 2021) (*pro rata* distribution is "inherently equitable" because it allocates settlement proceeds based on the amount of each member's potential damages); *Cisneros*, 2021 WL 2953117, at \*10 (finding *pro rata* allocation provides equitable treatment). Even prior to the 2018 amendment, courts considered this factor and routinely found *pro rata* distribution of settlement funds in antitrust actions to be fair and reasonable. *See, e.g.*, *In re Vitamins Antitrust Litig.*, No. 99-cv-0197, 2000 WL 1737867, at \*6 (D.D.C. Mar. 31, 2000) (*pro rata* distribution has "repeatedly been deemed fair and reasonable").[28]

---

[28] *See also, e.g.*, *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011) ("Courts generally

5.     **The Parties Agree that the Settlement Is Fair, Reasonable, and Adequate.**

Experienced counsel for both Plaintiffs and Pilgrim's endorse the Settlement,[29] which is a further basis to approve it. *Rodriguez*, 2020 WL 3288059, at *4 ("If all Class Members are treated equitably, counsel for both sides agree the outcome is good, and there are no objections to the Settlement Agreement, it appears the parties agree the settlement is fair and reasonable."). Counsel's opinion that the Settlement is fair and reasonable is entitled to "considerable weight." *McNeely*, 2008 WL 4816510, at *13; *see also In re Dep't of Energy Stripper Well Exemption Litig.*, 653 F. Supp. 108, 116 (D. Kan. 1986) (noting "the professional judgment of counsel involved in the litigation—who have made a determination that the settlement represents a fair allotment for their clients—is entitled to significant weight"); *Alvarado*, 723 F. Supp. at 548 ("Courts have consistently refused to substitute their business judgment for that of counsel and the parties."). Counsel's view is particularly persuasive where, as demonstrated above, Settlement Class Counsel and the Plaintiffs have already zealously represented the interests of the Settlement Class. *See* Section II.A., *supra*.

Settlement Class Counsel are experienced antitrust litigators who, at the time of the Settlement, were extremely knowledgeable about the factual and legal issues in the case. *See*, *e.g.*, Coolidge Decl. ¶¶ 148-49. As demonstrated by Plaintiffs' motion papers and as discussed herein, it is the opinion of Settlement Class Counsel that the Settlement offers tremendous value to the Settlement Class both because of the monetary consideration provided now and the agreement by Pilgrim's not to include or enforce provisions in its contracts with members of the Settlement Class that would either mandate arbitration or bar initiation or participation in a class action for five years.

The reaction of the Settlement Class demonstrates a broad consensus among the class members that the Settlement is an excellent result. Only ten Growers have excluded themselves from the Settlement. Weisbrot Implementation Decl. ¶ 22 & Ex. I. And there have been no objections to the Settlement. *Id.* ¶ 23. *See*, *e.g.*, *Stanley v. Panorama Orthopedics & Spine Ctr., P.C.*, No. 22-cv-01176, 2024 WL 4546178, at *6 (D. Colo. Oct. 7, 2024) ("fact that no class

---

consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable."); *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001) (allocation plan based on the type and extent of their injuries is generally reasonable).
[29] *See* Smith Decl. ¶ 21.

member has opted out or objected to the settlement" supports final approval of settlement); *Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*, No. 17-cv-0304, 2021 WL 1387110, at *5 (D. Colo. Apr. 13, 2021) (granting final approval for class action settlement where no class member objected and there was one opt out); *Fager v. CenturyLink Commc'ns, LLC*, 854 F.3d 1167, 1175 (10th Cir. 2016) (finding "the dearth of opposition—only a few class members opted out and Ziegler filed the only objection—implied that the settlement is fair").

The only objection was submitted by Class Representative Myles Weaver, who objects only to Class Counsel's fee request. *See* Exhibit A attached hereto. Mr. Weaver has twice previously objected to Class Counsel's fee requests on the same grounds as here, and his objection should be overruled for the same reasons in the Court's prior Orders approving the earlier settlements. *See* ECF Nos. 282, 285 (¶ 4.d), 407, 409 (at 18), 420 (¶ 4.d).

**B.    Notice to the Settlement Class Comported with Rule 23 and Due Process**

The means and manner of notice satisfies the Federal Rules and due process. Under Rule 23(e)(1), notice of the settlement must be provided in a reasonable manner to all class members who would be bound by the proposal. Fed. R. Civ. P. 23(e)(1). Under Rule 23(c)(2) and procedural due process, the court must direct to members of a Rule 23(b)(3) monetary relief class "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) (noting constitutional guarantees and the requirements of Rule 23(c)(2)(B) are coextensive); *see also Tennille v. Western Union Co.*, 785 F.3d 422, 436 (10th Cir. 2015). Due process does not require, however, "*actual* notice to each party intended to be bound by the adjudication of a representative action." *DeJulius*, 429 F.3d at 944 (emphasis in original). It is universally recognized that the method of notice used here, namely direct notice supplemented with publication notice targeted to reach class members who cannot be sent direct notice, satisfies due process and Rule 23(c)(2)(B). *See, e.g.*, *In re Samsung Top-Load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig.*, No. 17-md-2792, 2020 WL 2616711, at *11 (W.D. Okla. May 22, 2020), *aff'd*, 997 F.3d 1077 (10th Cir. 2021).

Substantively, Rule 23(b)(3) class notices must state in plain, easily understood language, (i) the nature of the action; (ii) the definition of the class that is being certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney

if the member so desires; (v) that the Court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members. Fed. R. Civ. P. 23(c)(2)(B). Notice will satisfy Rule 23 if it gives Rule 23(b)(3) class members "sufficient information about the specific lawsuit to allow a class member to assess whether to exercise the right either to appear or to opt out." *Tennille*, 785 F.3d at 437 (quotation and citation omitted); *see also* Weisbrot Implementation Decl. Exs. A, D-H.

Here the notice plan approved by the Court and as implemented by Settlement Class Counsel and Angeion satisfies these criteria. Settlement Class Counsel obtained from Defendants and alleged Co-Conspirators mailing addresses for 23,978 members of the Settlement Class, which were maintained and updated over the course of administering the prior settlements. Angeion mailed direct notice and claim forms to those addresses, and remailed notice to updated addresses for addressees whose notice was returned undeliverable, resulting in direct notice mailed to the overwhelming majority of the Settlement Class. *See* Section II.D., *supra*, Weisbrot Implementation Decl. ¶¶ 5-10.

For the remainder of the Settlement Class for which Settlement Class Counsel did not have mailing addresses, a supplemental publication notice program was implemented. Publication notice was placed in print publications in geographic locations in which members of the Settlement Class without known mailing addresses raised Broilers (in Ohio, Georgia, and North Carolina), and in a trade publication targeted at the Broiler industry. *See* Weisbrot Implementation Decl. ¶¶ 14-15. An internet-based programmatic display advertising campaign was launched, targeting placement on websites expected to be of interest to Growers, and a social media campaign engaged with Settlement Class members via news feed and story units, image ads, and right column ads. *Id.* ¶¶ 11-13, 16. Publication notice directed members of the Settlement Class to the settlement website where they could obtain the Settlement Agreement, the long form notice, and an unpopulated claim form. *Id.* Exs. D-H. This notice—combining direct notice to nearly all members of the Settlement Class and robust publication notice—satisfies Rule 23(c)(2) and due process. *See*, *e.g.*, *In re Samsung*, 2020 WL 2616711, at *9-*11.

Similarly, the substance of the notice satisfied Rule 23(c)(2)(B). The direct and publication notice informed members of the Settlement Class: (i) about the nature of the action; (ii) of the definition of the class that was being certified; (iii) about the class claims, issues, or defenses; (iv) that each has a right to enter an appearance through an attorney if the member so

desires; (v) that the Court will exclude from the Settlement Class any member who timely requests exclusion; (vi) how and when to request exclusion; and (vii) about the binding effect of a class judgment on members. Weisbrot Implementation Decl. Ex. A at ¶¶ 1-3, 5, 14, 16-17, 21-24. The notice also used clear and concise language in conveying this information and identified all critical deadlines as well as the date of the fairness hearing. *See id.* Ex. A at ¶¶ 2-3, 14.

Thus, the notice met all of the requirements of Rule 23. *See Tennille*, 785 F.3d at 436-37 (finding notice adequate when notice generally informed class members that if they did not opt out, they would give up their right to sue defendant for the claims the lawsuit resolved); *Chieftain Royalty Co. v. XTO Energy Inc.*, No. 11-cv-0029, 2018 WL 501656, at *3 (E.D. Okla. Jan. 18, 2018) (approving notice that, *inter alia*, described the terms and effect of the settlement, notified the class of important deadlines, and described the procedure for objecting and opting out); *In re Samsung*, 2020 WL 2616711, at *10 (approving notice that, *inter alia*, explained the nature of the action, the definition of the class certified, identified the claims, explained that the court will exclude any member who makes a timely request, and provided important deadlines).

Finally, the notice disclosed the maximum amount Plaintiffs would seek from the gross Settlement Fund for attorneys' fees and reimbursement of litigation costs. Weisbrot Implementation Decl. Ex. A ¶ 15. Plaintiffs' fee petition was posted on the settlement website immediately after it was filed. *Id.* ¶ 17. Members of the Settlement Class thus had adequate notice of the fee petition and an opportunity to review it prior to deciding whether to exclude themselves from or object to the Settlement. *See In re Samsung Top-load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig.*, No. 17-md-2792, 2019 WL 6118267, at *1-*2 (W.D. Okla. Nov. 18, 2019).

## IV.    CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement Agreement with Pilgrim's, grant final approval to the *pro rata* distribution, find that Pilgrim's has provided the appropriate notice pursuant to the Class Action Fairness Act,[30] and find notice to the Settlement Class comported with Rule 23 and due process.

---

[30] As set forth in its Notice of Compliance with 28 U.S.C. § 1715 on Behalf of Pilgrim's Pride Corporation (*see* ECF No. 629), Pilgrim's issued notices to all state and federal officials required by the Class Action Fairness Act, 28 U.S.C.A. § 1715(b), by August 26, 2024.

Dated: December 13, 2024                         Respectfully submitted,

                                    */s/ Eric L. Cramer*
                                    Eric L. Cramer*
                                    Ellen T. Noteware*
                                    Patrick F. Madden*
                                    Michaela L. Wallin*
                                    David A. Langer*
                                    **BERGER MONTAGUE PC**
                                    1818 Market Street, Suite 3600
                                    Philadelphia, PA 19103
                                    Telephone: (215) 875-3000
                                    Facsimile: (215) 875-4604
                                    Email: ecramer@bm.net
                                    Email: enoteware@bm.net
                                    Email: pmadden@bm.net
                                    Email: mwallin@bm.net
                                    Email: dlanger@bm.net

                                    Daniel J. Walker*
                                    **BERGER MONTAGUE PC**
                                    1001 G Street, NW Suite 400 East
                                    Washington, DC 20001
                                    Telephone: (202) 559-9745
                                    Email: dwalker@bm.net

                                    Melinda R. Coolidge*
                                    Michael D. Hausfeld*
                                    James J. Pizzirusso*
                                    Samantha S. Derksen*
                                    **HAUSFELD LLP**
                                    888 16th Street, NW, Suite 300
                                    Washington, DC 20006
                                    Telephone: (202) 540-7200
                                    Facsimile: (202) 540-7201
                                    Email: mcoolidge@hausfeld.com
                                    Email: mhausfeld@hausfeld.com
                                    Email: jpizzirusso@hausfeld.com
                                    Email: sderksen@hausfeld.com

                                    Gary I. Smith, Jr.*
                                    **HAUSFELD LLP**
                                    600 Montgomery St, Ste 3200
                                    San Francisco, CA 94111
                                    Telephone: (415) 633-1908
                                    Facsimile: (415) 633-4980

26

Email: gsmith@hausfeld.com

Kyle G. Bates*
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Telephone: (415) 744-1966
Facsimile (212) 202-4322
Email: kbates@hausfeld.com

*Co-Lead Counsel for Plaintiffs and the Proposed Class*

M. David Riggs
Donald M. Bingham
Kristopher Koepsel
**RIGGS ABNEY NEAL TURPEN ORBISON & LEWIS**
502 West Sixth Street
Tulsa, OK 74119
Telephone: (918) 699-8914
Facsimile: (918) 587-9708
Email: driggs@riggsabney.com
Email: don_bingham@riggsabney.com
Email: kkoepsel@riggsabney.com

William A. Edmondson (OBA No. 2628)
**RIGGS ABNEY NEAL TURPEN ORBISON & LEWIS**
528 N.W. 12th Street
Oklahoma City, OK 73103
Telephone: (405) 843-9909
Facsimile: (405) 842-2913
Email: dedmondson@riggsabney.com

*Liaison Counsel for Plaintiffs and the Proposed Class*

Larry D. Lahman (OBA No. 5166)
Roger L. Ediger (OBA 19449)
**MITCHELL DECLERK, PLLC**
202 West Broadway Avenue
Enid, OK 73701
Telephone: (580) 234-5144
Facsimile: (580) 234-8890
Email: ldl@mdpllc.com
Email: rle@mdpllc.com

27

Warren T. Burns*
**BURNS CHAREST, LLP**
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
wburns@burnscharest.com

Gregory L. Davis*
**DAVIS & TALIAFERRO, LLC**
7031 Halcyon Park Drive
Montgomery, AL 36117
Telephone: (334) 832-9080
Facsimile: (334) 409-7001
gldavis@gregdavislaw.com

Charles D. Gabriel*
**CHALMERS & ADAMS LLC**
North Fulton Satellite Office
5755 North Point Parkway, Suite 251*
Alpharetta, GA 30022
Telephone: (678) 735-5903
Facsimile: (678) 735-5905
cdgabriel@cpblawgroup.com

Larry S. McDevitt*
David M. Wilkerson*
**VAN WINKLE LAW FIRM**
11 North Market Street
Asheville, NC 28801
Telephone: (828) 258-2991
Facsimile: (828) 257-2767
lmcdevitt@vwlawfirm.com
dwilkerson@vwlawfirm.com

Harlan Hentges (OBA No. 17911)
**HENTGES & ASSOCIATES, PLLC**
102 East Thatcher Street
Edmond, OK 73034
Telephone: (405) 340-6554
Facsimile: (405) 340-6562
harlan@organiclawyers.com

28

John C. Whitfield*
WHITFIELD COLEMAN MONTOYA, PLLC (TN)
518 Monroe Street
Nashville, TN 37208
Telephone: (615) 921-6500
Facsimile: (615) 921-6501
jwhitfield@wcbfirm.com

J. Dudley Butler*
BUTLER FARM & RANCH LAW GROUP, PLLC
499-A Breakwater Drive
Benton, MS 39039
Telephone: (662) 673-0091
Facsimile: (662) 673-0091
jdb@farmandranchlaw.com

Daniel M. Cohen*
CUNEO GILBERT & LADUCA, LLA
4725 Wisconsin Ave., NW Suite 200
Washington, DC 20016
Telephone: (202)789-3960
Facsimile: (202)789-1813
Danielc@cuneolaw.com

Leah M. Nicholls*
PUBLIC JUSTICE, PC
1620 L Street NW, Suite 630
Washington, DC 20036
Telephone: (202) 797-8600
Facsimile: (202) 232-7203
lnicholls@publicjustice.net

Kellie Lerner*
Meegan F. Hollywood*
Benjamin Steinberg*
ROBINS KAPLAN, LLP
1325 Avenue of the Americas, Suite 2601
New York, NY 10019
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
KLerner@RobinsKaplan.com
MHollywood@RobinsKaplan.com
BSteinberg@RobinsKaplan.com

M. Stephen Dampier*
**DAMPIER LAW FIRM**
55 North Section Street
P.O. Box 161
Fairhope, AL 36532
Telephone: (251) 929-0900
Facsimile: (251) 929-0800
stevedampier@dampierlaw.com

Michael L. Silverman*
**ROACH LANGSTON BRUNO LLP**
205 North Michigan Avenue, Suite 810
Chicago, IL 60601
Telephone: (773) 969-6160
msilverman@rlbfirm.com

Grant L. Davis*
Thomas C. Jones*
Timothy Gaarder*
Thomas E. Ruzicka, Jr.*
**DAVIS BETHUNE & JONES, LLC**
1100 Main Street, Suite 2930
Kansas City, MO 64105
Telephone: (816) 421-1600
gdavis@dbjlaw.net
tgaarder@dbjlaw.net
tjones@dbjlaw.net
truzicka@dbjlaw.net

Robert Bonsignore, Esq.*
**BONSIGNORE TRIAL ATTORNEYS, PLLC**
23 Forest Street
Medford, MA 02155
Telephone: (781) 350-0000
rbonsignore@class-actions.us

***Additional Class Counsel for Plaintiffs
and the Proposed Class***

* admitted *pro hac vice*

30

**CERTIFICATE OF SERVICE**

I hereby certify that on December 13, 2024, I electronically transmitted a true and correct copy of the foregoing document to the Clerk of Court for filing using the CM/ECF system, which will send notification of such filing to all counsel of record.

_/s/ Eric L. Cramer_
Eric L. Cramer*